IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

KATHY RYAN, INDIVIDUALLY, AND IN
HER CAPACITY AS TRUSTEE OF THE
BRODY FAMILY TRUST;

   Plaintiff,

  vs.

CHRISTOPHER S. SALISBURY;  C.
SALISBURY, LLC; CLARAPHI ADVISORY
NETWORK, LLC; NATIONAL ASSET
MANAGEMENT, INC.; MICHAEL
DIYANNI; LAKE FOREST BANK & TRUST
COMPANY, N.A.; WINTRUST LIFE
FINANCE; AURORA CAPITAL ALLIANCE;
SECURITY LIFE OF DENVER INSURANCE
COMPANY; and ALEJANDRO ALBERTO
BELLINI,

   Defendants.

CIV. NO. 18-00406 ACK-RT

---

## ORDER GRANTING DEFENDANT NATIONAL ASSET MANAGEMENT, INC.'S

## MOTION FOR JUDGMENT ON THE PLEADINGS

   For the reasons set forth below, the Court GRANTS

Defendant National Asset Management, Inc.'s Motion for Judgment

on the Pleadings, ECF No. 80, insofar as the Motion seeks

dismissal of all of Plaintiff's claims against Defendant

National Asset Management, Inc.  Those claims are dismissed

without prejudice, except the Second and Eighth Causes of

Action, which are dismissed with prejudice as against Defendant

NAM.

## FACTUAL BACKGROUND

The Court sets forth herein only those facts reasonably pertinent to the disposition of the instant Motion.

The Brody Family Trust ("the Trust") was created on February 9, 1993, with Plaintiff Kathy Ryan (then Kathy Brody) ("Plaintiff")[1/] serving as its trustee. Compl., ECF No. 1 ¶ 23. The Trust was organized under the laws of California. Id. Sometime in 2002 or thereafter, the estate planning company that first established the Trust referred Plaintiff to Defendant Christopher S. Salisbury ("Defendant Salisbury") for her investment and financial planning needs. Id. ¶ 24.

Early on in his tenure as Plaintiff's financial advisor, Defendant Salisbury began investing Plaintiff's money and/or that of the Trust into annuities, among other investments. Id. ¶ 25. Defendant Salisbury, together with Defendant C. Salisbury, LLC and Accelerated Estate Planning, LLC (together, "the Salisbury Entities") caused Plaintiff to surrender certain annuities and move the money to different annuities with the promise that any surrender fees would be offset either by bonus monies or greater earnings of the new product (a process the Complaint calls "churning"). Id. ¶ 26.

---

[1/] Plaintiff turned sixty-two years old—and thus became an "elder" as that term is defined in HRS § 480-13.5—sometime in 2012. Compl. ¶ 86.

Defendant Salisbury understood that Plaintiff did not have sophisticated knowledge of investment, financial, and insurance-related matters. Id. ¶ 29. The Salisbury Entities made verbal representations about the products Defendant Salisbury was directing Plaintiff to invest in or purchase, and Defendant Salisbury routinely presented Plaintiff with signature pages, rather than complete documents, which he instructed her to sign but not date. Id. ¶ 30. Defendant Salisbury, a licensed notary, often notarized documents Plaintiff had signed, including those signed outside his presence. Id. Defendant Salisbury was employed by Defendant National Asset Management, Inc. ("Defendant NAM") from June 20, 2011 until April 30, 2013. Id. ¶ 14.

## I. The Annuities

Among the many annuities involved in Defendant Salisbury's "churning" process were annuities issued by Allianz, at least two of which were surrendered at a sizeable loss. See id. ¶ 31. First, on or about December 29, 2009, Plaintiff was caused to surrender Allianz Flexible Premium Deferred Annuity Policy (Index Benefit bearing policy number XXX 3635, policy date September 1, 2006)—which was then valued at approximately $902,000—at a loss of approximately $200,077. Id. ¶ 32. Second, on or about November 21, 2014, following Defendant Salisbury's advice and direction, Plaintiff surrendered an

3

Allianz annuity with a policy number XXX 7754, which was issued on December 18, 2006.

Again acting on Defendant Salisbury's advice and direction, Plaintiff also surrendered four Phoenix Personal Income Annuities. On or about October 19, 2017, Plaintiff surrendered two such annuities. One, number XXX 5109, was issued with a single premium of $24,795.55 on December 9, 2014, and its surrender cost Plaintiff approximately $3,790.04 in surrender charges, id. ¶ 34a; the other, number XXX 5355, was issued with a single premium of $24,800.42 on December 11, 2014, and its surrender cost Plaintiff approximately $3,939.86 in surrender charges, id. ¶ 34b. On or about November 7, 2017, Plaintiff surrendered Phoenix Personal Income Annuity number XXX 8769, which had been issued with a single premium of $700,000 on May 4, 2015, and incurred approximately $110,220.74 in surrender charges. Id. ¶ 34d. And on or about November 8, 2017, Plaintiff incurred approximately $25,983.85 in surrender charges by surrendering Phoenix Personal Income Annuity XXX 4609, which was issued on December 18, 2014 with a single premium of $160,319.48. Id. ¶ 34c. As to these four annuities, Plaintiff lost approximately $143,931.49. Id. ¶ 34.

Again following Defendant Salisbury's advice and direction, Plaintiff purchased and invested in the Fidelity Premium Deferred Fixed Index Annuity, AdvanceMark Ultra 14,

4

number XXX 5051, which was issued on February 8, 2015. Id. ¶
35. As of the most recent annual statement, it had an account
value of approximately $453,282.52. Id. Plaintiff surrendered
it in or around October 2017, and the surrender charge was
$52,382.80. Id.

Similarly, Defendant Salisbury allowed an American
National annuity, number XXX 0431, to run just over a year
before he caused Plaintiff to surrender it in or around April
2015. Id. ¶ 36. The surrender of this annuity, which had been
issued on March 14, 2014 with an initial premium payment of
$737,450.85, incurred approximately $61,028 in surrender
charges. Id.

Plaintiff was also issued a ForeThought Single Premium
Deferred Annuity Contract number XXX 8001 on February 11, 2009,
with an initial premium payment of $166,949.80. Id. ¶ 37. At
Defendant Salisbury's direction, Plaintiff made several
withdrawals from this annuity while it was in force. Id. At
the time of surrender on or about November 17, 2014, the annuity
was valued at $146,486.39, and the surrender fee was $7,324.32.
Id. ¶ 37.

And on November 26, 2007, Plaintiff was issued a North
American Company Individual Flexible Premium Deferred Annuity,
number XXX 2105, with an initial premium payment of $276,745.13.
Id. ¶ 38. Plaintiff paid an additional premium of $598,595.71

on or about April 27, 2012. Id. On or about January 29, 2014, the annuity was surrendered at a net loss of $88,205.94. Id.

These transactions—which Plaintiff alleges are a representative list of Defendant Salisbury's "churning" activities rather than an exhaustive one, see id. ¶ 39—cost Plaintiff approximately $576,207.28 in surrender charges, id. With respect to each transaction, and over the course of them all, Defendant Salisbury told Plaintiff that the surrenders were in her best interest and explained that any surrender charge incurred was worth incurring to better position the funds in the replacement annuity. Id. ¶ 40.

## PROCEDURAL BACKGROUND

Plaintiff, proceeding both individually and in her capacity as trustee of the Brody Family Trust, filed her Complaint on October 23, 2018. Compl. Therein, she asserted twelve causes of action:

1. Violation of the Unfair and Deceptive Acts or Trade Practices Act ("UDAP"), Hawai`i Revised Statutes ("HRS") §§ 480-1 et seq., as to all defendants. Compl. ¶¶ 64-78.

2. UDAP, Violation of HRS § 480-2 ("Suitability") as to all defendants. Compl. ¶¶ 79-82.

3. UDAP, "Elder Abuse", as to all defendants. Id. ¶¶ 83-90.

4. Fraudulent suppression as to the Salisbury Defendants and Defendants NAM and Claraphi. Id. ¶¶ 91-97.

5. Fraudulent misrepresentation as to the Salisbury Defendants and Defendants NAM, Claraphi, and Diyanni. Id. ¶¶ 98–103.

6. Breach of fiduciary duty as to the Salisbury Defendants and Defendants NAM, Claraphi, and Diyanni. Id. ¶¶ 104–13.

7. Vicarious liability/respondeat superior as to the Salisbury Defendants and Defendants NAM, Claraphi, Diyanni, Aurora Capital Alliance ("Defendant ACA"), Lake Forest, Wintrust, SLD, and Bellini. Id. ¶¶ 114–18.

8. Violation of the Hawai`i Securities Act (HRS §§ 485A-502, 485A-509) as to the Salisbury Defendants, Defendant NAM, and Defendant Claraphi. Compl. ¶¶ 119–22.

9. Controlling Person Liability, under HRS § 485A-509(g), as to Defendants NAM and Claraphi. Compl. ¶¶ 123–26.

10. Violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c), as to all defendants. Compl. ¶¶ 127–51.

11. Violation of RICO, 18 U.S.C. § 1962(d), as to all defendants. Compl. ¶¶ 152–59.

12. Violation of HRS § 842-2(3), as to all defendants. Compl. ¶¶ 160–71.

Citing Federal Rules of Civil Procedure ("Rules") 12(h)(2)(B), 12(c), and 9(b), Defendant NAM filed the instant

Motion for Judgment on the Pleadings ("Motion") on January 25, 2019. ECF No. 80. Plaintiff filed her Opposition on April 9, 2019. ECF No. 113. Defendant NAM filed its Reply on April 16, 2019. ECF No. 120. On April 8, 2019, Defendants ACA and Bellini filed a statement of no position as to the Motion. ECF No. 111. The Court held a hearing on the Motion on April 30, 2019. ECF No. 125.

## STANDARDS

### I.  Rule 12(c)

Under Federal Rule of Civil Procedure ("Rule") 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." The pleadings are closed once a complaint and an answer have been filed, assuming that there is no counterclaim or cross-claim. Doe v. United States, 419 F.3d 1058, 1061 (9th Cir.2005).

A motion brought under Rule 12(c) is "functionally identical" to one brought pursuant to Rule 12(b), and "the same standard of review applicable to a Rule 12(b) motion applies to its Rule 12(c) analog." Dworkin v. Hustler Magazine Inc., 867 F.2d 1188, 1192 (9th Cir. 1989); see also Rutenschroer v. Starr Seigle Commc'ns, Inc., 484 F. Supp. 2d 1144, 1147-48 (D. Haw. 2006) ("If procedural defects are asserted in a Rule 12(c) motion, the district court will apply the same standards for granting the appropriate relief or denying the motion as it

would have employed had the motion been brought prior to the defendant's answer under Rules 12(b)(1), 12(b)(6), [or] 12(b)(7)[.]" (citing 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1367 (3d ed. 2004))).

Judgment on the pleadings under Rule 12(c) is limited to material included in the pleadings, as well documents attached to the complaint, documents incorporated by reference in the complaint, and matters of judicial notice, unless the Court elects to convert the motion into one for summary judgment. Yakima Valley Mem'l Hosp. v. Dep't of Health, 654 F.3d 919, 925 n.6 (9th Cir. 2011); United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003). Rule 12(d) gives the Court "discretion to accept and consider extrinsic materials offered in connection with these motions, and to convert the motion to one for summary judgment when a party has notice that the district court may look beyond the pleadings." Hamilton Materials, Inc. v. Dow Chem. Corp., 494 F.3d 1203, 1207 (9th Cir. 2007).

The Court must accept as true the facts as pled by the non-movant, and will construe the pleadings in the light most favorable to the nonmoving party. U.S. ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1053 (9th Cir. 2011); Doyle v. Raley's Inc., 158 F.3d 1012, 1014 (9th Cir. 1998). Judgment on the pleadings is properly granted "when, accepting

all factual allegations in the complaint as true, there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law." Chavez v. United States, 683 F.3d 1102, 1108 (9th Cir. 2012) (citation and original alteration omitted).

Although Rule 12(c) does not expressly address partial judgment on the pleadings, leave to amend, or dismissal, courts regularly "apply Rule 12(c) to individual causes of action," Strigliabotti v. Franklin Res., Inc., 398 F. Supp. 2d 1094, 1097 (N.D. Cal. 2005) (citation omitted), and have discretion to grant a Rule 12(c) motion with leave to amend, or dismiss the action instead of entering judgment, see Goens v. Adams & Assocs., Inc., No. 2:16-CV-00960-TLN-KJN, 2017 WL 3981429, at *2 (E.D. Cal. Sept. 11, 2017) (citing Carmen v. San Francisco Unified Sch. Dist., 982 F. Supp. 1396, 1401 (N.D. Cal. 1997); Moran v. Peralta Cmty. Coll. Dist., 825 F. Supp. 891, 893 (N.D. Cal. 1993)).

## II. Failure to State a Claim

Rule 12(h)(2)(B) permits a defendant to use Rule 12(c) as a vehicle to contend that a complaint fails to state a claim upon which relief can be granted. See Fed. R. Civ. P. 12(h)(2)(B). When Rule 12(c) is used to raise the defense of failure to state a claim upon which relief can be granted, analysis under Rule 12(c) is substantially identical to analysis

under Rule 12(b)(6). <u>McGlinchy v. Shell Chemical Co.</u>, 845 F.2d 802, 810 (9th Cir.1988). The Court must therefore assess whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)); <u>see also</u> <u>Harris v. Cty. of Orange</u>, 682 F.3d 1126, 1131 (9th Cir. 2012) (<u>Iqbal</u> applies to Rule 12(c) motions because Rule 12(b)(6) and Rule 12(c) motions are functionally equivalent). Mere conclusory statements in a complaint or "formulaic recitation[s] of the elements of a cause of action" are not sufficient. <u>Twombly</u>, 550 U.S. at 555. Thus, the Court discounts conclusory statements, which are not entitled to a presumption of truth, before determining whether a claim is plausible. <u>Iqbal</u>, 556 U.S. at 678. However, "[d]ismissal with prejudice and without leave to amend is not appropriate unless it is clear . . . that the complaint could not be saved by amendment." <u>Harris</u>, 682 F.3d 1126, 1131 (9th Cir. 2012) (citation omitted).

**III. Rule 9(b)**

Rule 9(b) requires that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). "Rule 9(b) requires particularized

11

allegations of the circumstances constituting fraud." In re

GlenFed, Inc. Securities Litigation, 42 F.3d 1541, 1547–48 (9th

Cir.1994) (en banc) (superseded by statute on other grounds as

recognized in Ronconi v. Larkin, 253 F.3d 423, 429 n.6 (9th Cir.

2001)). Rule 9(b) requires the pleading to provide an "account

of the time, place, and specific content of the false

representations as well as the identities of the parties to the

misrepresentations." Swartz v. KPMG LLP, 476 F.3d 756, 764 (9th

Cir.2007) (internal quotations omitted). "Averments of fraud

must be accompanied by the who, what, when, where, and how of

the misconduct charged." Vess v. Ciba–Geigy Corp. USA, 317 F.3d

1097, 1106 (9th Cir.2003). Plaintiffs may not simply plead

neutral facts to identify the transaction, but rather must also

set forth what is false or misleading about a statement, and why

it is false. See GlenFed, 42 F.3d at 1548. Moreover,

> Rule 9(b) does not allow a complaint to
> merely lump multiple defendants together but
> require[s] plaintiffs to differentiate their
> allegations when suing more than one
> defendant . . . and inform each defendant
> separately of the allegations surrounding
> his alleged participation in the fraud. In
> the context of a fraud suit involving
> multiple defendants, a plaintiff must, at a
> minimum, identif[y] the role of [each]
> defendant[ ] in the alleged fraudulent
> scheme.

Swartz, 476 F.3d at 764–65 (alterations in original) (citations

omitted). However, Rule 9(b)'s requirements may be relaxed as

to matters that are exclusively within the opposing party's
knowledge.  <u>Rubenstein v. Neiman Marcus Grp. LLC</u>, 687 F. App'x
564, 567 (9th Cir. 2017) (quoting <u>Moore v. Kayport Package
Express, Inc.</u>, 885 F.2d 531, 540 (9th Cir. 1989)).

> Rule 9(b) only "requires that plaintiffs
> specifically plead those facts surrounding
> alleged acts of fraud to which they can
> reasonably be expected to have access."
> <u>Concha v. London</u>, 62 F.3d 1493, 1503 (9th
> Cir. 1995).  As such, "in cases where fraud
> is alleged, we relax pleading requirements
> where the relevant facts are known only to
> the defendant." <u>Id.</u> In those cases, a
> "pleading is sufficient under Rule 9(b) if
> it identifies the circumstances constituting
> fraud so that a defendant can prepare an
> adequate answer from the allegations."
> <u>Moore</u>, 885 F.2d at 540.

<u>Rubenstein</u>, 687 F. App'x at 567–68.  Where the facts surrounding
fraud are "peculiarly within the opposing party's knowledge,"
then, "[a]llegations of fraud based on information and belief
may suffice . . . so long as the allegations are accompanied by
a statement of the facts upon which the belief is founded." <u>Puri
v. Khalsa</u>, 674 F. App'x 679, 687 (9th Cir. 2017) (citing <u>Wool v.
Tandem Computs. Inc.</u>, 818 F.2d 1433, 1439 (9th Cir. 1987),
<u>overruled on other grounds as stated in</u> <u>Flood v. Miller</u>, 35
Fed.Appx. 701, 703 n.3 (9th Cir. 2002)).

A motion to dismiss a claim grounded in fraud for
failure to plead with particularly under Rule 9(b) is the
functional equivalent of a motion to dismiss under Rule

12(b)(6).  See Vess, 317 F.3d at 1107.  Thus, "[a]s with Rule 12(b)(6) dismissals, dismissals for failure to comply with Rule 9(b) should ordinarily be without prejudice. Leave to amend should be granted if it appears at all possible that the plaintiff can correct the defect." Id.

## DISCUSSION

Defendant NAM argues that it is entitled to judgment on the pleadings as to each of Plaintiff's claims against it. The Court addresses Plaintiff's claims and Defendant NAM's arguments in turn.

### I.  UDAP (First, Second, and Third Causes of Action)

Plaintiff's First and Second Causes of Action assert that all defendants have engaged in deceptive and unfair acts and practices within the meaning of Hawai`i's unfair and deceptive acts or practices ("UDAP") statute ("the UDAP statute"), HRS §§ 480-1, et seq.  Compl. ¶¶ 65, 80.  Plaintiff's First Cause of Action asserts that Defendant NAM (together with the Salisbury Defendants and Defendant Claraphi) "engaged in unfair and deceptive acts and practices by the use and employment of deception, fraud, false pretenses, misrepresentation, concealment, suppression, and omission of material facts," Compl. ¶ 67, through a course of conduct that included false representation about the value of churning the annuities, id. ¶¶ 67, 68, and the failure to provide "full

14

disclosures" regarding the annuities or "reasonably adequate information" about various conflicts of interest and the "inherent risks and minimal benefits of the annuities[,]" id. ¶¶ 68, 69.[2/]

Plaintiff's Second Cause of Action, entitled in part "Suitability," alleges simply that "[e]ach of the Defendants" violated the HRS § 480-2 "by selling [Plaintiff] the VOYA policy and setting up the financing arrangement, both of which were unsuitable for her and The Brody Family Trust's insurance and financial needs." Id. ¶ 80. Plaintiff's Third Cause of Action, asserted against all defendants and entitled "Elder Abuse," alleges that Plaintiff turned sixty-two years old sometime in 2012 and was therefore an "elder" under HRS § 480-13.5 when a

---

[2/] The Complaint's paragraph 73 goes on to make allegations against all defendants regarding the VOYA Policy and its premium financing arrangement, but Plaintiff concedes in her Opposition that, despite having leveled these allegations against Defendant NAM in her Complaint,

> her claims against [Defendant] NAM arise
> only from the annuity churning scheme and .
> . . because [Defendant] Salisbury was
> employed by [Defendant] NAM before the VOYA
> [P]olicy was purchased and the premium
> financing arrangement entered into,
> Plaintiff's allegations concerning the VOYA
> [P]olicy and premium financing arrangement
> do not include NAM.

Opp. at 9. The Court therefore looks only to those allegations against Defendant NAM that concern the alleged annuity churning scheme.

number of the alleged events took place.[3/]  Id. ¶ 84–90.

HRS § 480-2(a) provides that "[u]nfair methods of
competition and unfair or deceptive acts or practices in the
conduct of any trade or commerce are unlawful." "HRS § 480-2 . .
. was constructed in broad language in order to constitute a
flexible tool to stop and prevent fraudulent, unfair or
deceptive business practices for the protection of both honest
consumers and honest business[persons]." Haw. Comm. Fed. Credit
U. v. Keka, 94 Haw. 213, 228, 11 P.3d 1, 16 (2000) (latter
alteration in original) (citation and internal quotation marks
omitted).

In order to state a UDAP claim, a consumer[4/] must
allege: (1) a violation of HRS § 480-2; (2) injury to
plaintiff's business or property resulting from such violation;
and (3) proof of the amount of damages.  See Lizza v. Deutsche
Bank Nat. Trust Co., 1 F. Supp. 3d 1106, 1121 (D. Haw. 2014)
(citing Haw. Med. Ass'n v. Haw. Med. Serv. Ass'n, Inc., 113 Haw.

---

[3/] In other words, Plaintiff's Third Cause of Action is not in
fact a distinct claim, but rather asserts Plaintiff's
entitlement to an additional penalty of up to $10,000 for each
proven violation of Hawai`i's UDAP statute should she prevail.
See HRS § 480-13.5(a).
[4/] HRS § 480-1 defines "consumer" as "a natural person who,
primarily for primarily for personal, family, or household
purposes, purchases, attempts to purchase, or is solicited to
purchase goods or services or who commits money, property, or
services in a personal investment." Defendant NAM has not
disputed that Plaintiff is a "consumer."

77, 113–14, 148 P.3d 1179, 1215–16 (2006); In re Kekauoha–Alisa, 674 F.3d 1083, 1092 (9th Cir. 2012); HRS § 480–13(b)(1)).  "Any injury must be fairly traceable to the defendant's actions." In re Kekauoha-Alisa, 674 F.3d at 1092 (citing Flores v. Rawlings Co., LLC, 117 Haw. 153, 167 n.23, 177 P.3d 341, 355 n.23 (2008)).

A practice is unfair when it "offends established public policy and when the practice is immoral, unethical, oppressive, unscrupulous[,] or substantially injurious to consumers." Balthazar v. Verizon Haw., Inc., 109 Haw. 69, 77, 123 P.3d 194, 202 (2005) (citation and internal quotation marks omitted).

"A deceptive act or practice is '(1) a representation, omission, or practice that (2) is likely to mislead consumers acting reasonably under the circumstances where (3) the representation, omission, or practice is material.' The representation, omission, or practice is material if it is likely to affect a consumer's choice." Yokoyama v. Midland Nat'l Life Ins. Co., 594 F.3d 1087, 1092 (9th Cir.2010) (quoting Courbat v. Dahana Ranch, Inc., 111 Haw. 254, 262, 141 P.3d 427, 435 (2006)).  "Whether information is likely to affect a consumer's choice is an objective inquiry, 'turning on whether the act or omission is likely to mislead consumers as to information important to consumers in making a decision

17

regarding the product or service.'" <u>Yokoyama</u>, 594 F.3d at 1092 (quoting <u>Courbat</u>, 111 Haw. at 262, 141 P.3d at 435) (some internal quotation marks omitted).  "[A] failure to disclose relevant information may be actionable under [HRS § 480-2] if it is likely to mislead or deceive a reasonable customer." <u>Soule v. Hilton Worldwide, Inc.</u>, 1 F. Supp. 3d 1084, 1093 (citing <u>Courbat</u>, 111 Haw. at 263, 141 P.3d at 436).

Claims asserting deceptive conduct under HRS § 480-2 are subject to Rule 9(b)'s heightened pleading standard.  <u>See</u> <u>Smallwood v. NCsoft Corp.</u>, 730 F. Supp. 2d 1213, 1232-33 (D. Haw. 2010).  "To the extent Plaintiff is making claims under the 'unfair' prong of an unfair and deceptive practices claim that are not asserting fraudulent conduct, Rule 9(b)'s heightened pleading standard does not apply." <u>Soule</u>, 1 F. Supp. 3d at 1090 (D. Haw. 2014); <u>see also</u> <u>Bald v. Wells Fargo Bank, N.A.</u>, 688 F. App'x 472, 476-77 (9th Cir. 2017) (differentiating between the pleading standards required for putatively "unfair" practices and those arising under HRS § 480-2's "deceptive" prong).

HRS § 480-13.5 defines an "elder" as "a consumer who is sixty-two years of age or older," and provides that, "[i]f a person commits a violation under [HRS §] 480-2 which is directed toward, targets, or injures an elder, a court, in addition to any other civil penalty, may impose a civil penalty not to exceed $10,000 for each violation."

The statute of limitations for UDAP claims is four years, HRS § 480-24, which accrues upon the occurrence of the violation, McDevitt v. Guenther, 522 F. Supp. 2d 1272, 1289 (D. Haw. 2007).

## A. Timeliness

Defendant NAM asserts that all of Plaintiff's UDAP claims against it are time-barred.  Defendant NAM argues that "Plaintiff's Chapter 480 claims against [Defendant] NAM can only be based on alleged misconduct committed by [Defendant] Salisbury during his alleged employment with [Defendant] NAM (i.e., June 20, 2011 to April 30, 2013)." Mot. at 10–11. Pointing out that the complained-of acts must have occurred—and thus accrued—by April 30, 2013, and that Plaintiff did not file this action by April 30, 2017, Defendant NAM asserts that Plaintiff's UDAP claims are time-barred and fail as a matter of law.  Id. at 11.  In her Opposition, Plaintiff contends that her claims are not untimely because Defendant NAM, Defendant Claraphi, and the Salisbury Defendants fraudulently concealed their wrongdoing from her.  Opp. at 15.

But fraudulent concealment, being as it is an allegation of fraud, must be pled with particularity pursuant to Rule 9(b).  See, e.g., Molina v. OneWest Bank, FSH, 903 F. Supp. 2d 1008, 1018 (D. Haw. 2012); 389 Orange St. Partners v. Arnold, 179 F.3d 656, 662 (9th Cir. 1999).  And although Plaintiff makes

various assertions regarding these defendants' fraudulent conduct, she stops far short of alleging "the who, what, when, where, and how of the misconduct charged." Vess, 317 F.3d at 1106. Moreover (and as Plaintiff appears to capitulate by failing to argue otherwise), the Complaint does not appear to contain any allegations as to Defendant NAM that occurred after April 30, 2013 and that would make Plaintiff's October 23, 2018 assertion of UDAP claims timely. As pled, therefore, Plaintiff's UDAP claims against Defendant NAM are untimely and must be dismissed.

In addition, each of Plaintiff's first three causes of action fails for independent reasons. The Court will discuss each in turn.

### B. First Cause of Action

Defendant NAM asserts that Plaintiff's First Cause of Action against it should be dismissed because: (1) it fails to allege with sufficient particularity the deceptive conduct with which Defendant NAM is charged, see Mot. at 8–9; and (2) it is time-barred, id. at 10–11.

The Court concurs that Plaintiff's allegations against Defendant NAM are insufficiently particularized, and therefore finds dismissal of Plaintiff's First Cause of Action against Defendant NAM to be appropriate on that ground. As alleged, all of Plaintiff's First Cause claims against Defendant NAM sound in

deception, and yet her allegations are lacking necessary details. See Rule 9(b). Given that Plaintiff was the one to whom the alleged misrepresentations were made, and the one who received information she now contends was materially incomplete, this is not a situation where the facts surrounding fraud are "peculiarly within the opposing party's knowledge," such that the Rule 9(b) pleading standard is relaxed. See Puri, 674 F. App'x at 687.[5/]

Moreover, in Hawai`i, an allegedly fraudulent statement is actionable as such only if it relates "to a past or existing material fact and not the occurrence of a future event." Shoppe v. Gucci Am., Inc., 94 Haw. 368, 386, 14 P.3d 1049, 1067 (2000) (citation omitted); see also id. ("Fraud cannot be predicated on statements which are promissory in their nature, or constitute expressions of intention, and an actionable representation cannot consist of mere broken promises, unfulfilled predictions or expectations, or erroneous conjectures as to future events[.]" (citation omitted)). Although the issue is not here dispositive, the Court notes that many of the allegedly deceptive and fraudulent statements of

---

[5/] Moreover, even if this were such a situation, Plaintiff would be obligated to plead the necessary facts on information and belief, accompanying her allegations with a statement of the facts upon which the belief was founded. See Puri, 674 F. App'x at 687.

which Plaintiff complains are not, under Hawai`i law, actionable as fraud insofar as they are concerned with future events. <u>See, e.g.</u>, Compl. ¶ 68 (alleging that defendants "falsely represent[ed] . . . that the surrender charges would be offset by the new annuity.").

Because Plaintiff's First Cause of Action is untimely as pled, and because Plaintiff's pleading falls short of providing "the who, what, when, where, and how of the misconduct charged," <u>Vess</u>, 317 F.3d at 1106, her First Cause of Action against Defendant NAM fails.

## C. Second Cause of Action

Defendant NAM asserts that Plaintiff's Second Cause of Action (entitled "Unsuitability") must fail as against it because, by its terms, it solely concerns to VOYA Policy and the associated premium financing arrangement, both of which post-dated its involvement with either Defendant Salisbury or Plaintiff by a number of years. <u>See</u> Mot. at 9-10. Plaintiff does not directly address her Second Cause of Action or Defendant NAM's argument in her Opposition, but concedes that her "allegations concerning the VOYA [P]olicy and premium financing arrangement do not include [Defendant] NAM." Opp. at 9.[6/] In light of this concession, and because Defendant NAM is

---

[6/] The Court advises Plaintiff that, should she elect to amend
(Continued . . .)

not alleged to have been involved in the events surrounding the VOYA Policy and its premium financing arrangement, the Court finds that dismissal of Plaintiff's Second Cause of Action as against Defendant NAM is appropriate.

### D. Third Cause of Action

Plaintiff's Third Cause of Action for "Elder Abuse" is not a stand-alone claim, but rather a claim for heightened civil penalties under the UDAP statute. <u>See</u> HRS § 480-13.5. Insofar as Plaintiff is attempting to plead her Third Cause of Action as a claim separate and apart from her substantive UDAP claims, it is dismissed.

### II. Fraudulent Suppression/Concealment (Fourth Cause of Action)

Plaintiff alleges that Defendant NAM, together with the Salisbury Defendants and Defendant Claraphi, were "under a duty to disclose certain material facts to [Plaintiff] regarding the financial transactions performed on [her] behalf." Compl. ¶ 92. According to the Complaint, these defendants

> suppressed the truth and failed to disclose pertinent and material facts, including but not limited to:
> a. the substantial commissions the Salisbury Defendants, NAM, and Claraphi earned from churning Ryan's annuities;

---

(. . .)
her Complaint, she should take care to assert each of her claims only against those defendants whom she actually wishes to charge.

      b. the risks associated with churning
         annuities;
      c. that Ryan was victim of a churning scheme;
         [and]
      d. the conflicts of interest existing between
         the seller of the annuities (the Salisbury
         Defendants, NAM, and Claraphi) and the
         purchaser ([Plaintiff]), i.e. that the
         primary purpose for recommending the
         annuities in question was to generate
         commissions and profits for the Salisbury
         Defendants, NAM, and Claraphi and that the
         conflicts of interests were detrimental to
         Ryan[.]

Id. ¶ 93.[7/] The Complaint further alleges that Plaintiff took detrimental action she would not have taken had she known the truth, id. ¶ 95, and that the actions of the four defendants in question in suppressing the truth were either intentional or reckless, id. ¶ 96.

Although the term "fraudulent suppression" appears very infrequently in Hawai`i law, and is virtually absent from modern cases, Plaintiff may be attempting to assert a claim for fraudulent concealment. "A claim for 'fraudulent concealment' is simply a type of fraud based on 'fraud by omission and concealment, and not just affirmative conduct.'" Skyline Zipline

---

[7/] The Complaint's paragraph 93 goes on to discuss information regarding the VOYA Policy and its premium financing arrangement allegedly suppressed by these defendants, but as Plaintiff concedes in her Opposition that "Plaintiff's allegations concerning the VOYA [P]olicy and premium financing arrangement do not include NAM," Opp. at 9, the Court therefore looks only to those allegations against Defendant NAM that concern the alleged annuity churning scheme.

Glob., LLC v. Domeck, No. CIV. 12-00450 JMS, 2013 WL 1103084, at *9 (D. Haw. Mar. 15, 2013) (quoting Tachibana v. Colo. Mountain Dev., Inc., 2011 WL 1327113, at *3 n.7 (D. Haw. Apr. 5, 2011)). "[A] defendant may be liable for a 'fraudulent concealment' where it (1) fails to disclose a fact that it knows may cause the plaintiff to act; and (2) the defendant had a duty to the plaintiff to exercise reasonable care to disclose that fact." Skyline Zipline Glob., LLC, 2013 WL 1103084, at *9 (citing Television Events & Mktg., Inc. v. Amcon Distrib. Co., 488 F.Supp. 2d 1071, 1081 (D.Haw. 2006)). Sounding in fraud, claims for fraudulent concealment must be pled with particularity. See Rule 9(b).

Defendant NAM contends that Plaintiff's Fourth Cause of Action fails as against it because: (1) Plaintiff fails to "allege with particularity the facts that triggered some purported duty owed by [Defendant] NAM to Plaintiff," Mot. at 12–13; and (2) the Complaint is devoid of the requisite particularity with regard to the "who, what, when, where, and how," see id. In her Opposition, Plaintiff, citing United States ex rel. Anita Silingo v. WellPoint, Inc., 904 F.3d 667, 678 (9th Cir. 2018) and Rubenstein, 687 F. App'x at 567, contends that, "[b]ecause Salisbury and his employers are largely alleged to have engaged in the same conduct, there was no reason (and no way) for Plaintiff to differentiate among

those allegations that are common to the group[.]" Opp. at 16 (internal quotation marks and brackets omitted). Plaintiff goes on to argue that her failure to attribute any acts of fraudulent concealment to Defendant NAM specifically is excusable under Silingo because the fraudulent scheme she complains of is a "wheel conspiracy," such that parallel actions of the "spokes" may be addressed by collective allegations. Id. at 17 (citing Silingo, 904 F.3d at 678).

As a threshold matter, Defendant NAM cites to no authority, and nor can the Court locate any, for the proposition that a plaintiff pleading fraudulent concealment must allege with particularity not only the circumstances constituting fraud, Rule 9(b), but the existence of a duty. However, the Court concurs with Defendant NAM that Plaintiff has failed to make sufficient allegations giving rise to an inference that Defendant NAM owed Plaintiff a duty to disclose the facts she alleges it withheld.

Plaintiff alleges that Defendant NAM was her "financial advisor," Compl. ¶ 92, and later in her Complaint alleges that Defendant NAM was a "fiduciar[y]" and that Plaintiff "trusted and relied upon . . . [Defendant] NAM . . . to advise her in making and managing her investments, protecting her assets and/or entering into insurance transactions," id. ¶ 105; see also id. ¶ 14 (alleging that Defendant NAM "is

registered with the SEC as a Registered Investment Advisor").

"A fiduciary is generally defined as '[a] person who is required to act for the benefit of another person on all matters within the scope of their relationship; one who owes to another the duties of good faith, trust, confidence, and candor[.]'" United States v. Milovanovic, 678 F.3d 713, 722 (9th Cir. 2012), as amended (May 22, 2012) (quoting Black's Law Dictionary (9th ed.)).  And the United States Supreme Court has recognized that § 206 of the Investment Advisors Act imposes fiduciary duties on registered investment advisors.  See Transamerica Mortg. Advisors, Inc. (TAMA) v. Lewis, 444 U.S. 11, 17 (1979).  But here, Plaintiff has failed to adequately allege the nature or scope of her relationship with Defendant NAM.  The Complaint contains no allegations concerning any agreement between them, and Plaintiff's factual allegations are insufficiently detailed or precise to raise the inference that Defendant NAM "had a duty to the plaintiff to exercise reasonable care to disclose" the facts she claims were concealed from her.[8/]  Skyline Zipline Glob., LLC, 2013 WL 1103084, at *9 (citation omitted); see Compl. ¶ 105 (alleging that Plaintiff

---

[8/] The Court notes that HRS § 431:10D-623 imposes a duty of disclosure in some transactions involving annuities, but that Plaintiff had not pled facts tending to show that Defendant NAM is an insurance producer or an insurer, or that it made any recommendations to Plaintiff regarding annuity transactions, as would bring it within HRS § 431:10D-623's purview.

"trusted and relied upon . . . [Defendant] NAM . . . to advise her in making and managing her investments, protecting her assets and/or entering into insurance transactions" (emphasis added)); see also Bank of Am., N.A. v. Enright, No. 1:11-CV-00656-EJL, 2013 WL 6157933, at *4 (D. Idaho Nov. 22, 2013), aff'd, 662 F. App'x 518 (9th Cir. 2016) (noting that plaintiffs who alleged that defendant's employee was their "fiduciary advisor," "trusted agent," and "financial advisor" were "using conclusory allegations of law and unwarranted inferences"); Bank of Am., N.A. v. Enright, 662 F. App'x 518, 520 (9th Cir. 2016) (affirming district court and noting that plaintiffs "failed to plead facts to support their conclusory allegation that [defendant's employee] . . . was acting as their financial advisor").

Plaintiff falls far short of sufficient pleading in her allegations of fraudulent concealment in other ways as well. Plaintiff cannot seriously be alleging, for example, that Defendants Claraphi and NAM—who appear to have employed Defendant Salisbury at different, nonconcurrent times—made or were responsible for the exact same acts of concealment, such that enumeration of their separate conduct is unnecessary. Nor does the Court believe that the place, time, and precise content of each of the allegedly deficient representations that was made to Plaintiff are exclusively within the opposing parties'

knowledge, see Rubenstein, 687 F. App'x at 567–68, such that a relaxed pleading standard is appropriate.[9]

Because Plaintiff has failed to plead her Fourth Cause of Action with the required particularity, it is dismissed as against Defendant NAM.

### III. Fraudulent Misrepresentation (Fifth Cause of Action)

Plaintiff alleges that, "while serving as [Plaintiff's] investment advisor," Defendant NAM (together with the Salisbury Defendants and Defendant Claraphi) "misrepresented pertinent and material facts, including but not limited to . . . representing to [Plaintiff] that the high surrender charges associated with her surrendered annuities would be offset by the newer annuities." Compl. ¶¶ 99, 99.f. "These representations were false, and [all four defendants] knew they were false." Id. ¶ 100. Plaintiff further alleges that all four defendants intended for Plaintiff to act on their misrepresentations so that they might benefit in the form of "substantial commissions," id. ¶ 101, and that Plaintiff "detrimentally relied on these misrepresentations and incurred substantial financial losses," id. ¶ 102.

---

[9] The Court further notes that, even if the circumstances were such as to make relaxation of Rule 9(b)'s strictures appropriate, Plaintiff would still be obliged to make the requisite pleading on information and belief, accompanying her pleading with "a statement of the facts upon which the belief is founded." Puri v. Khalsa, 674 F. App'x at 687.

Under Hawai`i law, the elements constituting fraudulent misrepresentation are that: "(1) false representations were made by defendants; (2) with knowledge of their falsity (or without knowledge of their truth or falsity); (3) in contemplation of plaintiff's reliance upon these false representations; and (4) plaintiff did rely upon them." Ass'n of Apartment Owners of Newtown Meadows ex rel. its Bd. of Directors v. Venture 15, Inc., 115 Haw. 232, 263, 167 P.3d 225, 256 (2007) (citation, internal quotation marks, and brackets omitted).

Plaintiff's pleading of her Fifth Cause of Action suffers from the same infirmities as does her Fourth, and so dismissal of this claim as to Defendant NAM is appropriate. Moreover, and as the Court noted previously, allegations of fraud cannot, under Hawai`i law, be based upon statements relating to "the occurrence of a future event" or upon "unfulfilled predictions." Shoppe, 94 Haw. at 386, 14 P.3d at 1067; see Compl. ¶ 99.f ("representing to [Plaintiff] that the high surrender charges associated with her surrendered annuities would be offset by the newer annuities.").[10]

_____

[10] To the extent Plaintiff's Fifth Cause of Action is based on statements not enumerated in her Complaint's paragraphs 98–103, see Compl. ¶ 99 (charging five defendants with "misrepresent[ing] pertinent and material facts, including but not limited to . . . "), the Court strongly recommends that, should Plaintiff file an amended complaint, she enumerate within her Fifth Cause of Action those statements she challenges as having constituted fraudulent misrepresentation. See Rule 9(b).

Plaintiff's Fifth Cause of Action is dismissed as to Defendant NAM.

### IV.  Breach of Fiduciary Duty (Sixth Cause of Action)

Plaintiff alleges that Defendant NAM (together with the Salisbury Defendants and Defendant Claraphi) was her financial advisor.  Compl. ¶ 92.  Plaintiff further alleges that,

> as fiduciaries, the Salisbury Defendants, NAM, and Claraphi owed to [Plaintiff] duties including: (1) to recommend investments only after becoming sufficiently informed as to their nature, price, and financial prognosis, (2) to inform [Plaintiff] of the risks involved in purchasing particular securities, (3) to refrain from self-dealing, (4) to not misrepresent any material fact, (5) to adequately and forthrightly explain the potential risks of the investments, and (6) to act in [Plaintiff]'s best interests.

Id. ¶ 105; see also id. ¶ 107 ("The Salisbury Defendants, NAM, and Claraphi owed [Plaintiff] the duties of loyalty, honesty, fidelity, trust, and due care in their fiduciary obligations.").  Plaintiff alleges that these four defendants violated their fiduciary duties

> by, inter alia:
> a. unreasonably and in bad faith, refusing to give sufficient consideration to Ryan's welfare rather than their own financial interests;
> b. churning Ryan's annuities; [and]
> c. failing to fully disclose the true characteristics of the annuities sold to Ryan, including the consequences of

surrendering Ryan's annuities[.]

Id. ¶ 108.[11/]  The Complaint asserts that Defendant NAM breached its fiduciary duty recklessly or knowingly, and that she was injured as a direct and proximate result.  Id. ¶ 110-12.

"In general, '[t]he elements of a cause of action for breach of fiduciary duty are: 1) the existence of a fiduciary duty; 2) a breach of the fiduciary duty; and 3) resulting damage.'" Seo Kyoung Won v. England, 2009 WL 10677756, at *7 (D. Haw. Aug. 13, 2009) (quoting Pellegrini v. Weiss, 165 Cal App. 4th 515, 524 (2008)); see Swift v. Swift, 2016 WL 3573970, at *3 (Ct. App. June 30, 2016).  Whether a fiduciary duty exists is a question of law.  Lahaina Fashions, Inc. v. Bank of Haw., 131 Haw. 437, 453-54, 319 P.3d 356, 372-73 (2014).

Defendant NAM contends that this claim "fails for lack of any factual allegations that could plausibly establish either a fiduciary relationship between NAM and Plaintiff or a breach of any fiduciary duty owed." Mot. at 16.  Leaving aside those of Plaintiff's allegations that constitute legal conclusions regarding the existence and scope of the duties owed to Plaintiff by Defendant NAM, the Court concludes that Plaintiff

---

[11/] Plaintiff also makes various allegations against these four defendants with respect to the VOYA Policy, but again, because Plaintiff concedes in her Opposition that the Complaint's assertion of these claims against Defendant NAM is erroneous, see Opp. at 9, the Court considers only the allegations regarding the alleged annuity churning.

has failed to make allegations sufficient to support an inference that Defendant NAM owed Plaintiff fiduciary duties. See Sec. II, supra.  Plaintiff's Sixth Cause of Action is therefore dismissed as against Defendant NAM.

## V.    Vicarious Liability/Respondeat Superior (Seventh Cause of Action)

Plaintiff alleges that "[a]t all times, Defendant Salisbury acted within the scope of, and in the course of his employment with, or under the direction and control of the other Defendants who retained the right to control, direct, and/or manage, including . . . [Defendant] NAM[.]" Compl. ¶ 115. According to Plaintiff, Defendant NAM (as well as seven other defendants) "knew of and authorized [Defendant] Salisbury's position as an investment advisor representative and appointed agent with the ability and authority to sell the annuities and life insurance policies in question, and to orchestrate the premium financing arrangement." Id. "Therefore, under the doctrines of vicarious liability and respondeat superior[,] . . . [Defendant] NAM . . . [is] liable for the wrongful acts committed" by Defendant Salisbury.  Id.

Respondeat superior is a theory of liability rather than an independent cause of action.  Lopeti v. Alliance Bancorp, No. CV 11-00200 ACK-RLP, 2011 WL 13233545, at *15 (D. Haw. Nov. 4, 2011); see also McCormack v. City and Cty. of

Honolulu, No. CIV. 10-00293 BMK, 2014 WL 692867, at *2-3 (D. Haw. Feb. 20, 2014), aff'd, 683 F. App'x 649 (9th Cir. 2017) (noting that "[c]ourts dismiss stand-alone claims for respondeat superior." (citations omitted)).

Defendant NAM contends that Plaintiff's Seventh Cause of Action should be dismissed as against it not just because it fails to state a stand-alone claim, but also because the sole factual allegation relating to events that transpired during the term of Defendant Salisbury's alleged employment with Defendant NAM (June 20, 2011 through April 30, 2013, Compl. ¶ 14) is that contained in the Complaint's paragraph 38: Regarding North American Company Individual Flexible Premium Deferred Annuity #XXX 2105, Plaintiff "paid an additional premium of $598,595.71 on or about April 27, 2012," id. ¶ 38; see Mot. at 19. "This factual allegation of an event that transpired during [Defendant] Salisbury's alleged 'employment' with [Defendant] NAM is inadequate to establish any type of negligent act within the scope of [Defendant] Salisbury's purported employment with [Defendant] NAM." Mot. at 19. In response, Plaintiff asserts that her April 27, 2012 payment was undertaken on Defendant Salisbury's advice, and describes his giving such advice as having been "among [Defendant] Salisbury's many negligent acts." Opp. at 23.

Plaintiff's contention that this payment was made on

Defendant Salisbury's advice does not appear in her Complaint, and nor does the Complaint allege that any other wrongful act on Defendant Salisbury's part took place in the time period in which he was putatively employed by Defendant NAM.  Although the Complaint does note that the identified annuity transactions were "not intended to serve as an exhaustive list of every annuity or investment that [Defendant] Salisbury churned to [Plaintiff]'s detriment," Compl. ¶ 39, a broad assertion that annuity churning took place, even together with the inference that some of it may have happened while Defendant Salisbury was allegedly in Defendant NAM's employ, does not amount to a plausible assertion of Plaintiff's entitlement to relief from Defendant NAM under the theory of respondeat superior.

Insofar as Plaintiff is attempting to assert her Seventh Cause of Action as a stand-alone claim against Defendant NAM, it is dismissed.  And it is also dismissed to the extent it asserts a theory of liability for the allegedly wrongful acts of Defendant Salisbury while he was putatively employed by Defendant NAM, because the Complaint contains no allegations of wrongdoing by Defendant Salisbury within the period of time he is alleged to have been Defendant NAM's employee.

## VI.  Violations of the Hawai`i Securities Act (Eighth Cause of Action)

Plaintiff alleges that Defendant NAM (along with the

Salisbury Defendants and Defendant Claraphi) advised her "to forego suitable investments in securities, and to instead surrender various annuities at high surrender charges for other annuities bearing similar surrender charges." Compl. ¶ 120.[12/] These four defendants "also received, directly or indirectly, consideration from [Plaintiff] for providing investment advice." Id. Plaintiff alleges that Defendant NAM "violated the Hawai`i Securities Act ([HRS] §§ 485A-502, 485A-509) by employing a device, scheme, or artifice to defraud [Plaintiff] and by engaging in a course of business which operated as a fraud or deceit on [her]." Id. Plaintiff also assets that these four defendants

> violated [HRS] § 485-25(a)(2) by making
> untrue statements of material fact and
> omitting material facts, which made their
> statements misleading. In connection with
> providing investment advice to [Plaintiff],
> the Salisbury Defendants, [Defendant] NAM,
> and [Defendant] Claraphi represented that
> the recommended investments and investment
> strategies were suitable for [Plaintiff's]
> financial needs and that any high surrender
> charges associated with the surrender of
> [Plaintiff's] existing annuities would be
> offset by the performance of other
> investments without disclosing the risks
> associated with these investments or
> strategies.

---

[12/] Plaintiff's Eighth Cause of Action also contains allegations against Defendant NAM regarding the VOYA Policy. See, e.g., Compl. ¶ 120. Per Plaintiff's concession that such allegations were erroneously asserted as against Defendant NAM, see Opp. at 9, the Court does not consider them.

¶ 121.

HRS § 485A-502(a) makes it unlawful for a person who advises others for compensation as to the advisability of investing in, purchasing, or selling securities "(1) [t]o employ a device, scheme, or artifice to defraud another person; or (2) [t]o engage in an act, practice, or course of business that operates or would operate as a fraud or deceit upon another person." HRS § 485A-509(b) creates liability in the seller to the purchaser for, _inter alia_, selling a security to a purchaser by means of an untrue statement or omission of material fact. HRS § 485A-509(a) provides that "[e]nforcement of civil liability under this section shall be subject to the Securities Litigation Uniform Standards Act of 1998." And HRS § 485-509(j)(2) provides that "[a] person may not obtain relief . . . [u]nder subsection (b) other than for violation of section 485A-301, or under subsection (c) or (f), unless the action is instituted within the earlier of two years after discovery of the facts constituting the violation or five years after the violation." HRS § 485-25(a)(2), which made it unlawful for a person in the sale of a security to make any untrue statement of material fact or omission of material fact, was repealed in 2008. Laws 2006, ch. 229, § 17, eff. July 1, 2008.

Defendant NAM argues that Plaintiff's claim under HRS § 485-502 is time-barred, reasoning that "[a]s Plaintiff's

Chapter 485A claim is based on alleged misconduct by [Defendant] Salisbury committed during his alleged employment with [Defendant] NAM (i.e., June 20, 2011 to April 30, 2013), the alleged misconduct must have occurred by April 30, 2013." Mot. at 22.  Given that Plaintiff did not file this action until October 23, 2018—i.e., more than five years after the alleged misconduct could have occurred—Defendant NAM asserts that Plaintiff has failed to institute her action "within the earlier of two years after discovery of the facts constituting the violation or five years after the violation." HRS § 485-509(j)(2); see Mot. at 22.  Plaintiff's Opposition, meanwhile, makes no mention of her Eighth Cause of Action.  At the hearing on this Motion, Plaintiff's counsel agreed that her Eighth Cause of Action is time barred.

The Court concurs that Plaintiff has failed to timely assert claims under HRS §§ 485A-502 and 485-509.  The Complaint does not appear to allege any wrongdoing by Defendant NAM outside the timeframe of its alleged employment of Defendant Salisbury, and any claims of wrongdoing within that timeframe are untimely.  See HRS § 485-509(j)(2).  Dismissal of Plaintiff's claims under HRS §§ 485A-502 and 485-509 is appropriate.

Moreover, the Court notes that the conduct sought to be prohibited by the cited statutes is fraudulent, which

requires particularized pleading.  See Fed. R. Civ. P. 9(b).
Plaintiff fails to allege the time and place of the alleged
misrepresentations, and so the claims asserted in her Eighth
Cause of Action fail for that reason as well.  See Swartz, 476
F.3d at 764; Vess, 317 F.3d at 1106.

## VII. Control Person Liability (Ninth Cause of Action)

Plaintiff alleges that Defendant NAM "directly or
indirectly had the practical ability and power to control
Defendant Salisbury," and that it, together with Defendants
Claraphi and Salisbury, is therefore jointly and severally
liable, under HRS § 485A-509(g), "for the losses created by
their wrongful conduct." Compl. ¶ 124.  Plaintiff further
alleges that all three defendants "either had conscious
involvement in the impropriety that caused [Plaintiff's] damages
and loss or had constructive notice of the intended
impropriety." Id. ¶ 125.  Asserting that Defendant NAM "had an
awareness that its . . . role was part of the overall activity
that was improper," Plaintiff claims that Defendant NAM "also
aided and abetted the violations and illegality alleged herein."
Id.

In pertinent part, HRS § 485A-509(g) provides that

The following persons are liable jointly and
severally with and to the same extent as
persons liable under subsections (b) to (f):
(1)  A person that directly or indirectly
     controls a person liable under subsections

39

(b) to (f), unless the controlling person
sustains the burden of proof that the
person did not know, and in the exercise
of reasonable care could not have known,
of the existence of conduct by reason of
which the liability is alleged to exist;
[and]
. . .

(4) A person that is a broker-dealer,
agent, investment adviser, or investment
adviser representative that materially
aids the conduct giving rise to the
liability under subsections (b) to (f),
unless the person sustains the burden of
proof that the person did not know and, in
the exercise of reasonable care could not
have known, of the existence of conduct by
reason of which liability is alleged to
exist.

Defendant NAM argues that the only period in which it

could possibly be said to have "directly or indirectly

control[led]" Defendant Salisbury was during the period of the

latter's putative employ with it, and that, by HRS § 485A-

509(g)'s terms, "Plaintiff must plausibly allege a primary

violation by [Defendant] Salisbury" during that time. See Mot.

at 23. Given that the Complaint's only allegation as to that

time period is that Plaintiff "paid an additional premium of

$598,595.71 on or about April 27, 2012" in connection with North

American Company Individual Flexible Premium Deferred Annuity

#XXX 2105, Compl. ¶ 38—an allegation that does not implicate

Defendant Salisbury, the primary actor through whom Plaintiff

would assign HRS § 485A-509(g) liability—Defendant NAM contends

that Plaintiff's Ninth Cause of Action against it should be

dismissed. Plaintiff does not address her ninth claim or
Defendant NAM's arguments in her Opposition. At the hearing on
this Motion, Plaintiff's counsel agreed that the Ninth Cause of
Action should be dismissed.

As discussed above, Plaintiff has failed to allege any
wrongful conduct by Defendant Salisbury that occurred during the
term of his alleged employment with Defendant NAM. Therefore,
and because liability under HRS § 485A-509(g) requires the
allegation of a primary violation by a person subject to a
defendant's control, Plaintiff's Ninth Cause of Action against
Defendant NAM is dismissed.

## VIII.    Federal Civil RICO (Tenth and Eleventh Causes of Action)

Plaintiff's Tenth and Eleventh Causes of Action,
asserted against all defendants, arise out of the Racketeer
Influenced and Corrupt Organizations Act ("federal civil RICO").
In her Tenth Cause of Action, Plaintiff asserts that "Defendants
have intentionally participated in at least one of two schemes
to defraud [Plaintiff] of her money" [13/] in violation of 18 U.S.C.

---

[13/] Plaintiff identifies two enterprises and alleges that each
"market[ed] and s[old] unsuitable financial products to
[Plaintiff] while concealing the true nature of the products[.]"
Compl. ¶ 130. Plaintiff alleges that the "VOYA Enterprise"
operated "[w]ith respect to the VOYA [P]olicy and the premium
financing arrangement associated with" the Policy, and was made
up of the Salisbury Defendants, Accelerated Estate Planning, LLC
(Continued . . .)

§ 1962(c).  Compl. ¶ 128; see also id. ¶ 127, 129–151.

Plaintiff's Eleventh Cause of Action alleges that all defendants

conspired, in one of two enterprises or schemes, to violate 18

U.S.C. § 1962(c) and "defraud" Plaintiff of her money, in

violation of 18 U.S.C. § 1962(d).

Under 18 U.S.C. § 1962(c), it is illegal "for any

person employed by or associated with any enterprise engaged in,

or the activities of which affect, interstate or foreign

commerce, to conduct or participate, directly or indirectly, in

the conduct of such enterprise's affairs through a pattern of

racketeering activity or collection of unlawful debt."  A

private right of action for federal civil RICO violations is

provided in 18 U.S.C. § 1964(c).  And under 18 U.S.C. § 1962(d),

it is illegal "for any person to conspire to violate" 18 U.S.C.

§ 1962(a), (b), or (c).

"To prevail on a civil RICO claim, a plaintiff must

prove that [each] defendant engaged in (1) conduct (2) of an

enterprise (3) through a pattern (4) of racketeering activity

_____

(. . .)
(which has now been dismissed), and Defendants Claraphi, NAM,
Diyanni, Lake Forest, Wintrust, ACA, SLD, and Bellini.  Id. ¶
130a.  Plaintiff further alleges that the "Annuities
Enterprise," which operated "[w]ith respect to the annuity
churning scheme[,]" comprised the Salisbury Defendants,
Accelerated Estate Planning, LLC, and Defendants Claraphi and
NAM.  Id. ¶ 130b; but see Opp. at 9, 24 (acknowledging error in
the Complaint's assertion of Defendant NAM's membership in the
alleged "VOYA Enterprise").

and, additionally, must establish that (5) the defendant caused injury to plaintiff's business or property." Chaset v. Fleer/Skybox Int'l, LP, 300 F.3d 1083, 1086 (9th Cir. 2002) (citing 18 U.S.C. §§ 1962(c), 1964(c)). Regarding the fifth element, "[a] plaintiff must show that the defendant's RICO violation was not only a 'but for' cause of his injury, but that it was a proximate cause as well." Oki Semiconductor Co. v. Wells Fargo Bank, Nat. Ass'n, 298 F.3d 768, 773 (9th Cir. 2002) (citing Holmes v. Sec. Inv'r Prot. Corp., 503 U.S. 258, 268–69 (1992)). "Some 'direct relationship' between the injury asserted and the injurious conduct is necessary." Oki Semiconductor Co., 298 F.3d at 773 (quoting Holmes, 503 U.S. at 269). "To establish proximate cause, plaintiffs must show that their injury flows directly from the defendants' commission of the predicate acts." Pedrina v. Chun, 906 F. Supp. 1377, 1415 (D. Haw. 1995) (citation omitted).

"'[T]o conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs,' § 1962(c), one must participate in the operation or management of the enterprise itself." Reves v. Ernst & Young, 507 U.S. 170, 185 (1993). "[O]ne must have some part in directing [the enterprise's] affairs." Id. at 179.

For purposes of federal civil RICO, an "enterprise" includes "any individual, partnership, corporation, association,

or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). To show an associated-in-fact enterprise, a plaintiff must plead three elements: (1) common purpose; (2) an "ongoing organization," either formal or informal; and (3) that "the various associates function as a continuing unit." Odom v. Microsoft Corp., 486 F.3d 541, 552 (9th Cir. 2007) (citing United States v. Turkette, 452 U.S. 576, 583 (1981)).

A "pattern ... requires at least two acts of racketeering activity," 18 U.S.C. § 1961(5), and "also requires proof that the racketeering predicates are related and 'that they amount to or pose a threat of continued criminal activity.'" Turner v. Cook, 362 F.3d 1219, 1229 (9th Cir. 2004) (quoting H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 237–38 (1989)). And racketeering activity "is any act indictable under various provisions of 18 U.S.C. § 1961 and includes the predicate acts alleged in this case of mail fraud and wire fraud under 18 U.S.C. §§ 1341 and 1343." Forsyth v. Humana, Inc., 114 F.3d 1467, 1481 (9th Cir. 1997), overruled on other grounds by Lacey v. Maricopa Cty., 693 F.3d 896 (9th Cir. 2012) (en banc).

With respect to mail and wire fraud, Plaintiff must allege the following elements: "(1) formation of a scheme or artifice to defraud; (2) use of the United States mails or

wires, or causing such a use, in furtherance of the scheme; and

(3) specific intent to deceive or defraud." Sanford v.

MemberWorks, Inc., 625 F.3d 550, 557 (9th Cir. 2010) (citation

omitted). Under Rule 9(b), "[w]hile the elements of knowledge

and intent may be averred generally, the factual circumstances

of the fraud itself require particularized

allegations." Queen's Med. Ctr. v. Kaiser Found. Health Plan,

Inc., 948 F. Supp. 2d 1131, 1158 (D. Haw. 2013) (citing Sanford,

625 F.3d at 558); but see Puri v. Khalsa, 674 F. App'x 679, 687

(9th Cir. 2017) (noting that where facts are peculiarly within

opposing parties' knowledge, pleading fraud on information and

belief is permissible when such pleading is accompanied by a

statement of the facts upon which the belief is founded).

To state a claim for conspiracy to violate RICO under

§ 1962(d), a plaintiff must allege "either an agreement that is

a substantive violation of RICO or that the defendants agreed to

commit, or participated in, a violation of two predicate

offenses." Howard v. Am. Online, Inc., 208 F.3d 741, 751 (9th

Cir. 2000). "The illegal agreement need not be express as long

as its existence can be inferred from the words, actions, or

interdependence of activities and persons involved." Oki

Semiconductor Co. v. Wells Fargo Bank, 298 F.3d 768, 775 (9th

Cir. 2002). Under § 1962(d), while a conspiracy defendant need

not have personally committed a predicate act, or even an overt

act in furtherance of the RICO conspiracy, the defendant must be "aware of the essential nature and scope of the enterprise and intended to participate in it." Baumer v. Pachl, 8 F.3d 1341, 1346 (9th Cir. 1993). "[T]he failure to adequately plead a substantive violation of RICO precludes a claim for conspiracy." Howard, 203 F.3d at 751.

The Court finds Plaintiff's Tenth Cause of Action deficient as against Defendant NAM on a number of grounds. First, Plaintiff fails to allege how Defendant NAM participated in the "conduct" of the alleged enterprise—how it had any "part in directing [the enterprise's] affairs," or indeed participated in the alleged enterprise at all. See Reves, 507 U.S. at 179. Second, leaving its conclusory allegations aside, the Complaint fails to allege Defendant NAM's involvement in any "enterprise"— that is, how it participated with the other members of the alleged "Annuities Enterprise" in an "ongoing organization" that served as "a vehicle for the commission of two or more predicate crimes." Odom, 486 F.3d at 552 (internal quotation marks and citation omitted). Third, Plaintiff fails to allege in a non-conclusory manner how Defendant NAM, Defendant Claraphi, Defendant Salisbury, and Defendant C. Salisbury, LLC "function[ed] as a continuing unit." Id.

Fourth, the Complaint's allegations of the predicate acts of wire and mail fraud are insufficient. Plaintiff alleges

that "[m]any of the precise dates for the VOYA Enterprise['s] .

. . . fraudulent uses of the U.S. Mail and wire facilities have

been deliberately hidden and cannot be alleged without access to

Defendants' books and records." Compl. ¶ 148.  But even under a

relaxed standard, Plaintiff's allegations of the predicate acts

of mail and wire fraud are wanting.  Plaintiff not only fails to

allege "precise dates," she fails to allege any dates at all,[14/]

and indeed to state which defendants are alleged to have

committed which predicate acts.  As iterated, the Complaint's

RICO allegations leave both the Court and the defendants in the

dark as to who is alleged to have done what and when.

This is not a corporate fraud case, which the Ninth

Circuit has recognized as an appropriate circumstance in which

to relax Rule 9(b)'s particularity requirement with respect to

---

[14/] Some of the allegations concerning the Annuity Enterprise's
predicate acts may, with some searching, be linked to dates
iterated earlier in the Complaint.  See, e.g., Compl. ¶¶
148.b.ii (alleging "facilitating the premium payments, surrender
charges, and other fees for the numerous annuity products
outlined above" as a predicate act), 34 (alleging the dates upon
annuities were issued and surrendered).  Others, although almost
certainly not exclusively within defendants' knowledge, do not
appear in the Complaint's seventy-five pages to have any dates
attached to them.  See, e.g., id. ¶ 148.b.i (alleging
 "facilitating the applications for the applications for the
numerous annuity products outlined above, including forwarding
[Plaintiff] signature pages" as a predicate act).  The Court
expects that any amended complaint will lay out its allegations
in a far more orderly fashion so that neither the Court nor the
defendants need undertake a searching review of the Complaint's
entirety in order to make sense of individual claims or
allegations.

the allegedly fraudulent conduct of each individual.  See, e.g.,
Moore, 885 F.2d at 540; Wool, 818 F.2d at 1440.  Nor, as
explained above, does this appear to be a case in which all
defendants "are alleged to have engaged in precisely the same
conduct." United States v. United Healthcare Ins. Co., 848 F.3d
1161, 1184 (9th Cir. 2016).  Even those allegations of predicate
acts whose actors one would expect Plaintiff to be able to
allege with relative ease are alleged generally, presumably
against all defendants named in the enterprise.  See, e.g.,
Compl. ¶ 148.b.i (alleging that "forwarding [Plaintiff]
signature pages" constituted an act of wire or mail fraud).

> Rule 9(b) serves three purposes: (1) to
> provide defendants with adequate notice to
> allow them to defend the charge and deter
> plaintiffs from the filing of complaints "as
> a pretext for the discovery of unknown
> wrongs"; (2) to protect those whose
> reputation would be harmed as a result of
> being subject to fraud charges; and (3) to
> "prohibit [ ] plaintiff[s] from unilaterally
> imposing upon the court, the parties and
> society enormous social and economic costs
> absent some factual basis."

Kearns v. Ford Motor Co., 567 F.3d 1120, 1125 (9th Cir. 2009)
(quoting In re Stac Elecs. Sec. Litig., 89 F.3d 1399, 1405 (9th
Cir.1996)) (alterations in Kearns).  To relax Rule 9(b)'s
strictures in some circumstances is not to eliminate them
entirely, as the Rule's underlying purposes remain.  Given her
failure to allege the predicate acts of mail and wire fraud with

sufficient specificity—on information and belief or otherwise—Plaintiff's Tenth Cause of Action cannot stand.

Plaintiff's Tenth Cause of Action against Defendant NAM is therefore dismissed, and her Eleventh Cause of Action must fall with the Tenth. <u>Howard</u>, 203 F.3d at 751.[15/]

### IX. Hawai`i Civil RICO (Twelfth Cause of Action)

Plaintiff's Twelfth Cause of Action asserts that all defendants have "engaged in 'racketeering activity' by committing or aiding and abetting in the commission of at least one act of racketeering activity, i.e., violations of the Hawai`i Unfair and Deceptive Acts Trade Practices Act . . . . Therefore, the Defendants have violated [HRS] § 842-2(3)." Compl. ¶ 163. Three paragraphs later, the Complaint names Defendant NAM specifically and alleges that it, together with the Salisbury Defendants and Defendant Claraphi, engaged in racketeering activity "by committing or aiding and abetting in the commission of at least three acts of racketeering activity, i.e., violations of the Hawai`i Securities Act and the Hawai`i Unfair and Deceptive Acts Trade Practices Act . . . as well as

---

[15/] Local Rule 33.1 currently provides that any party defending against a RICO claim may move for an order requiring the claimant to file and serve a RICO discovery statement. The Court notes, however, that amendments to the Local Rules are apparently currently being considered, and that the requirements of what is now Local Rule 33.1 may in the future be included in magistrate judges' discovery or Rule 16 orders.

[HRS] § 708-830(2)."  Compl. ¶ 166.

HRS § 842-2(3) ("Hawai`i RICO") makes it unlawful "[f]or any person employed by or associated with any enterprise to conduct or participate in the conduct of the affairs of the enterprise through racketeering activity or collection of an unlawful debt."  HRS § 842-8(c) creates a private right of action for "[a]ny person injured in the person's business or property by reason of" a RICO violation.

"[T]he most useful source in interpreting HRS § 842-2(3) is federal law. . . . [F]ederal law is an important aid to construction because HRS § 842-2 was derived from the federal Racketeer Influenced and Corrupt Organizations (RICO) statute." State v. Ontai, 84 Haw. 56, 61, 929 P.2d 69, 74 (1996).  "The only material differences between the two statutes are the [federal statute's] references to 'interstate or foreign commerce' and 'pattern of racketeering activity.'" Id. & n.8 ("The reference to 'interstate or foreign commerce' is due to the requirements of the Commerce Clause of the United States Constitution. See U.S. Const. art. I, § 8. The reference to a 'pattern of racketeering activity' is due to the fact that the federal statute requires at least two acts of racketeering activity. 18 U.S.C. § 1961(5) (1994). The Hawai'i statute only requires one act. HRS § 842-1[.]").

Therefore, and in light of the differences between 18

U.S.C. § 1962(c) and HRS § 842-2(3), a plaintiff bringing a
Hawai`i civil RICO claim "must prove that the defendant engaged
in (1) conduct (2) of an enterprise (3) through a[n act] (4) of
racketeering activity and, additionally, must establish that (5)
the defendant caused injury to plaintiff's business or
property."  Chaset, 300 F.3d at 1086 (9th Cir. 2002); see, e.g.,
DeRosa v. Ass'n of Apartment Owners of the Golf Villas, 185 F.
Supp. 3d 1247, 1262 (D. Haw. 2016), as amended (Aug. 31, 2016)
(importing the elements of federal civil RICO into a claim under
HRS § 842-2(3)); see also HRS § 842-8(c).

>    For purposes of HRS § 842-2(3),

>> "[r]acketeering activity" means any act or
>> threat involving but not limited to murder,
>> kidnapping, gambling, criminal property
>> damage, robbery, bribery, extortion, labor
>> trafficking, theft, or prostitution, or any
>> dealing in narcotic or other dangerous drugs
>> that is chargeable as a crime under state
>> law and punishable by imprisonment for more
>> than one year.

HRS § 842-1.

>    HRS § 708-830(2) provides that a person commits theft
if she "obtains, or exerts control over, the property of another
by deception with intent to deprive the other person of
property."

>    The Court finds that dismissal of Plaintiff's Twelfth
Cause of Action against Defendant NAM is proper.  In addition to
the infirmities identified above as to "conduct" of an

enterprise and the existence of an enterprise, the Court finds that Plaintiff has not sufficiently alleged any "racketeering activity." Plaintiff cites to no authority, and the Court can locate none, to support the proposition that a violation of Hawai`i's UDAP statute, by itself, constitutes "racketeering activity." The dearth of any such authority is to be expected; as the Hawai`i Supreme Court has noted, "the legislative history underlying HRS § 842-2 provides that '[t]he purpose of [the] bill [was] to curtail organized <u>crime</u> activity in Hawaii.'" <u>Bates</u>, 84 Haw. at 222, 933 P.2d at 59 (citing Hse. Stand. Comm. Rep. No. 668-72, in 1972 House Journal, at 967; Sen. Stand. Comm. Rep. No. 492-72, in 1972 Senate Journal, at 956; Hse. Stand Comm. Rep. No. 728-72, in 1972 House Journal, at 1006) (emphasis added); <u>see also</u> 18 U.S.C. § 1961(1) (listing as predicate acts, for the purposes of federal RICO, "chargeable," "indictable," and "punishable" offenses). And as to the Complaint's allegation that Defendant NAM committed, aided, or abetted the predicate act of theft, the Complaint fails to plead this predicate act with the required particularity. <u>See</u> HRS § 708-830(2) (a person commits theft if she "obtains, or exerts control over, the property of another <u>by deception</u> with intent to deprive the other person of property." (emphasis added)); 1 Stephen S. Gensler, <u>Federal Rules of Civil Procedure, Rules and Commentary Highlights</u>, Rule 9(b) (2019 ed.) ("Rule 9(b)'s

heightened pleading requirement applies to a wide range of claims or issues predicated on trickery or deceit.").

Plaintiff's Twelfth Cause of Action is dismissed as against Defendant NAM.

## X.    Plaintiff is Granted Leave to Amend

Plaintiff requests leave to amend her Complaint to correct any deficiencies.  Opp. at 30–31.  Because Plaintiff may be able to cure the Complaint's defects via amendment, leave to amend is granted.  See OSU Student All., 699 F.3d at 1079; Vess, 317 F.3d at 1107.  However, given Plaintiff's counsel's statement at the hearing on this Motion, the dismissal of the Eighth Cause of Action against Defendant NAM is with prejudice. Further, in light of Plaintiff's acknowledgement that Defendant NAM had no involvement in the VOYA Policy or its premium financing arrangement, the Second Cause of Action, which is solely concerned with the VOYA Policy, is also dismissed with prejudice.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant NAM's Motion for Judgment on the Pleadings, ECF No. 80, insofar as it seeks dismissal of all of Plaintiff's claims against Defendant NAM.  Those claims are dismissed without prejudice, except the Second and Eighth Causes of Action, which are dismissed with prejudice as against Defendant NAM.  Any amended

complaint must be filed within thirty days of the issuance of this Order.

IT IS SO ORDERED.

DATED: Honolulu, Hawai`i, May 14, 2019.

Alan C. Kay
Sr. United States District Judge

Ryan v. Salisbury et al., Civ. No. 18-406 ACK-RT, Order Granting Defendant National Asset Management, Inc.'s Motion for Judgment on the Pleadings.