IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

KATHY RYAN, INDIVIDUALLY, AND IN
HER CAPACITY AS TRUSTEE OF THE
BRODY FAMILY TRUST;

   Plaintiff,

  vs.

CHRISTOPHER S. SALISBURY;  C.
SALISBURY, LLC; CLARAPHI ADVISORY
NETWORK, LLC; NATIONAL ASSET
MANAGEMENT, INC.; MICHAEL
DIYANNI; LAKE FOREST BANK & TRUST
COMPANY, N.A.; WINTRUST LIFE
FINANCE; AURORA CAPITAL ALLIANCE;
SECURITY LIFE OF DENVER INSURANCE
COMPANY; and ALEJANDRO ALBERTO
BELLINI,

   Defendants.

Civ. No. 18-00406 ACK-RT

## ORDER GRANTING DEFENDANTS AURORA CAPITAL ALLIANCE AND ALEJANDRO

## ALBERTO BELLINI'S MOTION TO DISMISS

  For the reasons set forth below, the Court GRANTS
Defendants Aurora Capital Alliance and Alejandro Alberto
Bellini's Motion to Dismiss, ECF No. 49.

### FACTUAL BACKGROUND

  The Brody Family Trust ("the Trust") was created on
February 9, 1993, with Plaintiff Kathy Ryan (then Kathy Brody)

("Plaintiff")<sup>1/</sup> serving as its trustee. Compl., ECF No. 1 ¶ 23. The Trust was organized under the laws of California. Id. Sometime in 2002 or thereafter, the estate planning company that first established the Trust referred Plaintiff to Defendant Christopher S. Salisbury ("Defendant Salisbury") for her investment and financial planning needs. Id. ¶ 24.

Early on in his tenure as Plaintiff's financial advisor, Defendant Salisbury began investing Plaintiff's money and/or that of the Trust into annuities, among other investments. Id. ¶ 25. Defendant Salisbury, together with Defendant C. Salisbury, LLC and Accelerated Estate Planning, LLC (together, "the Salisbury Entities") caused Plaintiff to surrender certain annuities and move the money to different annuities with the promise that any surrender fees would be offset either by bonus monies or greater earnings of the new product (a process the Complaint calls "churning"). Id. ¶ 26. Defendant Salisbury understood that Plaintiff did not have sophisticated knowledge of investment, financial, and insurance-related matters. Id. ¶ 29. The Salisbury Entities made verbal representations about the products Defendant Salisbury was directing Plaintiff to invest in or purchase, and Defendant

---

<sup>1/</sup> Plaintiff turned sixty-two years old—and thus became an "elder" as that term is defined in HRS § 480-13.5—sometime in 2012. Compl. ¶ 86.

Salisbury routinely presented Plaintiff with signature pages, rather than complete documents, which he instructed her to sign but not date.  Id. ¶ 30.  Defendant Salisbury, a licensed notary, often notarized documents Plaintiff had signed, including those signed outside his presence.  Id.

## I.   The Annuities

Among the many annuities involved in Defendant Salisbury's "churning" process were annuities issued by Allianz, at least two of which were surrendered at a sizeable loss.  See id. ¶ 31.  First, on or about December 29, 2009, Plaintiff was caused to surrender Allianz Flexible Premium Deferred Annuity Policy (Index Benefit bearing policy number XXX 3635, policy date September 1, 2006)—which was then valued at approximately $902,000—at a loss of approximately $200,077.  Id. ¶ 32. Second, on or about November 21, 2014, following Defendant Salisbury's advice and direction, Plaintiff surrendered an Allianz annuity with a policy number XXX 7754, which was issued on December 18, 2006.

Again acting on Defendant Salisbury's advice and direction, Plaintiff also surrendered four Phoenix Personal Income Annuities.  On or about October 19, 2017, Plaintiff surrendered two such annuities.  One, number XXX 5109, was issued with a single premium of $24,795.55 on December 9, 2014, and its surrender cost Plaintiff approximately $3,790.04 in

surrender charges, id. ¶ 34a; the other, number XXX 5355, was
issued with a single premium of $24,800.42 on December 11, 2014,
and its surrender cost Plaintiff approximately $3,939.86 in
surrender charges, id. ¶ 34b. On or about November 7, 2017,
Plaintiff surrendered Phoenix Personal Income Annuity number XXX
8769, which had been issued with a single premium of $700,000 on
May 4, 2015, and incurred approximately $110,220.74 in surrender
charges. Id. ¶ 34d. And on or about November 8, 2017,
Plaintiff incurred approximately $25,983.85 in surrender charges
by surrendering Phoenix Personal Income Annuity XXX 4609, which
was issued on December 18, 2014 with a single premium of
$160,319.48. Id. ¶ 34c. As to these four annuities, Plaintiff
lost approximately $143,931.49. Id. ¶ 34.

Again following Defendant Salisbury's advice and
direction, Plaintiff purchased and invested in the Fidelity
Premium Deferred Fixed Index Annuity, AdvanceMark Ultra 14,
number XXX 5051, which was issued on February 8, 2015. Id. ¶
35. As of the most recent annual statement, it had an account
value of approximately $453,282.52. Id. Plaintiff surrendered
it in or around October 2017, and the surrender charge was
$52,382.80. Id.

Similarly, Defendant Salisbury allowed an American
National annuity, number XXX 0431, to run just over a year
before he caused Plaintiff to surrender it in or around April

2015.  Id. ¶ 36.  The surrender of this annuity, which had been issued on March 14, 2014 with an initial premium payment of $737,450.85, incurred approximately $61,028 in surrender charges.  Id.

Plaintiff was also issued a ForeThought Single Premium Deferred Annuity Contract number XXX 8001 on February 11, 2009, with an initial premium payment of $166,949.80.  Id. ¶ 37.  At Defendant Salisbury's direction, Plaintiff made several withdrawals from this annuity while it was in force.  Id.  At the time of surrender on or about November 17, 2014, the annuity was valued at $146,486.39, and the surrender fee was $7,324.32.  Id. ¶ 37.

And on November 26, 2007, Plaintiff was issued a North American Company Individual Flexible Premium Deferred Annuity, number XXX 2105, with an initial premium payment of $276,745.13.  Id. ¶ 38.  Plaintiff paid an additional premium of $598,595.71 on or about April 27, 2012.  Id.  On or about January 29, 2014, the annuity was surrendered at a net loss of $88,205.94.  Id.

These transactions—which Plaintiff alleges are a representative list of Defendant Salisbury's "churning" activities rather than an exhaustive one, see id. ¶ 39—cost Plaintiff approximately $576,207.28 in surrender charges, id. With respect to each transaction, and over the course of them all, Defendant Salisbury told Plaintiff that the surrenders were

in her best interest and explained that any surrender charge incurred was worth incurring to better position the funds in the replacement annuity.  Id. ¶ 40.

## II.  The Insurance Policies

Acting on Defendant Salisbury's advice, Plaintiff obtained a Lincoln Benefit Flexible Premium Variable Life Insurance Policy on October 6, 2004.  Id. ¶ 44.  This policy carried a death benefit of $5,066,782, and its planned annual payment was $279,731.  Id.  In or around 2008, Defendant Salisbury reduced the death benefit to $500,000, and the policy was surrendered on October 7, 2013.  Id.

Again acting on Defendant Salisbury's advice, Plaintiff procured a one million dollar Flexible Premium Universal Life Insurance Policy from Columbus Life Insurance Company.  See id. ¶ 43.  The policy had an effective date of May 20, 2004, and the planned premiums were $16,881.12 annually. Id.  This policy was cancelled in or around April 2016 and replaced with a $2,500,000 VOYA IUL-Global Choice Policy ("the VOYA Policy" or "the Policy") issued by Defendant Security Life of Denver ("Defendant SLD") and subject to a financing arrangement conceived of and carried out by Defendants Salisbury, Claraphi Advisory Network, LLC ("Defendant Claraphi"), Michael Diyanni ("Defendant Diyanni"), Aurora Capital Alliance ("Defendant ACA"), Lake Forest Bank & Trust

Company, N.A. ("Defendant Lake Forest"), Wintrust Life Finance ("Defendant Wintrust"), and Alejandro Alberto Bellini ("Defendant Bellini"). Id. ¶ 45. Defendant Bellini was the writing agent of the VOYA Policy and participated in selling the Policy to Plaintiff. Id. ¶ 20.

Defendant Salisbury advised Plaintiff that the VOYA Policy would fund itself—that she would never have to make premium payments on it due to the design of the premium financing arrangement orchestrated by Defendants Salisbury, Claraphi, Diyanni, ACA, Lake Forest, Wintrust, and Bellini. Id. ¶ 46. Plaintiff expressed concern to Defendant Salisbury about the value of the VOYA Policy, but Defendant Salisbury told Plaintiff that the Policy was designed to assist her children in paying taxes after Plaintiff's decease. Id. ¶ 48. But Defendant Salisbury did not inform Plaintiff at the time the Policy was purchased that very little, if any, of her net worth would be subject to estate taxes. Id. Defendant Salisbury misrepresented Plaintiff's net worth on the application for the VOYA Policy. Id. ¶ 49.

Plaintiff did not need the VOYA Policy's life insurance, and in any case she lacked the liquid assets to properly fund it. Id. ¶ 50. Despite knowing this, Defendants Salisbury, Claraphi, Diyanni, ACA, Lake Forest, Wintrust, and Bellini induced Plaintiff to enter into transactions they knew

7

would be to her detriment.  Id.

A trust agreement was created on March 26, 2016, by Defendant Diyanni, an attorney chosen by Defendant Salisbury whom Plaintiff had never met.  Id. ¶ 51.  Defendant Diyanni handles some tax matters, but specializes primarily in personal injury and DUI/DWI cases.  Id.  Defendant Diyanni was hired by Defendant ACA to draft "an Irrevocable Trust that would meet both the standards for the financial institution and life insurance carrier." Id. ¶ 52.  Defendant Diyanni, and The Law Office of Michael Diyanni, would serve as Trustee of the Kathy Ryan Irrevocable Trust.  Id.

Defendant SLD issued the VOYA Policy on April 5, 2016. Id. ¶ 53.  The annual scheduled premium was $160,000, and the minimum monthly premium to maintain the policy was $3,072.22. Id.  Defendant ACA arranged for First Insurance Funding (now Defendant Lake Forest; hereafter "Defendant Lake Forest") and/or Wintrust to finance the VOYA premiums.  Id. ¶ 18.  On April 12, 2016, Defendant Lake Forest issued its proposal of a $172,000 initial loan amount, which included a $12,000 broker's fee that was paid to Defendant Diyanni.  Id. ¶ 54.  Plaintiff alleges that this $12,000 fee is substantially in excess of the commissions normally paid to brokers, agents, or attorneys for similar services.  Id.

Defendant Diyanni then assigned the VOYA Policy as

collateral to Defendant Lake Forest.  Id. ¶ 55.  Plaintiff was
also required to assign an annuity, Allianz Annual Fixed Index
Annuity number XXX 9437, as collateral.  Id. ¶ 56.  Defendants
Diyanni and Salisbury told Plaintiff that the assignment would
be released after seven years.  Id.  But this assignment was
fraudulently procured by Defendants Diyanni and Salisbury, as it
is dated and notarized in Orange County, California, on a date
when Plaintiff was not on the mainland and could not have signed
the document.  Id. ¶ 57.

Plaintiff alleges that, during and after the sale of
the Policy, Defendant Diyanni as Trustee of the Kathy Ryan
Irrevocable Trust (the "ILIT") failed to perform his fiduciary
duties to determine the appropriateness of replacing the
Columbus Life policy or the suitability of the VOYA Policy.  See
id. ¶ 58.  Plaintiff further alleges that Defendant Diyanni did
not properly assess the negative consequences of the premium
financing arrangement, the selection and assignment of
collateral, and/or the funding of premiums outside of the
premium financing arrangement.  Id.  "In short," Plaintiff
alleges, "the VOYA [P]olicy should have never been purchased."
Id.

A year later, Plaintiff and Defendant Diyanni were
advised that the Note issued by Defendant Lake Forest was in
default for failure to make the interest payment of $8,642.25,

and to make the premium payment of $163,500, as well as to
provide the requested collateral.  Id. ¶ 59.  Plaintiff
contacted VOYA, a representative of which told her that the
company could only speak with Defendant Diyanni because he was
the "owner" of the Policy.  Id. ¶ 60.  When Plaintiff contacted
Defendant Salisbury, he told her that Defendant Lake Forest was
mistaken, but he later reversed course and instructed Plaintiff
to wire $37,000 to Defendant Lake Forest in order to secure the
loan.  See id.  Plaintiff did so, but never received a receipt
for the transaction.  Id.

Despite having been advised by Defendant Salisbury
that she should never have to personally pay premiums on the
VOYA Policy and that the policy would fund itself, Plaintiff was
advised by Defendant ACT, in or around March 2018, that the
action items on her life insurance premium finance arrangement
included an outstanding interest payment of $24,545.82 and a
signed, dated Guarantors Acknowledgment and Certification
Additional Collateral of $60,639.55.  Id. ¶ 61.

Those defendants who initiated and/or approved the
purchase of the VOYA Policy and the associated premium financing
arrangements—i.e., Defendants Salisbury, Claraphi, Diyanni, ACA,
Lake Forest, Wintrust, SLD, and Bellini, see id. ¶ 45, 53—knew
at the time they did so that the VOYA Policy was an unsuitable
financial product for Plaintiff in light of the excessive death

benefit and the fact that its premiums exceeded her ability to pay.  Id. ¶ 62; but see id. ¶ 72.c (alleging that "Defendant Salisbury misrepresent[ed Plaintiff]'s net worth on the application for the VOYA life insurance policy").  Plaintiff alleges that the sale of the policy and premium financing arrangement were part of a fraudulent and deceptive scheme carried out by all defendants working in concert with one another.  Id. ¶ 25.

## PROCEDURAL BACKGROUND

Plaintiff, proceeding both individually and in her capacity as trustee of the Brody Family Trust, filed her Complaint on October 23, 2018.  Compl.  Therein, she asserted twelve causes of action:

1. Violation of the Unfair and Deceptive Acts or Trade Practices Act ("UDAP"), Hawai`i Revised Statutes ("HRS") §§ 480-1 et seq., as to all defendants.  Compl. ¶¶ 64-78.

2. UDAP, Violation of HRS § 480-2 ("Suitability") as to all defendants.  Compl. ¶¶ 79-82.

3. UDAP, "Elder Abuse", as to all defendants.  Id. ¶¶ 83-90.

4. Fraudulent suppression as to the Salisbury Defendants and Defendants NAM and Claraphi.  Id. ¶¶ 91-97.

5. Fraudulent misrepresentation as to the Salisbury Defendants and Defendants NAM, Claraphi, and Diyanni. Id. ¶¶ 98-103.

11

6. Breach of fiduciary duty as to the Salisbury Defendants and Defendants NAM, Claraphi, and Diyanni. <u>Id.</u> ¶¶ 104–13.

7. Vicarious liability/respondeat superior as to the Salisbury Defendants and Defendants NAM, Claraphi, Diyanni, ACA, Lake Forest, Wintrust, SLD, and Bellini. <u>Id.</u> ¶¶ 114–18.

8. Violation of the Hawai`i Securities Act (HRS §§ 485A-502, 485A-509) as to the Salisbury Defendants, Defendant NAM, and Defendant Claraphi. Compl. ¶¶ 119–22.

9. Controlling Person Liability, under HRS § 485A-509(g), as to Defendants NAM and Claraphi. Compl. ¶¶ 123–26.

10. Violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c), as to all defendants. Compl. ¶¶ 127–51.

11. Violation of RICO, 18 U.S.C. § 1962(d), as to all defendants. Compl. ¶¶ 152–59.

12. Violation of HRS § 842-2(3), as to all defendants. Compl. ¶¶ 160–71.

On December 27, 2018, Defendants ACA and Bellini (collectively, "the ACA Defendants") filed a motion to dismiss ("Motion"), arguing for dismissal of the Complaint, and various claims therein, under Federal Rules of Civil Procedure ("Rules") 12(b)(1), 12(b)(6), and 9(b). ECF No. 49; <u>see also</u> Mem. in

Supp. ("MTD"), ECF No. 49-1. Plaintiff filed an Opposition ("Opp.") on March 25, 2019. ECF No. 106. Defendants ACA and Bellini filed a Reply ("Reply") on March 29, 2019. ECF No. 108. On March 25, 2019, Defendant NAM filed a statement of no position as to the Motion. ECF No. 103. The Court held a hearing on the Motion on Monday, April 15, 2019. ECF No. 118.

## STANDARDS

### I.  Rule 12(b)(1)

A court's subject-matter jurisdiction may be challenged under Rule 12(b)(1). Such challenges may be either "facial" or "factual." Wolfe v. Strankman, 392 F.3d 358, 362 (9th Cir. 2004).

In a facial attack, "the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." Id. (quoting Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004)). When opposing a facial attack on subject-matter jurisdiction, the nonmoving party is not required to provide evidence outside the pleadings. Wolfe, 392 F.3d at 362; see Doe v. Holy See, 557 F.3d 1066, 1073 (9th Cir. 2009) (treating defendant's challenge to subject-matter jurisdiction as facial because defendant "introduced no evidence contesting any of the allegations" of the complaint). In deciding a facial Rule 12(b)(1) motion, the court must assume the allegations in the complaint are true and

13

draw all reasonable inferences in the plaintiff's favor.  <u>Wolfe</u>,
392 F.3d at 362 (citations omitted).

By contrast, in a factual attack, "the challenger
disputes the truth of the allegations that, by themselves, would
otherwise invoke federal jurisdiction."  <u>Wolfe</u>, 392 F.3d at 362
(quoting <u>Safe Air</u>, 373 F.3d at 1039).  The moving party may
bring a factual challenge to the court's subject-matter
jurisdiction by submitting affidavits or any other evidence
properly before the court.  The nonmoving party must then
"present affidavits or any other evidence necessary to satisfy
its burden of establishing that the court, in fact, possesses
subject-matter jurisdiction."  <u>Colwell v. Dep't of Health &</u>
<u>Human Servs.</u>, 558 F.3d 1112, 1121 (9th Cir. 2009) (citation
omitted).  In these circumstances, the court may look beyond the
complaint without having to convert the motion into one for
summary judgment.  <u>U.S. ex rel. Meyer v. Horizon Health Corp.</u>,
565 F.3d 1195, 1200 n.2 (9th Cir. 2009).  When deciding a
factual challenge to the court's subject-matter jurisdiction,
the court "need not presume the truthfulness of the plaintiffs'
allegations."  <u>Id.</u>

## II.  Rule 12(b)(6)

Rule 12(b)(6) authorizes the Court to dismiss a
complaint that fails "to state a claim upon which relief can be
granted."  Fed. R. Civ. P. 12(b)(6).  Rule 12(b)(6) is read in

14

conjunction with Rule 8(a), which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Court may dismiss a complaint either because it lacks a cognizable legal theory or because it lacks sufficient factual allegations to support a cognizable legal theory. <u>Balistreri v. Pacifica Police Dep't</u>, 901 F.2d 696, 699 (9th Cir. 1988).

In resolving a Rule 12(b)(6) motion, the Court must accept all well-pleaded factual allegations as true and construe them in the light most favorable to the plaintiff. <u>Sateriale v. R.J. Reynolds Tobacco Co.</u>, 697 F.3d 777, 783 (9th Cir. 2012). The complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). "If there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6)." <u>Starr v. Baca</u>, 652 F.3d 1202, 1216 (9th Cir. 2011). But "[t]he plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." <u>Iqbal</u>, 556 U.S. at 678. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility

of entitlement to relief.'" Id. (quoting Twombly, 550 U.S. at 557). "[L]abels and conclusions" or "a formulaic recitation of the elements of a cause of action" do not suffice. Twombly, 550 U.S. at 555.

When a court dismisses a complaint pursuant to Rule 12(b)(6), it should grant leave to amend unless the pleading cannot be cured by new factual allegations. OSU Student All. v. Ray, 699 F.3d 1053, 1079 (9th Cir. 2012).

### III. Rule 9(b)

Rule 9(b) requires that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). "Rule 9(b) requires particularized allegations of the circumstances constituting fraud." In re GlenFed, Inc. Securities Litigation, 42 F.3d 1541, 1547–48 (9th Cir.1994) (en banc) (superseded by statute on other grounds as recognized in Ronconi v. Larkin, 253 F.3d 423, 429 n.6 (9th Cir. 2001)). Rule 9(b) requires the pleading to provide an "account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." Swartz v. KPMG LLP, 476 F.3d 756, 764 (9th Cir.2007) (internal quotations omitted). "Averments of fraud must be accompanied by the who, what, when, where, and how of

16

the misconduct charged." Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir.2003). Plaintiffs may not simply plead neutral facts to identify the transaction, but rather must also set forth what is false or misleading about a statement, and why it is false. See GlenFed, 42 F.3d at 1548. Moreover,

> Rule 9(b) does not allow a complaint to merely lump multiple defendants together but require[s] plaintiffs to differentiate their allegations when suing more than one defendant . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud. In the context of a fraud suit involving multiple defendants, a plaintiff must, at a minimum, identif[y] the role of [each] defendant[ ] in the alleged fraudulent scheme.

Swartz, 476 F.3d at 764-65 (alterations in original) (citations omitted). However, Rule 9(b)'s requirements may be relaxed as to matters that are exclusively within the opposing party's knowledge. Rubenstein v. Neiman Marcus Grp. LLC, 687 F. App'x 564, 567 (9th Cir. 2017) (quoting Moore v. Kayport Package Express, Inc., 885 F.2d 531, 540 (9th Cir. 1989)).

> Rule 9(b) only "requires that plaintiffs specifically plead those facts surrounding alleged acts of fraud to which they can reasonably be expected to have access." Concha v. London, 62 F.3d 1493, 1503 (9th Cir. 1995). As such, "in cases where fraud is alleged, we relax pleading requirements where the relevant facts are known only to the defendant." Id. In those cases, a "pleading is sufficient under Rule 9(b) if it identifies the circumstances constituting fraud so that a defendant can prepare an

17

> adequate answer from the allegations."
> Moore, 885 F.2d at 540.

Rubenstein, 687 F. App'x at 567–68. Where the facts surrounding fraud are "peculiarly within the opposing party's knowledge," then, "[a]llegations of fraud based on information and belief may suffice . . . so long as the allegations are accompanied by a statement of the facts upon which the belief is founded." Puri v. Khalsa, 674 F. App'x 679, 687 (9th Cir. 2017) (citing Wool v. Tandem Computs. Inc., 818 F.2d 1433, 1439 (9th Cir. 1987), overruled on other grounds as stated in Flood v. Miller, 35 Fed.Appx. 701, 703 n.3 (9th Cir. 2002)).

A motion to dismiss a claim grounded in fraud for failure to plead with particularly under Rule 9(b) is the functional equivalent of a motion to dismiss under Rule 12(b)(6). See Vess, 317 F.3d at 1107. Thus, "[a]s with Rule 12(b)(6) dismissals, dismissals for failure to comply with Rule 9(b) should ordinarily be without prejudice. Leave to amend should be granted if it appears at all possible that the plaintiff can correct the defect." Id.

## DISCUSSION

### I. Jurisdiction

The ACA Defendants level a facial attack on Plaintiff's assertion of diversity jurisdiction, see Compl. ¶ 21, contending that the Court should dismiss the Complaint in

its entirety under Rule 12(b)(1) because Plaintiff failed to sufficiently allege federal jurisdiction based on diversity of citizenship under 28 U.S.C. § 1332, ACA MTD at 4–5, 7–9.  It is true—as Plaintiff acknowledges, see Pl.'s ACA Opp. at 10—that the Complaint does not adequately plead the elements of diversity jurisdiction.  The Court finds, however, that federal jurisdiction is proper in this matter because the Complaint asserts federal claims against all defendants and because the state-law claims are sufficiently related to the federal claims as to make the Court's assumption of supplemental jurisdiction appropriate.

### a. The Complaint Fails to Adequately Plead the Elements of Diversity Jurisdiction

Under 28 U.S.C. § 1332(a), a party may invoke federal jurisdiction in a civil action where the amount in controversy exceeds $75,000 and there is complete diversity of citizenship between the parties.  "The party seeking to invoke the district court's diversity jurisdiction always bears the burden of both pleading and proving diversity jurisdiction." NewGen, LLC v. Safe Cig, LLC, 840 F.3d 606, 613-14 (9th Cir. 2016) (citing FW/PBS, Inc. v. City of Dallas, 493 U.S. 215, 231 (1990)); cf. NewGen, LLC, 840 F.3d at 614 ("However, at the pleading stage, allegations of jurisdictional fact need not be proven unless challenged." (citing DaimlerChrysler Corp. v. Cuno, 547 U.S.

332, 342 n.3 (2006))). Here, the Complaint fails in several ways to adequately plead the elements of diversity jurisdiction.

First, "the diversity jurisdiction statute, 28 U.S.C. § 1332, speaks of citizenship, not of residency." Kanter v. Warner-Lambert Co., 265 F.3d 853, 857 (9th Cir. 2001); see also id. ("[A] natural person's state citizenship is . . . determined by her state of domicile, not her state of residence. . . . A person residing in a state is not necessarily domiciled there, and thus is not necessarily a citizen of that state." (citations omitted)). But the Complaint—instead of alleging named individuals' citizenship—identifies Plaintiff as "an individual residing in Lahaina, Hawai`i," Compl. ¶ 9, Defendant Christopher S. Salisbury as "a resident of Midland, Michigan," id. ¶ 10, Defendant Diyanni as "an individual residing in California," id. ¶ 15, and Defendant Bellini as "an individual residing in California," id. ¶ 20.

Second, for purposes of diversity jurisdiction, "a[ limited liability corporation] is a citizen of every state of which its owners/members are citizens." Johnson v. Columbia Props. Anchorage, LP, 437 F.3d 894, 899 (9th Cir. 2006). But the Complaint, which names as defendants three limited liability corporations ("LLCs"), fails to allege the citizenship of those LLCs' members. See Compl. ¶¶ 11 (Defendant C. Salisbury, LLC),

12 (Accelerated Estate Planning, LLC[2/]), 13 (Defendant Claraphi Advisory Network, LLC).

Third, under 28 U.S.C. § 1332(c)(1), a corporation is deemed a citizen of both its state of incorporation and its principal place of business.  But the Complaint, while it alleges that Defendant NAM's principal place of business is located in the state of Washington, fails to Defendant NAM's state of incorporation.  See Compl. ¶ 14.

Fourth, the Complaint fails to allege what type of entity Defendant ACA is, and makes no allegation as to its citizenship.  See Compl. ¶ 18 (noting only ACA's "preferred mailing address").

It is clear to the Court that the Complaint's assertion of diversity jurisdiction is insufficiently supported by the allegations.

### b. The Court Has Federal Question Jurisdiction, and Supplemental Jurisdiction Over the State-Law Claims

Federal district courts "have original jurisdiction [over] all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.  Federal question jurisdiction exists when a complaint facially presents

---

[2/] On March 25, 2019, Plaintiff voluntarily dismissed Accelerated Estate Planning, LLC from this action without prejudice.  ECF No. 101.

a federal question.  See Holman v. Laulo-Rowe Agency, 994 F.2d

666, 668 (9th Cir. 1993).

Under 28 U.S.C. § 1367, where a federal district court

has original jurisdiction, it also has "supplemental

jurisdiction over all other claims that are so related to claims

in the action within such original jurisdiction that they form

part of the same case or controversy under Article III of the

United States Constitution." "Nonfederal claims are part of the

same case as federal claims when they derive from a common

nucleus of operative fact and are such that a plaintiff would

ordinarily be expected to try them in one judicial proceeding."

Tr. of Constr. Indus. & Laborers Health & Welfare Trust v.

Desert Valley Landscape & Maint., Inc., 333 F.3d 923, 925 (9th

Cir. 2003) (internal quotation marks and citation omitted).  A

court may decline to exercise supplemental jurisdiction, even

where it exists, if: "(1) the claim raises a novel or complex

issue of State law, (2) the claim substantially predominates

over the claim or claims over which the district court has

original jurisdiction, (3) the district court has dismissed all

claims over which it has original jurisdiction, or (4) in

exceptional circumstances, there are other compelling reasons

for declining jurisdiction." 28 U.S.C. § 1367(c).

The Complaint asserts two claims of violations of

RICO, 18 U.S.C. §§ 1961–1968.  See Compl. ¶¶ 127–59 (asserting

violations of 18 U.S.C. § 1962(c) and (d)); see also 28 U.S.C. §
1964(c) (creating a private right of action, in federal district
court, for "[a]ny person injured in his business or property by
reason of a violation of section 1962 of this chapter").  The
Court therefore has federal question jurisdiction over those
claims, which are asserted against all defendants.  See Compl.
at 54, 67.

    Moreover, the Court finds that the state-law claims
and the federal civil RICO claims "derive from a common nucleus
of operative fact[.]" Tr. of Constr. Indus. & Laborers Health &
Welfare Trust, 333 F.3d at 925.  Plaintiff's allegations that
she was taken advantage of through annuity churning and a
premium financing arrangement for a life insurance policy
underlie all her claims, both state and federal.  Because this
is so, and because at this stage none of the issues iterated in
28 U.S.C. § 1367(c) is present, the Court finds the exercise of
supplemental jurisdiction over Plaintiff's state-law claims
proper.

**II.  UDAP (First, Second, and Third Causes of Action)**

    Plaintiff's First and Second Causes of Action assert
that all defendants have engaged in deceptive and unfair acts
and practices within the meaning of Hawai`i's unfair and
deceptive acts or practices ("UDAP") statute ("the UDAP
statute"), HRS §§ 480-1, et seq.  Compl. ¶¶ 65, 80.  Plaintiff's

23

First Cause of Action outlines multiple actions alleged to have been UDAPs. See id. ¶¶ 67–75. Her Second Cause of Action, entitled in part "Suitability," alleges simply that "[e]ach of the Defendants" violated the HRS § 480-2 "by selling [Plaintiff] the VOYA policy and setting up the financing arrangement, both of which were unsuitable for her and The Brody Family Trust's insurance and financial needs." Id. ¶ 80. Plaintiff's Third Cause of Action, asserted against all defendants and entitled "Elder Abuse," alleges that Plaintiff turned sixty-two years old sometime in 2012 and was therefore an "elder" under HRS § 480-13.5 when a number of the alleged events took place.[3/] Id. ¶ 84–90.

HRS § 480-2(a) provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful." "HRS § 480-2 . . . was constructed in broad language in order to constitute a flexible tool to stop and prevent fraudulent, unfair or deceptive business practices for the protection of both honest consumers and honest business[persons]." Haw. Comm. Fed. Credit U. v. Keka, 94 Haw. 213, 228, 11 P.3d 1, 16 (2000) (latter

---

[3/] In other words, Plaintiff's Third Cause of Action is not in fact a distinct claim, but rather assert's Plaintiff's entitlement to an additional penalty of up to $10,000 for each proven violation of Hawai`i's UDAP statute should she prevail. See HRS § 480-13.5(a).

alteration in original) (citation and internal quotation marks omitted).

In order to state a UDAP claim, a consumer[4/] must allege: (1) a violation of HRS § 480-2; (2) injury to plaintiff's business or property resulting from such violation; and (3) proof of the amount of damages. See Lizza v. Deutsche Bank Nat. Trust Co., 1 F. Supp. 3d 1106, 1121 (D. Haw. 2014) (citing Haw. Med. Ass'n v. Haw. Med. Serv. Ass'n, Inc., 113 Haw. 77, 113–14, 148 P.3d 1179, 1215–16 (2006); In re Kekauoha–Alisa, 674 F.3d 1083, 1092 (9th Cir. 2012); HRS § 480-13(b)(1)).  "Any injury must be fairly traceable to the defendant's actions." In re Kekauoha-Alisa, 674 F.3d at 1092 (citing Flores v. Rawlings Co., LLC, 117 Haw. 153, 167 n.23, 177 P.3d 341, 355 n.23 (2008)).

A practice is unfair when it "offends established public policy and when the practice is immoral, unethical, oppressive, unscrupulous[,] or substantially injurious to consumers." Balthazar v. Verizon Haw., Inc., 109 Haw. 69, 77, 123 P.3d 194, 202 (2005) (citation and internal quotation marks omitted).

---

[4/] HRS § 480-1 defines "consumer" as "a natural person who, primarily for primarily for personal, family, or household purposes, purchases, attempts to purchase, or is solicited to purchase goods or services or who commits money, property, or services in a personal investment." The ACA Defendants have not disputed that Plaintiff is a "consumer."

"A deceptive act or practice is '(1) a representation, omission, or practice that (2) is likely to mislead consumers acting reasonably under the circumstances where (3) the representation, omission, or practice is material.' The representation, omission, or practice is material if it is likely to affect a consumer's choice." Yokoyama v. Midland Nat'l Life Ins. Co., 594 F.3d 1087, 1092 (9th Cir.2010) (quoting Courbat v. Dahana Ranch, Inc., 111 Haw. 254, 262, 141 P.3d 427, 435 (2006)). "Whether information is likely to affect a consumer's choice is an objective inquiry, 'turning on whether the act or omission is likely to mislead consumers as to information important to consumers in making a decision regarding the product or service.'" Yokoyama, 594 F.3d at 1092 (quoting Courbat, 111 Haw. at 262, 141 P.3d at 435) (some internal quotation marks omitted). "[A] failure to disclose relevant information may be actionable under [HRS § 480-2] if it is likely to mislead or deceive a reasonable customer." Soule v. Hilton Worldwide, Inc., 1 F. Supp. 3d 1084, 1093 (citing Courbat, 111 Haw. at 263, 141 P.3d at 436).

Claims asserting deceptive conduct under HRS § 480-2 are subject to Rule 9(b)'s heightened pleading standard. See Smallwood v. NCsoft Corp., 730 F. Supp. 2d 1213, 1232–33 (D. Haw. 2010). "To the extent Plaintiff is making claims under the 'unfair' prong of an unfair and deceptive practices claim that

are not asserting fraudulent conduct, Rule 9(b)'s heightened pleading standard does not apply." <u>Soule</u>, 1 F. Supp. 3d at 1090 (D. Haw. 2014); <u>see also</u> <u>Bald v. Wells Fargo Bank, N.A.</u>, 688 F. App'x 472, 476–77 (9th Cir. 2017) (differentiating between the pleading standards required for putatively "unfair" practices and those arising under HRS § 480-2's "deceptive" prong).

HRS § 480-13.5 defines an "elder" as "a consumer who is sixty-two years of age or older," and provides that, "[i]f a person commits a violation under [HRS §] 480-2 which is directed toward, targets, or injures an elder, a court, in addition to any other civil penalty, may impose a civil penalty not to exceed $10,000 for each violation."

### a. Plaintiff's First Cause of Action

The ACA Defendants move to dismiss Plaintiff's UDAP claims against them, arguing that "the Complaint is lacking any factual allegations as to what [Defendant] ACA or [Defendant] Bellini did that was deceptive or unfair." MTD at 9.

### i. Allegations Concerning Defendant ACA

As to Plaintiff's First Cause of Action, the Complaint's allegations against Defendant ACA are as follows:

> 1. Defendant ACA, along with six other defendants, knew that Plaintiff did not need the VOYA Policy's life insurance and lacked the liquid assets to properly fund the Policy, but "induced

[Plaintiff] to enter . . . transactions knowing it would be to her detriment." Id. ¶ 50.

2. Defendant ACA, along with seven other defendants, "concocted and carried out" the "complex financing arrangement" underlying the VOYA Policy. Id. ¶ 45; see also id. ¶ 46 (alleging that Defendant ACA, along with seven other defendants, "orchestrated" the premium financing arrangement).

3. Defendant ACA hired Defendant Diyanni to draft the ILIT and arranged for Defendant Lake Forest and/or Defendant Wintrust to finance the VOYA premiums. Compl. ¶ 18; see also Id. ¶ 52 (alleging that Defendant ACA hired Defendant Diyanni to draft "an Irrevocable Trust that would meet both the standards for the financial institution and life insurance carrier.").

4. The $12,000 fee at which Defendant ACA engaged Defendant Diyanni to draft the ILIT, and to serve as its trustee, was excessive. Id. ¶ 72.a; see also id. ¶ 54 ("The $12,000 broker's fee is substantially in excess of the commissions normally paid to brokers or agents or attorneys for similar services.").

5. Together with all other defendants, Defendant ACA "committed acts of unfair and deceptive trade practices by selling and arranging the financing of the unsuitable VOYA . . . [P]olicy. The arrangement was inherently unfair or deceptive because it:

    a. contained hidden charges, changing terms, and undisclosed expenses and risks; and

    b. was unnecessarily complex in its terms to the point that no reasonable senior citizen could understand the risks and benefits of the product."

Id. ¶ 73.

### ii. The First Cause of Action Does Not State a UDAP Claim Against Defendant ACA

Insofar as Plaintiff is in her First Cause of Action attempting to allege Defendant ACA committed any deceptive practice, the allegations are insufficient under Rule 9(b).

Regarding the Complaint's paragraphs 50 and 73.a, rather than "differentiating [her] allegations" and "informing each defendant separately of the allegations surrounding his alleged participation in the fraud," these allegations "merely lump defendants together" and are insufficient as to Defendant ACA. Swartz, 476 F.3d at 764-65. Moreover, in regard to her

allegations that Defendant ACA "induced" her to enter transactions, Compl. ¶ 50, and that the "arrangement" surrounding the VOYA Policy "contained hidden charges, changing terms, and undisclosed expenses and risks," id. ¶ 73.a, Plaintiff fails to allege the "who, what, when, where, and how of the misconduct charged." Vess, 317 F.3d at 1106.[5/]

Plaintiff alleges that Defendant ACA employed, inter alia, "fraud" when it engaged Defendant Diyanni, at an "excessive" fee of $12,000, to draft the ILIT and serve as its Trustee, Compl. ¶¶ 72, 72.a, but fails to identify anything Defendant ACA did that was deceptive, let alone to provide an "account of the time, place, and specific content of [any] false representations," Swartz, 476 F.3d at 764, as is required by Rule 9(b).

And none of the remaining allegations against Defendant ACA states a claim for deception; that is, nowhere does Plaintiff allege any material representation, omission, or practice by Defendant ACA that is likely to have misled a reasonable consumer. Yokoyama, 594 F.3d at 1092.

---

[5/] Given that Plaintiff was the one allegedly "induced" to enter transactions, see Compl. ¶ 50, and that there is no indication that the details of the financing arrangement are exclusively within defendants' knowledge, see Compl. ¶73a; Rubenstein, 687 F. App'x at 567, relaxation of Rule 9(b)'s strictures is not warranted here, and Plaintiff's failure to plead with particularity is not excused.

Failure to plead deception adequately is fatal to Plaintiff's First Cause of Action against Defendant ACA, as her other allegations fall short of plausibly stating a claim for "unfair" practices. For example, the Court does not perceive how designing a complex financing arrangement, Compl. ¶¶ 18, 45-46, or hiring an attorney to draft a trust, id. ¶¶ 18, 52—without more—"offends established public policy" or "is immoral, unethical, oppressive, unscrupulous[,] or substantially injurious to consumers," Balthazar, 109 Haw. at 77, 123 P.3d at 202. For similar reasons, Plaintiff's allegation that the "arrangement . . . was unnecessarily complex in its terms to the point that no reasonable senior citizen could understand the risks and benefits of the product," Compl. ¶ 73.b, is insufficient to state a claim for an unfair practice. Complexity alone, even if unnecessary, is not "unfair" within the meaning of HRS § 480-2.

As to the allegation that Defendant ACA conscripted Defendant Diyanni to serve as Trustee of the ILIT for an excessive fee, Compl. ¶¶ 54, 72.a, the Complaint again lacks sufficient factual detail. If Defendant ACA did not disclose the fee to Plaintiff, this claim might sound in deception if otherwise adequately pled; if the fee was disclosed to Plaintiff but paid over her protest, it might be termed "unfair" to hold her responsible for it; but if it was paid with her knowledge

and consent, it can hardly be deemed "unfair." Absent further factual detail, the Court finds that Plaintiff has failed to plausibly allege either unfairness or deception.

In sum, Plaintiff has failed to state a UDAP claim against Defendant ACA. The ACA Defendants' Motion to Dismiss is granted with respect to Plaintiff's First Cause of Action against Defendant ACA.

### iii. **Allegations Concerning Defendant Bellini**

As to Plaintiff's UDAP claims, the Complaint's allegations against Defendant Bellini[6] are as follows:

1. Defendant Bellini "is the writing agent for [the] [VOYA] . . . [P]olicy and participated in selling the [VOYA P]olicy to [Plaintiff]." Compl. ¶ 20.

2. Defendant Bellini is also "employed by and is the founder and/or managing partner of [Defendant ACA]." Id.

3. "During the sale of the [VOYA P]olicy, [Defendant] Bellini concealed the fact that he was acting with a conflict of interest and was engaging in self-dealing with respect to his

---

[6] The Court omits from this list the allegations in the Complaint's paragraphs 45, 46, 50, and 73, which were asserted against Defendant ACA as well as Defendant Bellini and were found above to be deficient.

activities related to [Plaintiff] as, upon information and belief, he was employed by [Defendant ACA] and stood to benefit from the transaction." Id. ¶ 71.

4. Together with Defendant SLD, Bellini "engaged in unfair and deceptive acts and practices" and employed, inter alia, "fraud" when he "issu[ed Plaintiff]'s life insurance policy with an excessive death benefit that did not correspond to her net worth and for which [sic] she could not afford[.]" Id. ¶¶ 72, 72.b. See also id. ¶ 71 ("In his capacity as a sales agent for [Defendant SLD], [Defendant] Bellini also failed to make an appropriate determination of the suitability of the VOYA . . . [P]olicy.").

iv. **The First Cause of Action Does Not State a UDAP Claim Against Defendant Bellini**

The Complaint fails to state a claim against Defendant Bellini for deceptive acts under HRS § 480-2 because it altogether fails to provide an "account of the time, place, and specific content of [any] false representations," Swartz, 476 F.3d at 764; see Fed. R. Civ. P. 9(b); see also Compl. ¶¶ 71 (alleging simply "conceal[ment]"), 72, 72.b (alleging "fraud").

It is plausible that the very fact of Defendant

Bellini's alleged conflict of interest—both selling the VOYA

Policy to Plaintiff, Compl. ¶ 20, and working for Defendant ACA,

which is alleged to have secured the financing for the premiums,

see id. ¶ 18; see also id. ¶¶ 20 (alleging that Defendant

Bellini "is employed by and is the founder and/or managing

partner of [Defendant ACA]"), 71 (alleging that Defendant

Bellini "stood to benefit from the transaction")—was "unfair"

under HRS § 480-2. But Plaintiff's UDAP claim against Defendant

Bellini cannot proceed on this basis, as Plaintiff fails to

allege "injury to [her] business or property resulting from [the

alleged] violation." Lizza, 1 F. Supp. 3d at 1121 (D. Haw. 2014)

(citation omitted); see also In re Kekauoha-Alisa, 674 F.3d at

1092 ("Any injury must be fairly traceable to the defendant's

actions." (citation omitted)).

Plaintiff's allegations that Defendant Bellini engaged

in unfair acts and practices when he issued her an unsuitable

life insurance policy, Compl. ¶¶ 71, 72, 72.b, contain

insufficient factual detail. The Court is aware of no

controlling authority for the proposition that the writing agent

of a life insurance policy must make a suitability

determination.[7/] And absent further, properly pled information

---

[7/] There is statutory authority for the imposition of a duty on
insurers to make suitabiltiy determinations in regard to some
transactions involving annuities, but Plaintiff had not pled
(Continued . . .)

regarding what, if anything, was concealed from or
misrepresented to Plaintiff (such that this allegation might
sound in deception) and whether or not Plaintiff consented to
the issuance of the life insurance policy (for, if she did not,
she may indeed have a claim for deceptive or unfair practices),
this allegation cannot sustain Plaintiff's UDAP claim against
Defendant Bellini.

Because Plaintiff's First Cause of Action has failed
to state a UDAP claim against Defendant Bellini, the Court
grants the ACA Defendant's motion to dismiss Plaintiff's First
Cause of Action against him.

### b. Plaintiff's Second Cause of Action

Plaintiff's Second Cause of Action, entitled
"Unsuitability," alleges that all defendants "committed acts of
unfair and deceptive practices . . . by selling [Plaintiff] the
VOYA [P]olicy and setting up the financing arrangement, both of
which were unsuitable for her and The Brody Family Trust's
insurance and finance needs." Compl. ¶ 80.

Plaintiff's Second Cause of Action fails to state a
claim against any defendant and is dismissed as to the ACA
Defendants. As alluded to above, Plaintiff has pointed to no

---

(. . .)
facts tending to show that statute's applicability in the
context of the VOYA Policy and its premium financing
arrangement. See HRS § 431:10D-623.

authority for the proposition that a claim for the unsuitability of a life insurance policy or a financing arrangement, absent adequately pled allegations of commensurate deception, states a claim under UDAP. And here, as in much of the Complaint, Plaintiff fails to plead deception with the required particularity. Insofar as Plaintiff is alleging that the defendants' actions were only unfair, this claim contains insufficient factual detail for the Court to find it plausible that the defendants' actions "offend[ed] established public policy" or were "immoral, unethical, oppressive, unscrupulous[,] or substantially injurious to consumers," Balthazar, 109 Haw. at 77, 123 P.3d at 202.

### c. Plaintiff's Third Cause of Action

Plaintiff's Third Cause of Action for "Elder Abuse" is not a stand-alone claim, but rather a claim for heightened civil penalties under the UDAP statute. See HRS § 480-13.5. Insofar as Plaintiff is attempting to plead her Third Cause of Action as a claim separate and apart from her substantive UDAP claims, it is dismissed.

## III. Respondeat Superior (Seventh Cause of Action)

Plaintiff's Seventh Cause of Action is entitled "Vicarious Liability/Respondeat Superior" and is asserted

against all defendants remaining in this action.[8/]  But
respondeat superior is a theory of liability rather than an
independent cause of action.  Lopeti v. Alliance Bancorp, No. CV
11-00200 ACK-RLP, 2011 WL 13233545, at *15 (D. Haw. Nov. 4,
2011); see also McCormack v. City and Cty. of Honolulu, No. CIV.
10-00293 BMK, 2014 WL 692867, at *2-3 (D. Haw. Feb. 20, 2014),
aff'd, 683 F. App'x 649 (9th Cir. 2017) (noting that "[c]ourts
dismiss stand-alone claims for respondeat superior." (citations
omitted)).

        Moreover, while "[a] principal may be liable for the
wrongful acts of its agent that occur while [the agent is]
acting within the scope of the agency," Lopeti, 2011 WL
13233545, at *15, "'[v]icarious liability under the respondeat
superior doctrine ordinarily requires some kind of employment
relationship or other consensual arrangement under which one
person agrees to act under another's control,'"  State v.
Hoshijo ex rel. White, 102 Haw. 307, 319, 76 P.3d 550, 562
(2003) (quoting Dan B. Dobbs, The Law of Torts, § 335, at 910
(2000)) (emphasis in Hoshijo).

        Here, Defendant Bellini is alleged to have been
employed by Defendant ACA, Compl. ¶ 71, but as this order

--------

[8/] The Seventh Cause of Action does not name Accelerated Estate
Planning, LLC, which has been dismissed from this action without
prejudice.  ECF No. 101.

dismisses all underlying claims against Defendant Bellini, Plaintiff cannot now proceed against Defendant ACA under a theory of respondeat superior as to Defendant Bellini.  The Complaint also asserts that Defendant ACA, having hired Defendant Diyanni to draft the ILIT, is liable for his acts and omissions as well as its own.  Id. ¶ 18.  But because the Complaint alleges neither that Defendant ACA employed Defendant Diyanni nor any facts indicating a "consensual arrangement" under which Defendant Diyanni agreed to act under the control of Defendant ACA, Plaintiff's attempt to assign vicarious liability to Defendant ACA through Defendant Diyanni also fails.

The Complaint also alleges that Defendant ACA, together with at least seven other defendants, is responsible for the actions of Defendant Salisbury because the latter "acted within the scope of, and in the course of his employment with, or under the direction and control of the other Defendants who retained the right to control, direct, and/or manage" him.  Id. ¶ 115.  But the Complaint contains no allegations of an employment relationship between Defendants ACA and Salisbury, nor of any facts indicating the requisite "consensual arrangement" whereby Defendant Salisbury agreed to submit to Defendant ACA's control.  The Complaint thus fails to plausibly allege that Defendant ACA is liable for the acts of Defendant Salisbury.

The Complaint goes on to allege that all defendants "retained the right to control, direct, and/or manage" Defendant Diyanni, whom the Complaint designates as "an appointed agent." Id. ¶ 116. Again, however, absent allegations of an employment relationship or any nonconclusory facts tending to show a "consensual arrangement" whereby Defendant Diyanni submitted to other defendants' control, Plaintiff may not proceed against Defendants Bellini and ACA under the theory of respondeat superior.

The Seventh Cause of Action is dismissed as to Defendants ACA and Bellini.

## IV. Federal Civil RICO (Tenth and Eleventh Causes of Action)

Plaintiff's Tenth and Eleventh Causes of Action, asserted against all defendants, arise out of the Racketeer Influenced and Corrupt Organizations Act ("federal civil RICO"). In her Tenth Cause of Action, Plaintiff asserts that "Defendants have intentionally participated in at least one of two schemes to defraud [Plaintiff] of her money" in violation of 18 U.S.C. § 1962(c). Compl. ¶ 128; see also id. ¶ 127, 129–151. Plaintiff's Eleventh Cause of Action alleges that all defendants conspired, in one of two enterprises or schemes,[9/] to violate 18

_____

[9/] Plaintiff identifies two enterprises and alleges that each "market[ed] and s[old] unsuitable financial products to [Plaintiff] while concealing the true nature of the products[.]" (Continued . . . .)

U.S.C. § 1962(c) and "defraud" Plaintiff of her money, in
violation of 18 U.S.C. § 1962(d).

Under 18 U.S.C. § 1962(c), it is illegal "for any
person employed by or associated with any enterprise engaged in,
or the activities of which affect, interstate or foreign
commerce, to conduct or participate, directly or indirectly, in
the conduct of such enterprise's affairs through a pattern of
racketeering activity or collection of unlawful debt."  A
private right of action for federal civil RICO violations is
provided in 18 U.S.C. § 1964(c).  And under 18 U.S.C. § 1962(d),
it is illegal "for any person to conspire to violate" 18 U.S.C.
§ 1962(a), (b), or (c).

"To prevail on a civil RICO claim, a plaintiff must
prove that [each] defendant engaged in (1) conduct (2) of an
enterprise (3) through a pattern (4) of racketeering activity
and, additionally, must establish that (5) the defendant caused
injury to plaintiff's business or property."  Chaset v.

_____

(. . .)
Compl. ¶ 130.  Plaintiff alleges that the "VOYA Enterprise"
operated "[w]ith respect to the VOYA [P]olicy and the premium
financing arrangement associated with" the Policy, and was made
up of the Salisbury Defendants, Accelerated Estate Planning, LLC
(which has now been dismissed), and Defendants Claraphi, NAM,
Diyanni, Lake Forest, Wintrust, ACA, SLD, and Bellini.  Id. ¶
130a.  Plaintiff further alleges that the "Annuities
Enterprise," which operated "[w]ith respect to the annuity
churning scheme[,]" comprised the Salisbury Defendants,
Accelerated Estate Planning, LLC, and Defendants Claraphi and
NAM.  Id. ¶ 130b.

Fleer/Skybox Int'l, LP, 300 F.3d 1083, 1086 (9th Cir. 2002)

(citing 18 U.S.C. §§ 1962(c), 1964(c)). Regarding the fifth

element, "[a] plaintiff must show that the defendant's RICO

violation was not only a 'but for' cause of his injury, but that

it was a proximate cause as well." Oki Semiconductor Co. v.

Wells Fargo Bank, Nat. Ass'n, 298 F.3d 768, 773 (9th Cir. 2002)

(citing Holmes v. Sec. Inv'r Prot. Corp., 503 U.S. 258, 268-69

(1992)). "Some 'direct relationship' between the injury asserted

and the injurious conduct is necessary." Oki Semiconductor Co.,

298 F.3d at 773 (quoting Holmes, 503 U.S. at 269). "To

establish proximate cause, plaintiffs must show that their

injury flows directly from the defendants' commission of the

predicate acts." Pedrina v. Chun, 906 F. Supp. 1377, 1415 (D.

Haw. 1995) (citation omitted).

     "'[T]o conduct or participate, directly or indirectly,

in the conduct of such enterprise's affairs,' § 1962(c), one

must participate in the operation or management of the

enterprise itself." Reves v. Ernst & Young, 507 U.S. 170, 185

(1993). "[O]ne must have some part in directing [the

enterprise's] affairs." Id. at 179.

     For purposes of federal civil RICO, an "enterprise"

includes "any individual, partnership, corporation, association,

or other legal entity, and any union or group of individuals

associated in fact although not a legal entity." 18 U.S.C. §

1961(4).  To show an associated-in-fact enterprise, a plaintiff must plead three elements: (1) common purpose; (2) an "ongoing organization," either formal or informal; and (3) that "the various associates function as a continuing unit." Odom v. Microsoft Corp., 486 F.3d 541, 552 (9th Cir. 2007) (citing United States v. Turkette, 452 U.S. 576,  583 (1981)).

A "pattern ... requires at least two acts of racketeering activity," 18 U.S.C. § 1961(5), and "also requires proof that the racketeering predicates are related and 'that they amount to or pose a threat of continued criminal activity.'" Turner v. Cook, 362 F.3d 1219, 1229 (9th Cir. 2004) (quoting H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 237–38 (1989)).  And racketeering activity "is any act indictable under various provisions of 18 U.S.C. § 1961 and includes the predicate acts alleged in this case of mail fraud and wire fraud under 18 U.S.C. §§ 1341 and 1343." Forsyth v. Humana, Inc., 114 F.3d 1467, 1481 (9th Cir. 1997), overruled on other grounds by Lacey v. Maricopa Cty., 693 F.3d 896 (9th Cir. 2012) (en banc).

With respect to mail and wire fraud, Plaintiff must allege the following elements: "(1) formation of a scheme or artifice to defraud; (2) use of the United States mails or wires, or causing such a use, in furtherance of the scheme; and (3) specific intent to deceive or defraud." Sanford v.

MemberWorks, Inc., 625 F.3d 550, 557 (9th Cir. 2010) (citation omitted). Under Rule 9(b), "[w]hile the elements of knowledge and intent may be averred generally, the factual circumstances of the fraud itself require particularized allegations." Queen's Med. Ctr. v. Kaiser Found. Health Plan, Inc., 948 F. Supp. 2d 1131, 1158 (D. Haw. 2013) (citing Sanford, 625 F.3d at 558); but see Puri v. Khalsa, 674 F. App'x 679, 687 (9th Cir. 2017) (noting that where facts are peculiarly within opposing parties' knowledge, pleading fraud on information and belief is permissible when such pleading is accompanied by a statement of the facts upon which the belief is founded).

To state a claim for conspiracy to violate RICO under § 1962(d), a plaintiff must allege "either an agreement that is a substantive violation of RICO or that the defendants agreed to commit, or participated in, a violation of two predicate offenses." Howard v. Am. Online, Inc., 208 F.3d 741, 751 (9th Cir. 2000). "The illegal agreement need not be express as long as its existence can be inferred from the words, actions, or interdependence of activities and persons involved." Oki Semiconductor Co. v. Wells Fargo Bank, 298 F.3d 768, 775 (9th Cir. 2002). Under § 1962(d), while a conspiracy defendant need not have personally committed a predicate act, or even an overt act in furtherance of the RICO conspiracy, the defendant must be "aware of the essential nature and scope of the enterprise and

intended to participate in it." <u>Baumer v. Pachl</u>, 8 F.3d 1341, 1346 (9th Cir. 1993). "[T]he failure to adequately plead a substantive violation of RICO precludes a claim for conspiracy." <u>Howard v. Am. Online Inc.</u>, 203 F.3d 741, 751 (9th Cir. 2000).

The ACA Defendants move to dismiss Plaintiff's federal civil RICO claims against them. The ACA Defendants assert that Plaintiff's Tenth Cause of Action erroneously "lumps all the defendants together" and fails to allege the predicate acts of wire and mail fraud with sufficient particularity. MTD at 13–14. The ACA Defendants also argue that Plaintiff's Eleventh Cause of Action must fail with her Tenth. <u>Id.</u> at 14.

The Court concurs with the ACA Defendants that Plaintiff's federal civil RICO claims against them fail, as Plaintiff's Tenth Cause of Action fails to adequately plead a substantive violation of RICO. First, while the Complaint's seventy-five pages do contain some allegations that could be construed as addressing the ACA Defendants' roles in the alleged "VOYA Enterprise,"[10/] the Complaint does not allege with sufficient specificity that either of the movants now before the Court "participate[d] in the operation or management of the enterprise itself"—that is, had any "part in directing [the enterprise's] affairs." <u>Reves</u>, 507 U.S. at 179, 185.

---

[10/] The Court expects that any amended complaint will make these allegations in a more organized fashion.

44

Second, the Complaint's allegations of the predicate acts of wire and mail fraud are insufficient. Plaintiff alleges that "[m]any of the precise dates for the VOYA Enterprise['s] . . . fraudulent uses of the U.S. Mail and wire facilities have been deliberately hidden and cannot be alleged without access to Defendants' books and records." Compl. ¶ 148. But even under a relaxed standard, Plaintiff's allegations of the predicate acts of mail and wire fraud are wanting. Plaintiff not only fails to allege "precise dates," she fails to allege any dates at all,[11/] and indeed to state which defendants are alleged to have committed which predicate acts. As iterated, the Complaint's RICO allegations leave both the Court and the defendants in the dark as to who is alleged to have done what and when.

This is not a corporate fraud case, which the Ninth Circuit has recognized as an appropriate circumstance in which

---

[11/] Some of the allegations concerning the VOYA Enterprise's predicate acts may, with some searching, be linked to dates iterated earlier in the Complaint. See, e.g., Compl. ¶¶ 148.a.i (alleging "[p]rocessing documents to establish the ILIT" as a predicate act), 51–53 (indicating that the ILIT was established in or around March–April 2016). Others, although almost certainly not exclusively within defendants' knowledge, do not appear in the Complaint's seventy-five pages to have any dates attached to them. See, e.g., id. ¶ 148.a.iv (alleging "processing premium payments for the policy" as a predicate act). The Court expects that any amended complaint will lay out its allegations in a far more orderly fashion so that neither the Court nor the defendants need undertake a searching review of the Complaint's entirety in order to make sense of individual claims or allegations.

to relax Rule 9(b)'s particularity requirement with respect to the allegedly fraudulent conduct of each individual.  See, e.g., Moore, 885 F.2d at 540; Wool, 818 F.2d at 1440.  Nor does this appear to be a case in which all defendants "are alleged to have engaged in precisely the same conduct." United States v. United Healthcare Ins. Co., 848 F.3d 1161, 1184 (9th Cir. 2016).  Even those allegations of predicate acts whose actors one would expect Plaintiff to be able to allege with relative ease are alleged generally, presumably against all defendants named in the enterprise.  See, e.g., Compl. ¶ 148.a.i, 148.a.ii.

> Rule 9(b) serves three purposes: (1) to provide defendants with adequate notice to allow them to defend the charge and deter plaintiffs from the filing of complaints "as a pretext for the discovery of unknown wrongs"; (2) to protect those whose reputation would be harmed as a result of being subject to fraud charges; and (3) to "prohibit [ ] plaintiff[s] from unilaterally imposing upon the court, the parties and society enormous social and economic costs absent some factual basis."

Kearns v. Ford Motor Co., 567 F.3d 1120, 1125 (9th Cir. 2009) (quoting In re Stac Elecs. Sec. Litig., 89 F.3d 1399, 1405 (9th Cir.1996)) (alterations in Kearns).  To relax Rule 9(b)'s strictures in some circumstances is not to eliminate them entirely, as the Rule's underlying purposes remain.  Given her failure to allege the predicate acts of mail and wire fraud with sufficient specificity—on information and belief or otherwise—

Plaintiff's Tenth Cause of Action cannot stand.

Plaintiff's Tenth Cause of Action against Defendants ACA and Bellini is therefore dismissed, and her Eleventh Cause of Action must fall with the Tenth.  Howard, 203 F.3d at 751.[12/]

## V.  Hawai`i Civil RICO (Twelfth Cause of Action)

Plaintiff's Twelfth Cause of Action asserts that all defendants have "engaged in 'racketeering activity' by committing or aiding and abetting in the commission of at least one act of racketeering activity, i.e., violations of the Hawai`i Unfair and Deceptive Acts Trade Practices Act . . . . Therefore, the Defendants have violated [HRS] § 842-2(3)." Compl. ¶ 163.

HRS § 842-2(3) ("Hawai`i RICO") makes it unlawful "[f]or any person employed by or associated with any enterprise to conduct or participate in the conduct of the affairs of the enterprise through racketeering activity or collection of an unlawful debt."  HRS § 842-8(c) creates a private right of action for "[a]ny person injured in the person's business or property by reason of" a RICO violation.

---

[12/] Local Rule 33.1 currently provides that any party defending against a RICO claim may move for an order requiring the claimant to file and serve a RICO discovery statement.  The Court notes, however, that amendments to the Local Rules are apparently currently being considered, and that the requirements of what is now Local Rule 33.1 may in the future be included in magistrate judges' discovery or Rule 16 orders.

"[T]he most useful source in interpreting HRS § 842-2(3) is federal law. . . . [F]ederal law is an important aid to construction because HRS § 842-2 was derived from the federal Racketeer Influenced and Corrupt Organizations (RICO) statute." State v. Ontai, 84 Haw. 56, 61, 929 P.2d 69, 74 (1996). "The only material differences between the two statutes are the [federal statute's] references to 'interstate or foreign commerce' and 'pattern of racketeering activity.'" Id. & n.8 ("The reference to 'interstate or foreign commerce' is due to the requirements of the Commerce Clause of the United States Constitution. See U.S. Const. art. I, § 8. The reference to a 'pattern of racketeering activity' is due to the fact that the federal statute requires at least two acts of racketeering activity. 18 U.S.C. § 1961(5) (1994). The Hawai'i statute only requires one act. HRS § 842-1[.]").

Therefore, and in light of the differences between 18 U.S.C. § 1962(c) and HRS § 842-2(3), a plaintiff bringing a Hawai`i civil RICO claim "must prove that the defendant engaged in (1) conduct (2) of an enterprise (3) through a[n act] (4) of racketeering activity and, additionally, must establish that (5) the defendant caused injury to plaintiff's business or property." Chaset, 300 F.3d at 1086 (9th Cir. 2002); see, e.g., DeRosa v. Ass'n of Apartment Owners of the Golf Villas, 185 F. Supp. 3d 1247, 1262 (D. Haw. 2016), as amended (Aug. 31, 2016)

(importing the elements of federal civil RICO into a claim under HRS § 842-2(3)); see also HRS § 842-8(c).

> For purposes of HRS § 842-2(3),
>
> > "[r]acketeering activity" means any act or threat involving but not limited to murder, kidnapping, gambling, criminal property damage, robbery, bribery, extortion, labor trafficking, theft, or prostitution, or any dealing in narcotic or other dangerous drugs that is chargeable as a crime under state law and punishable by imprisonment for more than one year.

HRS § 842-1.

The ACA Defendants move to dismiss Plaintiff's Twelfth Cause of Action against them on the grounds that it is derivative of her UDAP claims, which they contend fail. MTD at 14–15.

The Court finds that dismissal of Plaintiff's Twelfth Cause of Action against the ACA Defendants is proper. First, as with her Tenth Cause of Action, Plaintiff fails to allege how either of the movants participated in the "operation or management" of the alleged enterprise. Reves, 507 U.S. at 185; see State v. Bates, 84 Haw. 211, 223, 933 P.2d 48, 60 (1997) (citing Reves with approval).

Second, and perhaps more importantly, Plaintiff has not alleged either the commission or the aiding and abetting of any "racketeering activity" by either Defendant ACA or Defendant Bellini. Plaintiff cites to no authority, and the Court can

locate none, to support the proposition that a violation of
Hawai`i's UDAP statute, by itself, constitutes "racketeering
activity."  The dearth of any such authority is to be expected;
as the Hawai`i Supreme Court has noted, "the legislative history
underlying HRS § 842-2 provides that '[t]he purpose of [the]
bill [was] to curtail organized crime activity in Hawaii.'"
Bates, 84 Haw. at 222, 933 P.2d at 59 (citing Hse. Stand. Comm.
Rep. No. 668-72, in 1972 House Journal, at 967; Sen. Stand.
Comm. Rep. No. 492-72, in 1972 Senate Journal, at 956; Hse.
Stand Comm. Rep. No. 728-72, in 1972 House Journal, at 1006)
(emphasis added); see also 18 U.S.C. § 1961(1) (listing as
predicate acts, for the purposes of federal RICO, "chargeable,"
"indictable," and "punishable" offenses).  To the extent
Plaintiff intends the predicate acts asserted in connection with
her federal RICO claims to serve as the predicate acts here, the
Court finds that those allegations are insufficient for the
reasons detailed above.  See Sec. IV, supra.

     As to the movants, the Complaint identifies no crime,
either listed in HRS § 842-1 or otherwise, that Defendant ACA or
Defendant Bellini is supposed to have committed or aided and
abetted.[13/]  In other words, even if Plaintiff's UDAP Causes of

---

[13/] By contrast, Plaintiff alleges that the Salisbury Defendants,
Defendant NAM, and Defendant Claraphi engaged in "racketeering
activity" by either committing or aiding and abetting in the
(Continued . . .)

Action were adequately pled against the ACA Defendants, her Twelfth Cause of Action against them would still fail, devoid as it is of allegations of any predicate acts of "racketeering activity."

## VI. Plaintiff is Granted Leave to Amend

Plaintiff requests leave to amend her Complaint to correct any deficiencies. Opp. at 19–20. Because Plaintiff may be able to cure the Complaint's defects via amendment, leave to amend is granted, and the Causes of Action dismissed herein are dismissed without prejudice. See OSU Student All., 699 F.3d at 1079; Vess, 317 F.3d at 1107.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants Aurora Capital Alliance and Alejandro Alberto Bellini's Motion to Dismiss, ECF No. 49. The dismissal is without prejudice. Any amended complaint must be filed within thirty days of the issuance of this Order.

---

(. . .)
commission of not just UDAP violations, but also theft. Compl. ¶ 166–67.

IT IS SO ORDERED.

DATED: Honolulu, Hawai`i, May 14, 2019.



_____
Alan C. Kay
Sr. United States District Judge

Ryan v. Salisbury et al., Civ. No. 18-406 ACK-RT, Order Granting Defendants Aurora Capital Alliance and Alejandro Alberto Bellini's Motion to Dismiss.