IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

KATHY RYAN, INDIVIDUALLY, AND IN
HER CAPACITY AS TRUSTEE OF THE
BRODY FAMILY TRUST;

        Plaintiff,

    vs.

CHRISTOPHER S. SALISBURY; C.
SALISBURY, LLC; CLARAPHI ADVISORY
NETWORK, LLC; NATIONAL ASSET
MANAGEMENT, INC.; MICHAEL
DIYANNI; LAKE FOREST BANK & TRUST
COMPANY, N.A.; WINTRUST LIFE
FINANCE; AURORA CAPITAL ALLIANCE;
SECURITY LIFE OF DENVER INSURANCE
COMPANY; and ALEJANDRO ALBERTO
BELLINI,

        Defendants.

Civ. No. 18-00406 ACK-RT

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT MICHAEL DIYANNI'S MOTION TO DISMISS

For the reasons set forth below, the Court GRANTS IN PART and DENIES IN PART Defendant Michael Diyanni's Motion to Dismiss, ECF No. 52, as follows:

1. As to the First Cause of Action (UDAP), the Motion is DENIED.

2. As to the Second Cause of Action (UDAP—Unsuitability), the Motion is GRANTED.

3. As to the Third Cause of Action (UDAP—Elder Abuse), the Motion is GRANTED.

1

4. As to the Fifth Cause of Action (Fraudulent Misrepresentation), the Motion is DENIED.

5. As to the Sixth Cause of Action (Breach of Fiduciary Duty), the Motion is DENIED.

6. As to the Seventh Cause of Action (Vicarious Liability/Respondeat Superior), the Motion is GRANTED.

7. As to the Tenth Cause of Action (RICO Violation), the Motion is GRANTED.

8. As to the Eleventh Cause of Action (Conspiracy to Violate RICO), the Motion is GRANTED.

9. As to the Twelfth Cause of Action (Hawai`i RICO), the Motion is GRANTED.

## FACTUAL BACKGROUND

The Brody Family Trust ("the Trust") was created on February 9, 1993, with Plaintiff Kathy Ryan (then Kathy Brody) ("Plaintiff")[1] serving as its trustee. Compl., ECF No. 1 ¶ 23. The Trust was organized under the laws of California. Id. Sometime in 2002 or thereafter, the estate planning company that first established the Trust referred Plaintiff to Defendant Christopher S. Salisbury ("Defendant Salisbury") for her

---

[1] Plaintiff turned sixty-two years old—and thus became an "elder" as that term is defined in HRS § 480-13.5—sometime in 2012. Compl. ¶ 86.

investment and financial planning needs.  Id. ¶ 24.

Early on in his tenure as Plaintiff's financial
advisor, Defendant Salisbury began investing Plaintiff's money
and/or that of the Trust into annuities, among other
investments.  Id. ¶ 25.  Defendant Salisbury, together with
Defendant C. Salisbury, LLC and Accelerated Estate Planning, LLC
(together, "the Salisbury Entities") caused Plaintiff to
surrender certain annuities and move the money to different
annuities with the promise that any surrender fees would be
offset either by bonus monies or greater earnings of the new
product (a process the Complaint calls "churning").  Id. ¶ 26.
Defendant Salisbury understood that Plaintiff did not have
sophisticated knowledge of investment, financial, and insurance-
related matters.  Id. ¶ 29.  The Salisbury Entities made verbal
representations about the products Defendant Salisbury was
directing Plaintiff to invest in or purchase, and Defendant
Salisbury routinely presented Plaintiff with signature pages,
rather than complete documents, which he instructed her to sign
but not date.  Id. ¶ 30.  Defendant Salisbury, a licensed
notary, often notarized documents Plaintiff had signed,
including those signed outside his presence.  Id.

## I.  The Annuities

Among the many annuities involved in Defendant
Salisbury's "churning" process were annuities issued by Allianz,

at least two of which were surrendered at a sizeable loss. See id. ¶ 31. First, on or about December 29, 2009, Plaintiff was caused to surrender Allianz Flexible Premium Deferred Annuity Policy (Index Benefit bearing policy number XXX 3635, policy date September 1, 2006)—which was then valued at approximately $902,000—at a loss of approximately $200,077. Id. ¶ 32. Second, on or about November 21, 2014, following Defendant Salisbury's advice and direction, Plaintiff surrendered an Allianz annuity with a policy number XXX 7754, which was issued on December 18, 2006.

Again acting on Defendant Salisbury's advice and direction, Plaintiff also surrendered four Phoenix Personal Income Annuities. On or about October 19, 2017, Plaintiff surrendered two such annuities. One, number XXX 5109, was issued with a single premium of $24,795.55 on December 9, 2014, and its surrender cost Plaintiff approximately $3,790.04 in surrender charges, id. ¶ 34a; the other, number XXX 5355, was issued with a single premium of $24,800.42 on December 11, 2014, and its surrender cost Plaintiff approximately $3,939.86 in surrender charges, id. ¶ 34b. On or about November 7, 2017, Plaintiff surrendered Phoenix Personal Income Annuity number XXX 8769, which had been issued with a single premium of $700,000 on May 4, 2015, and incurred approximately $110,220.74 in surrender charges. Id. ¶ 34d. And on or about November 8, 2017,

Plaintiff incurred approximately $25,983.85 in surrender charges by surrendering Phoenix Personal Income Annuity XXX 4609, which was issued on December 18, 2014 with a single premium of $160,319.48. Id. ¶ 34c. As to these four annuities, Plaintiff lost approximately $143,931.49. Id. ¶ 34.

Again following Defendant Salisbury's advice and direction, Plaintiff purchased and invested in the Fidelity Premium Deferred Fixed Index Annuity, AdvanceMark Ultra 14, number XXX 5051, which was issued on February 8, 2015. Id. ¶ 35. As of the most recent annual statement, it had an account value of approximately $453,282.52. Id. Plaintiff surrendered it in or around October 2017, and the surrender charge was $52,382.80. Id.

Similarly, Defendant Salisbury allowed an American National annuity, number XXX 0431, to run just over a year before he caused Plaintiff to surrender it in or around April 2015. Id. ¶ 36. The surrender of this annuity, which had been issued on March 14, 2014 with an initial premium payment of $737,450.85, incurred approximately $61,028 in surrender charges. Id.

Plaintiff was also issued a ForeThought Single Premium Deferred Annuity Contract number XXX 8001 on February 11, 2009, with an initial premium payment of $166,949.80. Id. ¶ 37. At Defendant Salisbury's direction, Plaintiff made several

withdrawals from this annuity while it was in force.  Id.  At
the time of surrender on or about November 17, 2014, the annuity
was valued at $146,486.39, and the surrender fee was $7,324.32.
Id. ¶ 37.

And on November 26, 2007, Plaintiff was issued a North
American Company Individual Flexible Premium Deferred Annuity,
number XXX 2105, with an initial premium payment of $276,745.13.
Id. ¶ 38.  Plaintiff paid an additional premium of $598,595.71
on or about April 27, 2012.  Id.  On or about January 29, 2014,
the annuity was surrendered at a net loss of $88,205.94.  Id.

These transactions—which Plaintiff alleges are a
representative list of Defendant Salisbury's "churning"
activities rather than an exhaustive one, see id. ¶ 39—cost
Plaintiff approximately $576,207.28 in surrender charges, id.
With respect to each transaction, and over the course of them
all, Defendant Salisbury told Plaintiff that the surrenders were
in her best interest and explained that any surrender charge
incurred was worth incurring to better position the funds in the
replacement annuity.  Id. ¶ 40.

## II.  The Insurance Policies

Acting on Defendant Salisbury's advice, Plaintiff
obtained a Lincoln Benefit Flexible Premium Variable Life
Insurance Policy on October 6, 2004.  Id. ¶ 44.  This policy
carried a death benefit of $5,066,782, and its planned annual

payment was $279,731.  Id.  In or around 2008, Defendant

Salisbury reduced the death benefit to $500,000, and the policy

was surrendered on October 7, 2013.  Id.

Again acting on Defendant Salisbury's advice,

Plaintiff procured a one million dollar Flexible Premium

Universal Life Insurance Policy from Columbus Life Insurance

Company.  See id. ¶ 43.  The policy had an effective date of May

20, 2004, and the planned premiums were $16,881.12 annually.

Id.  This policy was cancelled in or around April 2016 and

replaced with a $2,500,000 VOYA IUL-Global Choice Policy ("the

VOYA Policy" or "the Policy") issued by Defendant Security Life

of Denver ("Defendant SLD") and subject to a financing

arrangement conceived of and carried out by Defendants

Salisbury, Claraphi Advisory Network, LLC ("Defendant

Claraphi"), Michael Diyanni ("Defendant Diyanni"), Aurora

Capital Alliance ("Defendant ACA"), Lake Forest Bank & Trust

Company, N.A. ("Defendant Lake Forest"), Wintrust Life Finance

("Defendant Wintrust"), and Alejandro Alberto Bellini

("Defendant Bellini").  Id. ¶ 45.  Defendant Bellini was the

writing agent of the VOYA Policy and participated in selling the

Policy to Plaintiff.  Id. ¶ 20.

Defendant Salisbury advised Plaintiff that the VOYA

Policy would fund itself—that she would never have to make

premium payments on it due to the design of the premium

financing arrangement orchestrated by Defendants Salisbury, Claraphi, Diyanni, ACA, Lake Forest, Wintrust, and Bellini. Id. ¶ 46. Plaintiff expressed concern to Defendant Salisbury about the value of the VOYA Policy, but Defendant Salisbury told Plaintiff that the Policy was designed to assist her children in paying taxes after Plaintiff's decease. Id. ¶ 48. But Defendant Salisbury did not inform Plaintiff at the time the Policy was purchased that very little, if any, of her net worth would be subject to estate taxes. Id. Defendant Salisbury misrepresented Plaintiff's net worth on the application for the VOYA Policy. Id. ¶ 49.

Plaintiff did not need the VOYA Policy's life insurance, and in any case she lacked the liquid assets to properly fund it. Id. ¶ 50. Despite knowing this, Defendants Salisbury, Claraphi, Diyanni, ACA, Lake Forest, Wintrust, and Bellini induced Plaintiff to enter into transactions they knew would be to her detriment. Id.

A trust agreement was created on March 26, 2016, by Defendant Diyanni, an attorney chosen by Defendant Salisbury whom Plaintiff had never met. Id. ¶ 51. Defendant Diyanni handles some tax matters, but specializes primarily in personal injury and DUI/DWI cases. Id. Defendant Diyanni was hired by Defendant ACA to draft "an Irrevocable Trust that would meet both the standards for the financial institution and life

insurance carrier." Id. ¶ 52. Defendant Diyanni, and The Law Office of Michael Diyanni, would serve as Trustee of the Kathy Ryan Irrevocable Trust. Id.

Defendant SLD issued the VOYA Policy on April 5, 2016. Id. ¶ 53. The annual scheduled premium was $160,000, and the minimum monthly premium to maintain the policy was $3,072.22. Id. Defendant ACA arranged for First Insurance Funding (now Defendant Lake Forest; hereafter "Defendant Lake Forest") and/or Wintrust to finance the VOYA premiums. Id. ¶ 18. On April 12, 2016, Defendant Lake Forest issued its proposal of a $172,000 initial loan amount, which included a $12,000 broker's fee that was paid to Defendant Diyanni. Id. ¶ 54. Plaintiff alleges that this $12,000 fee is substantially in excess of the commissions normally paid to brokers, agents, or attorneys for similar services. Id.

Defendant Diyanni then assigned the VOYA Policy as collateral to Defendant Lake Forest. Id. ¶ 55. Plaintiff was also required to assign an annuity, Allianz Annual Fixed Index Annuity number XXX 9437, as collateral. Id. ¶ 56. Defendants Diyanni and Salisbury told Plaintiff that the assignment would be released after seven years. Id. But this assignment was fraudulently procured by Defendants Diyanni and Salisbury, as it is dated and notarized in Orange County, California, on a date when Plaintiff was not on the mainland and could not have signed

the document.  Id. ¶ 57.

      Plaintiff alleges that, during and after the sale of
the Policy, Defendant Diyanni as Trustee of the Kathy Ryan
Irrevocable Trust (the "ILIT") failed to perform his fiduciary
duties to determine the appropriateness of replacing the
Columbus Life policy or the suitability of the VOYA Policy.  See
id. ¶ 58.  Plaintiff further alleges that Defendant Diyanni did
not properly assess the negative consequences of the premium
financing arrangement, the selection and assignment of
collateral, and/or the funding of premiums outside of the
premium financing arrangement.  Id.  "In short," Plaintiff
alleges, "the VOYA [P]olicy should have never been purchased."
Id.

      A year later, Plaintiff and Defendant Diyanni were
advised that the Note issued by Defendant Lake Forest was in
default for failure to make the interest payment of $8,642.25,
and to make the premium payment of $163,500, as well as to
provide the requested collateral.  Id. ¶ 59.  Plaintiff
contacted VOYA, a representative of which told her that the
company could only speak with Defendant Diyanni because he was
the "owner" of the Policy.  Id. ¶ 60.  When Plaintiff contacted
Defendant Salisbury, he told her that Defendant Lake Forest was
mistaken, but he later reversed course and instructed Plaintiff
to wire $37,000 to Defendant Lake Forest in order to secure the

loan.  See id.  Plaintiff did so, but never received a receipt

for the transaction.  Id.

Despite having been advised by Defendant Salisbury

that she should never have to personally pay premiums on the

VOYA Policy and that the policy would fund itself, Plaintiff was

advised by Defendant ACT, in or around March 2018, that the

action items on her life insurance premium finance arrangement

included an outstanding interest payment of $24,545.82 and a

signed, dated Guarantors Acknowledgment and Certification

Additional Collateral of $60,639.55.  Id. ¶ 61.

Those defendants who initiated and/or approved the

purchase of the VOYA Policy and the associated premium financing

arrangements—i.e., Defendants Salisbury, Claraphi, Diyanni, ACA,

Lake Forest, Wintrust, SLD, and Bellini, see id. ¶ 45, 53—knew

at the time they did so that the VOYA Policy was an unsuitable

financial product for Plaintiff in light of the excessive death

benefit and the fact that its premiums exceeded her ability to

pay.  Id. ¶ 62; but see id. ¶ 72.c (alleging that "Defendant

Salisbury misrepresent[ed Plaintiff]'s net worth on the

application for the VOYA life insurance policy").  Plaintiff

alleges that the sale of the policy and premium financing

arrangement were part of a fraudulent and deceptive scheme

carried out by all defendants working in concert with one

another.  Id. ¶ 25.

**PROCEDURAL BACKGROUND**

Plaintiff, proceeding both individually and in her capacity as trustee of the Brody Family Trust, filed her Complaint on October 23, 2018. Compl. Therein, she asserted twelve causes of action:

1. Violation of the Unfair and Deceptive Acts or Trade Practices Act ("UDAP"), Hawai`i Revised Statutes ("HRS") §§ 480-1 et seq., as to all defendants. Compl. ¶¶ 64-78.

2. UDAP, Violation of HRS § 480-2 ("Suitability") as to all defendants. Compl. ¶¶ 79-82.

3. UDAP, "Elder Abuse", as to all defendants. Id. ¶¶ 83-90.

4. Fraudulent suppression as to the Salisbury Defendants and Defendants NAM and Claraphi. Id. ¶¶ 91-97.

5. Fraudulent misrepresentation as to the Salisbury Defendants and Defendants NAM, Claraphi, and Diyanni. Id. ¶¶ 98-103.

6. Breach of fiduciary duty as to the Salisbury Defendants and Defendants NAM, Claraphi, and Diyanni. Id. ¶¶ 104-13.

7. Vicarious liability/respondeat superior as to the Salisbury Defendants and Defendants NAM, Claraphi, Diyanni, ACA, Lake Forest, Wintrust, SLD, and Bellini. Id. ¶¶ 114-18.

8. Violation of the Hawai`i Securities Act (HRS §§ 485A-502,

12

485A-509) as to the Salisbury Defendants, Defendant NAM,
and Defendant Claraphi.  Compl. ¶¶ 119-22.

9. Controlling Person Liability, under HRS § 485A-509(g), as
to Defendants NAM and Claraphi.  Compl. ¶¶ 123-26.

10.  Violation of the Racketeer Influenced and Corrupt
Organizations Act ("RICO"), 18 U.S.C. § 1962(c), as to
all defendants.  Compl. ¶¶ 127-51.

11.  Violation of RICO, 18 U.S.C. § 1962(d), as to all
defendants.  Compl. ¶¶ 152-59.

12.  Violation of HRS § 842-2(3), as to all defendants.
Compl. ¶¶ 160-71.

On December 31, 2018, Defendant Diyanni, proceeding
pro se, filed a succinct, three-page motion to dismiss
("Motion"), without a separate memorandum in support, citing
Federal Rules of Civil Procedure ("Rules") 12(b)(1), 12(b)(6),
and 9(b).  ECF No. 52.  Plaintiff filed an Opposition on March
25, 2019.  See ECF No. 107.  Defendant Diyanni filed no Reply.
Statements of no position as to the Motion were filed by the ACA
Defendants, ECF No. 105, and Defendant NAM, ECF No. 102.

The Court scheduled the Motion for hearing on April
15, 2019.  ECF No. 62.  Defendant Diyanni did not appear at the
hearing.  ECF No. 118.  The Court, upon reaching Defendant
Diyanni by telephone, instructed him to file an explanation for

his absence. ECF No. 119. To date, no such filing has been received.

On April 29, 2019, the Court issued a minute order offering both Plaintiff and Defendant Diyanni the opportunity to argue on Defendant Diyanni's Motion at the hearing scheduled for April 30, 2019 regarding three other motions in this matter. ECF No. 123. The Court attempted repeatedly to reach Defendant Diyanni by telephone to inform him of the minute order's contents and inquire if he wished to appear by telephone, but these attempts were unsuccessful. At the April 30, 2019 hearing, Plaintiff elected to rest on her Opposition to the Motion.

## STANDARDS

### I. Rule 12(b)(1)

A court's subject-matter jurisdiction may be challenged under Rule 12(b)(1). Such challenges may be either "facial" or "factual." Wolfe v. Strankman, 392 F.3d 358, 362 (9th Cir. 2004).

In a facial attack, "the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." Id. (quoting Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004)). When opposing a facial attack on subject-matter jurisdiction, the nonmoving party is not required to provide evidence outside the

14

pleadings.  <u>Wolfe</u>, 392 F.3d at 362; <u>see</u> <u>Doe v. Holy See</u>, 557
F.3d 1066, 1073 (9th Cir. 2009) (treating defendant's challenge
to subject-matter jurisdiction as facial because defendant
"introduced no evidence contesting any of the allegations" of
the complaint).  In deciding a facial Rule 12(b)(1) motion, the
court must assume the allegations in the complaint are true and
draw all reasonable inferences the plaintiff's favor.  <u>Wolfe</u>,
392 F.3d at 362 (citations omitted).

By contrast, in a factual attack, "the challenger
disputes the truth of the allegations that, by themselves, would
otherwise invoke federal jurisdiction."  <u>Wolfe</u>, 392 F.3d at 362
(quoting <u>Safe Air</u>, 373 F.3d at 1039).  The moving party may
bring a factual challenge to the court's subject-matter
jurisdiction by submitting affidavits or any other evidence
properly before the court.  The nonmoving party must then
"present affidavits or any other evidence necessary to satisfy
its burden of establishing that the court, in fact, possesses
subject-matter jurisdiction."  <u>Colwell v. Dep't of Health &</u>
<u>Human Servs.</u>, 558 F.3d 1112, 1121 (9th Cir. 2009) (citation
omitted).  In these circumstances, the court may look beyond the
complaint without having to convert the motion into one for
summary judgment.  <u>U.S. ex rel. Meyer v. Horizon Health Corp.</u>,
565 F.3d 1195, 1200 n.2 (9th Cir. 2009).  When deciding a
factual challenge to the court's subject-matter jurisdiction,

the court "need not presume the truthfulness of the plaintiffs'
allegations." <u>Id.</u>

## II.  Rule 12(b)(6)

Rule 12(b)(6) authorizes the Court to dismiss a
complaint that fails "to state a claim upon which relief can be
granted." Fed. R. Civ. P. 12(b)(6).  Rule 12(b)(6) is read in
conjunction with Rule 8(a), which requires only "a short and
plain statement of the claim showing that the pleader is
entitled to relief." Fed. R. Civ. P. 8(a)(2).  The Court may
dismiss a complaint either because it lacks a cognizable legal
theory or because it lacks sufficient factual allegations to
support a cognizable legal theory.  <u>Balistreri v. Pacifica
Police Dep't</u>, 901 F.2d 696, 699 (9th Cir. 1988).

In resolving a Rule 12(b)(6) motion, the Court must
accept all well-pleaded factual allegations as true and construe
them in the light most favorable to the plaintiff.  <u>Sateriale v.
R.J. Reynolds Tobacco Co.</u>, 697 F.3d 777, 783 (9th Cir. 2012).
The complaint "must contain sufficient factual matter, accepted
as true, to 'state a claim to relief that is plausible on its
face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting
<u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)).  "If
there are two alternative explanations, one advanced by
defendant and the other advanced by plaintiff, both of which are
plausible, plaintiff's complaint survives a motion to dismiss

16

under Rule 12(b)(6)." Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011). But "[t]he plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" Id. (quoting Twombly, 550 U.S. at 557). "[L]abels and conclusions" or "a formulaic recitation of the elements of a cause of action" do not suffice. Twombly, 550 U.S. at 555.

When a court dismisses a complaint pursuant to Rule 12(b)(6), it should grant leave to amend unless the pleading cannot be cured by new factual allegations. OSU Student All. v. Ray, 699 F.3d 1053, 1079 (9th Cir. 2012).

### III. Rule 9(b)

Rule 9(b) requires that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). "Rule 9(b) requires particularized allegations of the circumstances constituting fraud." In re GlenFed, Inc. Securities Litigation, 42 F.3d 1541, 1547–48 (9th Cir.1994) (en banc) (superseded by statute on other grounds as recognized in Ronconi v. Larkin, 253 F.3d 423, 429 n.6 (9th Cir.

2001)). Rule 9(b) requires the pleading to provide an "account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." Swartz v. KPMG LLP, 476 F.3d 756, 764 (9th Cir.2007) (internal quotations omitted). "Averments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged." Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir.2003). Plaintiffs may not simply plead neutral facts to identify the transaction, but rather must also set forth what is false or misleading about a statement, and why it is false. See GlenFed, 42 F.3d at 1548. Moreover,

> Rule 9(b) does not allow a complaint to merely lump multiple defendants together but require[s] plaintiffs to differentiate their allegations when suing more than one defendant . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud. In the context of a fraud suit involving multiple defendants, a plaintiff must, at a minimum, identif[y] the role of [each] defendant[ ] in the alleged fraudulent scheme.

Swartz, 476 F.3d at 764-65 (alterations in original) (citations omitted). However, Rule 9(b)'s requirements may be relaxed as to matters that are exclusively within the opposing party's knowledge. Rubenstein v. Neiman Marcus Grp. LLC, 687 F. App'x 564, 567 (9th Cir. 2017) (quoting Moore v. Kayport Package Express, Inc., 885 F.2d 531, 540 (9th Cir. 1989)).

> Rule 9(b) only "requires that plaintiffs
> specifically plead those facts surrounding
> alleged acts of fraud to which they can
> reasonably be expected to have access."
> Concha v. London, 62 F.3d 1493, 1503 (9th
> Cir. 1995). As such, "in cases where fraud
> is alleged, we relax pleading requirements
> where the relevant facts are known only to
> the defendant." Id. In those cases, a
> "pleading is sufficient under Rule 9(b) if
> it identifies the circumstances constituting
> fraud so that a defendant can prepare an
> adequate answer from the allegations."
> Moore, 885 F.2d at 540.

Rubenstein, 687 F. App'x at 567–68. Where the facts surrounding

fraud are "peculiarly within the opposing party's knowledge,"

then, "[a]llegations of fraud based on information and belief

may suffice . . . so long as the allegations are accompanied by

a statement of the facts upon which the belief is founded." Puri

v. Khalsa, 674 F. App'x 679, 687 (9th Cir. 2017) (citing Wool v.

Tandem Computs. Inc., 818 F.2d 1433, 1439 (9th Cir. 1987),

overruled on other grounds as stated in Flood v. Miller, 35

Fed.Appx. 701, 703 n.3 (9th Cir. 2002)).

A motion to dismiss a claim grounded in fraud for

failure to plead with particularly under Rule 9(b) is the

functional equivalent of a motion to dismiss under Rule

12(b)(6). See Vess, 317 F.3d at 1107. Thus, "[a]s with Rule

12(b)(6) dismissals, dismissals for failure to comply with Rule

9(b) should ordinarily be without prejudice. Leave to amend

should be granted if it appears at all possible that the

plaintiff can correct the defect." Id.

**DISCUSSION**

**I.   Jurisdiction**

Defendant Diyanni levels a facial attack on Plaintiff's assertion of diversity jurisdiction, see Compl. ¶ 21, contending that Plaintiff failed to sufficiently allege federal jurisdiction based on diversity of citizenship under 28 U.S.C. § 1332, Mot. at 2.  It is true—as Plaintiff acknowledges, see Pl.'s ACA Opp. at 10—that the Complaint does not adequately plead the elements of diversity jurisdiction.  The Court finds, however, that federal jurisdiction is proper in this matter because the Complaint asserts federal claims against all defendants and because the state-law claims are sufficiently related to the federal claims as to make the Court's assumption of supplemental jurisdiction appropriate.

**a. The Complaint Fails to Adequately Plead the Elements of Diversity Jurisdiction**

Under 28 U.S.C. § 1332(a), a party may invoke federal jurisdiction in a civil action where the amount in controversy exceeds $75,000 and there is complete diversity of citizenship between the parties.  "The party seeking to invoke the district court's diversity jurisdiction always bears the burden of both pleading and proving diversity jurisdiction." NewGen, LLC v. Safe Cig, LLC, 840 F.3d 606, 613-14 (9th Cir. 2016) (citing

20

*FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990)); *cf.*
*NewGen, LLC*, 840 F.3d at 614 ("However, at the pleading stage,
allegations of jurisdictional fact need not be proven unless
challenged." (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S.
332, 342 n.3 (2006))). Here, the Complaint fails in several
ways to adequately plead the elements of diversity jurisdiction.

First, "the diversity jurisdiction statute, 28 U.S.C.
§ 1332, speaks of citizenship, not of residency." *Kanter v.*
*Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001); *see also*
*id.* ("[A] natural person's state citizenship is . . . determined
by her state of domicile, not her state of residence. . . . A
person residing in a state is not necessarily domiciled there,
and thus is not necessarily a citizen of that state." (citations
omitted)). But the Complaint—instead of alleging named
individuals' citizenship—identifies Plaintiff as "an individual
residing in Lahaina, Hawai`i," Compl. ¶ 9, Defendant Christopher
S. Salisbury as "a resident of Midland, Michigan," *id.* ¶ 10,
Defendant Diyanni as "an individual residing in California," *id.*
¶ 15, and Defendant Bellini as "an individual residing in
California," *id.* ¶ 20.

Second, for purposes of diversity jurisdiction, "a[
limited liability corporation] is a citizen of every state of
which its owners/members are citizens." *Johnson v. Columbia*
*Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006). But

the Complaint, which names as defendants three limited liability corporations ("LLCs"), fails to allege the citizenship of those LLCs' members.  See Compl. ¶¶ 11 (Defendant C. Salisbury, LLC), 12 (Accelerated Estate Planning, LLC[2/]), 13 (Defendant Claraphi Advisory Network, LLC).

Third, under 28 U.S.C. § 1332(c)(1), a corporation is deemed a citizen of both its state of incorporation and its principal place of business.  But the Complaint, while it alleges that Defendant NAM's principal place of business is located in the state of Washington, fails to Defendant NAM's state of incorporation.  See Compl. ¶ 14.

Fourth, the Complaint fails to allege what type of entity Defendant ACA is, and makes no allegation as to its citizenship.  See Compl. ¶ 18 (noting only ACA's "preferred mailing address").

It is clear to the Court that the Complaint's assertion of diversity jurisdiction is insufficiently supported by the allegations.

### b. The Court Has Federal Question Jurisdiction, and Supplemental Jurisdiction Over the State-Law Claims

Federal district courts "have original jurisdiction

---

[2/] On March 25, 2019, Plaintiff voluntarily dismissed Accelerated Estate Planning, LLC from this action without prejudice.  ECF No. 101.

[over] all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Federal question jurisdiction exists when a complaint facially presents a federal question. See Holman v. Laulo-Rowe Agency, 994 F.2d 666, 668 (9th Cir. 1993).

Under 28 U.S.C. § 1367, where a federal district court has original jurisdiction, it also has "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." "Nonfederal claims are part of the same case as federal claims when they derive from a common nucleus of operative fact and are such that a plaintiff would ordinarily be expected to try them in one judicial proceeding." Tr. of Constr. Indus. & Laborers Health & Welfare Trust v. Desert Valley Landscape & Maint., Inc., 333 F.3d 923, 925 (9th Cir. 2003) (internal quotation marks and citation omitted). A court may decline to exercise supplemental jurisdiction, even where it exists, if: "(1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons

for declining jurisdiction." 28 U.S.C. § 1367(c).

The Complaint asserts two claims of violations of RICO, 18 U.S.C. §§ 1961–1968. <u>See</u> Compl. ¶¶ 127–59 (asserting violations of 18 U.S.C. § 1962(c) and (d)); <u>see also</u> 28 U.S.C. § 1964(c) (creating a private right of action, in federal district court, for "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter"). The Court therefore has federal question jurisdiction over those claims, which are asserted against all defendants. <u>See</u> Compl. at 54, 67.

Moreover, the Court finds that the state-law claims and the federal civil RICO claims "derive from a common nucleus of operative fact[.]" <u>Tr. of Constr. Indus. & Laborers Health & Welfare Trust</u>, 333 F.3d at 925. Plaintiff's allegations that she was taken advantage of through annuity churning and a premium financing arrangement for a life insurance policy underlie all her claims, both state and federal. Because this is so, and because at this stage none of the issues iterated in 28 U.S.C. § 1367(c) is present, the Court finds the exercise of supplemental jurisdiction over Plaintiff's state-law claims proper.

## II. UDAP (First, Second, and Third Causes of Action)

Plaintiff's First and Second Causes of Action assert that all defendants have engaged in deceptive and unfair acts

and practices within the meaning of Hawai`i's unfair and deceptive acts or practices ("UDAP") statute ("the UDAP statute"), HRS §§ 480-1, et seq. Compl. ¶¶ 65, 80. Plaintiff's First Cause of Action outlines multiple actions alleged to have been UDAPs. See id. ¶¶ 67-75. Her Second Cause of Action, entitled in part "Suitability," alleges simply that "[e]ach of the Defendants" violated the HRS § 480-2 "by selling [Plaintiff] the VOYA policy and setting up the financing arrangement, both of which were unsuitable for her and The Brody Family Trust's insurance and financial needs." Id. ¶ 80. Plaintiff's Third Cause of Action, asserted against all defendants and entitled "Elder Abuse," alleges that Plaintiff turned sixty-two years old sometime in 2012 and was therefore an "elder" under HRS § 480-13.5 when a number of the alleged events took place.[3/] Id. ¶ 84-90.

HRS § 480-2(a) provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful." "HRS § 480-2 . . . was constructed in broad language in order to constitute a flexible tool to stop and prevent fraudulent, unfair or

---

[3/] In other words, Plaintiff's Third Cause of Action is not in fact a distinct claim, but rather assert's Plaintiff's entitlement to an additional penalty of up to $10,000 for each proven violation of Hawai`i's UDAP statute should she prevail. See HRS § 480-13.5(a).

deceptive business practices for the protection of both honest consumers and honest business[persons]." <u>Haw. Comm. Fed. Credit U. v. Keka</u>, 94 Haw. 213, 228, 11 P.3d 1, 16 (2000) (latter alteration in original) (citation and internal quotation marks omitted).

In order to state a UDAP claim, a consumer[4/] must allege: (1) a violation of HRS § 480-2; (2) injury to plaintiff's business or property resulting from such violation; and (3) proof of the amount of damages. See <u>Lizza v. Deutsche Bank Nat. Trust Co.</u>, 1 F. Supp. 3d 1106, 1121 (D. Haw. 2014) (citing <u>Haw. Med. Ass'n v. Haw. Med. Serv. Ass'n, Inc.</u>, 113 Haw. 77, 113-14, 148 P.3d 1179, 1215-16 (2006); <u>In re Kekauoha-Alisa</u>, 674 F.3d 1083, 1092 (9th Cir. 2012); HRS § 480-13(b)(1)). "Any injury must be fairly traceable to the defendant's actions." <u>In re Kekauoha-Alisa</u>, 674 F.3d at 1092 (citing <u>Flores v. Rawlings Co., LLC</u>, 117 Haw. 153, 167 n.23, 177 P.3d 341, 355 n.23 (2008)).

A practice is unfair when it "offends established public policy and when the practice is immoral, unethical, oppressive, unscrupulous[,] or substantially injurious to

---

[4/] HRS § 480-1 defines "consumer" as "a natural person who, primarily for primarily for personal, family, or household purposes, purchases, attempts to purchase, or is solicited to purchase goods or services or who commits money, property, or services in a personal investment." Defendant Diyanni has not disputed that Plaintiff is a "consumer."

consumers." <u>Balthazar v. Verizon Haw., Inc.</u>, 109 Haw. 69, 77,
123 P.3d 194, 202 (2005) (citation and internal quotation marks
omitted).

        "A deceptive act or practice is '(1) a representation,
omission, or practice that (2) is likely to mislead consumers
acting reasonably under the circumstances where (3) the
representation, omission, or practice is material.' The
representation, omission, or practice is material if it is
likely to affect a consumer's choice." <u>Yokoyama v. Midland Nat'l</u>
<u>Life Ins. Co.</u>, 594 F.3d 1087, 1092 (9th Cir.2010) (quoting
<u>Courbat v. Dahana Ranch, Inc.</u>, 111 Haw. 254, 262, 141 P.3d 427,
435 (2006)).  "Whether information is likely to affect a
consumer's choice is an objective inquiry, 'turning on whether
the act or omission is likely to mislead consumers as to
information important to consumers in making a decision
regarding the product or service.'" <u>Yokoyama</u>, 594 F.3d at 1092
(quoting <u>Courbat</u>, 111 Haw. at 262, 141 P.3d at 435) (some
internal quotation marks omitted).  "[A] failure to disclose
relevant information may be actionable under [HRS § 480-2] if it
is likely to mislead or deceive a reasonable customer." <u>Soule v.</u>
<u>Hilton Worldwide, Inc.</u>, 1 F. Supp. 3d 1084, 1093 (citing
<u>Courbat</u>, 111 Haw. at 263, 141 P.3d at 436).

        Claims asserting deceptive conduct under HRS § 480-2
are subject to Rule 9(b)'s heightened pleading standard.  <u>See</u>

Smallwood v. NCsoft Corp., 730 F. Supp. 2d 1213, 1232–33 (D. Haw. 2010). "To the extent Plaintiff is making claims under the 'unfair' prong of an unfair and deceptive practices claim that are not asserting fraudulent conduct, Rule 9(b)'s heightened pleading standard does not apply." Soule, 1 F. Supp. 3d at 1090 (D. Haw. 2014); see also Bald v. Wells Fargo Bank, N.A., 688 F. App'x 472, 476–77 (9th Cir. 2017) (differentiating between the pleading standards required for putatively "unfair" practices and those arising under HRS § 480-2's "deceptive" prong).

HRS § 480-13.5 defines an "elder" as "a consumer who is sixty-two years of age or older," and provides that, "[i]f a person commits a violation under [HRS §] 480-2 which is directed toward, targets, or injures an elder, a court, in addition to any other civil penalty, may impose a civil penalty not to exceed $10,000 for each violation."

### a. Plaintiff's First Cause of Action

Defendant Diyanni moves to dismiss Plaintiff's UDAP claims against him, contending that "Plaintiff fails to allege any specific wrongdoing on behalf of [Defendant] Diyanni that falls within the scope of the Unfair Competition Statutes." Diyanni Mot. at 2.[5/]

_____

[5/] Defendant Diyanni further asserts that he should be dismissed from the First Cause of Action "due to the trust agreement." Diynanni Mot. at 2. He also argues that he should be dismissed (Continued . . .)

## i. Allegations Concerning Defendant Diyanni

The Complaint makes the following allegations regarding Defendant Diyanni:

1. Defendant Diyanni (together with his law office) is the current Trustee of the ILIT. Compl. ¶ 15.  He was hired by Defendant ACA to draft the ILIT and was paid a $12,000 broker's fee as part of an arrangement with Defendants ACA and Lake Forest.  Id. ¶¶ 15, 52.  The broker's fee charged by Defendant Diyanni was excessive, id. ¶¶ 4, 54, 72e, and was obtained by the employment of, inter alia, "fraud," id. ¶ 72e.

2. Defendant Diyanni assigned the VOYA Policy to

---

(. . .)
from the Fourth, Fifth, and Sixth Causes of action solely "due to the trust agreement and legal waiver signed by [Plaintiff.]" Id.  The Court construes Defendant Diyanni's Motion liberally. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam).  But in addition to noting that Defendant Diyanni is not named in the Fourth Cause of Action, see Compl. at 36, the Court observes that it is not in possession of either the trust agreement or the legal waiver (consideration of either of which at this motion-to-dismiss stage would necessitate the conversion of the Diyanni Motion into a motion for summary judgment unless the documents were incorporated by reference into the Complaint or subject to judicial notice under Federal Rule of Evidence 201, Khoja v. Orexigen Therapeutics, Inc., 899 F.3d 988, 998 (9th Cir. 2018)), and therefore can do no more than note this argument as an insufficient basis upon which to dismiss any of the Causes of Action asserted against Defendant Diyanni.

Defendant Lake Forest as collateral for the loan that was to be taken out to fund the premiums for the VOYA Policy. _Id._ ¶ 55; _see id._ ¶¶ 46–55.

3. Defendant Diyanni, together with Defendant Salisbury, did not give Plaintiff sufficient warning or explanation concerning the risks of the financing arrangement. _Id._ ¶ 4.

4. Together with Defendant Salisbury, Defendant Diyanni fraudulently procured the assignment of one of Plaintiff's annuities as collateral for this loan. _Id._ ¶ 57. This occurred via a fraudulent notarization in Orange County, California, _id._, in or around April 2016, _see id._ ¶¶ 45, 54.

5. As Trustee of the ILIT, Defendant Diyanni failed "to perform his fiduciary duties" to determine the appropriateness of replacing the Columbus Life policy with the VOYA Policy or the suitability of the VOYA Policy. _Id._ ¶ 58. "Further, Diyanni did not properly assess the negative consequences of the premium financing arrangement, the selection and assignment of collateral, and/or the funding of premiums

outside of the premium financing arrangement. In short, the VOYA policy should have never been purchased." <u>Id.</u>

6. "During the sale of the policy and after the sale, as Trustee of the ILIT, [Defendant] Diyanni concealed the fact that he had failed to perform his fiduciary duties to make an appropriate determination of the appropriateness of replacing the Columbus Life policy, or of the suitability of the life insurance policy, or the premium financing arrangement, or the selection and assignment of collateral, and/or the funding of premiums outside of the premium financing arrangement. Diyanni also concealed the fact that he was acting with a conflict of interest and was engaging in self-dealing with respect to his activities related to [Plaintiff]." <u>Id.</u> ¶ 70.

7. Defendant Diyanni drafted "an illusory trust designed for his own financial benefit and that of the other Defendants[.]" <u>Id.</u> ¶ 72d. In doing so, he employed, <u>inter alia</u>, "fraud." <u>Id.</u> ¶ 72.

8. Together with Defendant Salisbury, Defendant

Diyanni required Plaintiff to sign an agreement
purportedly releasing Diyanni for liability for
the legal services he rendered. Id. ¶ 72f. In
doing so, he employed, inter alia, "fraud." Id.
¶ 72.

ii. **The First Cause of Action States a UDAP Claim Against Defendant Diyanni**

Of those actions of Defendant Diyanni that are alleged
to have been deceptive or fraudulent, only one is pled with
sufficient particularity under Rule 9(b). The allegation that
Defendant Diyanni, in or around April 2016 and in Orange County,
California, fraudulently procured the assignment of one of
Plaintiff's annuities through the falsification of a notarized
document states the "who, what, when, where, and how" of the
alleged misrepresentation. Vess, 317 F.3d at 1106. The
Complaint also contains allegations concerning the injury to
Plaintiff's property that resulted from this alleged violation—
namely, that Plaintiff had to wire $37,000 to Defendant Lake
Forest or else surrender the assigned annuity. Id. ¶ 5. In
this respect, Plaintiff has stated a UDAP claim against
Defendant Diyanni for deceptive acts or practices under HRS §
480-2. (The other three allegations of deceit—concealment of
Defendant Diyanni's alleged breaches of fiduciary duty, Compl. ¶
70, concealment of a conflict of interest, id., and the use of

"fraud" to compel Plaintiff to sign an indemnification agreement, id. at ¶¶ 72, 72f—are not pled with sufficient particularity and thus fail to state a claim.)

Moreover, the Court finds that Plaintiff has stated a claim for unfair acts or practices under HRS § 480-2. Among other allegations, the Complaint's charge that Defendant Diyanni drafted the ILIT to be illusory, and to benefit him and the other defendants, alleges conduct that is immoral, unethical, oppressive, unscrupulous[,] or substantially injurious to consumers." Balthazar, 109 Haw. at 77, 123 P.3d at 202.

Defendant Diyanni's motion to dismiss Plaintiff's First Cause of Action is therefore denied.

### b. Plaintiff's Second Cause of Action

Plaintiff's Second Cause of Action, entitled "Unsuitability," alleges that all defendants "committed acts of unfair and deceptive practices . . . by selling [Plaintiff] the VOYA [P]olicy and setting up the financing arrangement, both of which were unsuitable for her and The Brody Family Trust's insurance and finance needs." Compl. ¶ 80.

Plaintiff's Second Cause of Action fails to state a claim against any defendant and is dismissed as to Defendant Diyanni. Plaintiff has pointed to no authority for the proposition that a claim for the unsuitability of a life insurance policy or a financing arrangement, absent adequately

pled allegations of commensurate deception, states a claim under UDAP.[6/]  And here, as in much of the Complaint, Plaintiff fails to plead deception with the required particularity.  Insofar as Plaintiff is alleging that the defendants' actions were only unfair, this claim contains insufficient factual detail for the Court to find it plausible that the defendants' actions "offend[ed] established public policy" or were "immoral, unethical, oppressive, unscrupulous[,] or substantially injurious to consumers," <u>Balthazar</u>, 109 Haw. at 77, 123 P.3d at 202.

### c. Plaintiff's Third Cause of Action

Plaintiff's Third Cause of Action for "Elder Abuse" is not a stand-alone claim, but rather a claim for heightened civil penalties under the UDAP statute.  <u>See</u> HRS § 480-13.5.  Insofar as Plaintiff is attempting to plead her Third Cause of Action as a claim separate and apart from her substantive UDAP claims, it is dismissed.

### III. Respondeat Superior (Seventh Cause of Action)

Plaintiff's Seventh Cause of Action is entitled "Vicarious Liability/Respondeat Superior" and is asserted

---

[6/] There is statutory authority for the imposition of a duty on insurers to make suitabiltity determinations in regard to some transactions involving annuities, but Plaintiff had not pled facts tending to show that statute's applicability in the context of the VOYA Policy and its premium financing arrangement.  <u>See</u> HRS § 431:10D-623.

against all defendants remaining in this action.[7/]  But
respondeat superior is a theory of liability rather than an
independent cause of action.  <u>Lopeti v. Alliance Bancorp</u>, No. CV
11-00200 ACK-RLP, 2011 WL 13233545, at *15 (D. Haw. Nov. 4,
2011); <u>see also</u> <u>McCormack v. City and Cty. of Honolulu</u>, No. CIV.
10-00293 BMK, 2014 WL 692867, at *2–3 (D. Haw. Feb. 20, 2014),
aff'd, 683 F. App'x 649 (9th Cir. 2017) (noting that "[c]ourts
dismiss stand-alone claims for respondeat superior." (citations
omitted)).

Moreover, while "[a] principal may be liable for the
wrongful acts of its agent that occur while [the agent is]
acting within the scope of the agency," <u>Lopeti</u>, 2011 WL
13233545, at *15, "'[v]icarious liability under the respondeat
superior doctrine ordinarily requires some kind of employment
relationship or other consensual arrangement under which one
person <u>agrees to act under another's control</u>,'" <u>State v.</u>
<u>Hoshijo ex rel. White</u>, 102 Haw. 307, 319, 76 P.3d 550, 562
(2003) (quoting Dan B. Dobbs, The Law of Torts, § 335, at 910
(2000)) (emphasis in <u>Hoshijo</u>).

Defendant Diyanni moves to dismiss Plaintiff's Seventh
Cause of Action against him, asserting that "there is no

---

[7/] The Seventh Cause of Action does not name Accelerated Estate
Planning, LLC, which has been dismissed from this action without
prejudice.  ECF No. 101.

separate cause of action or cognizable legal claim for vicarious liability/respondeat superior." Mot. at 2. Because this is so, and because the Complaint does not assert that Defendant Diyanni is vicariously liable for the actions of any other defendant, Plaintiff's Seventh Cause of Action is dismissed as against Defendant Diyanni.

## IV. Federal Civil RICO (Tenth and Eleventh Causes of Action)

Plaintiff's Tenth and Eleventh Causes of Action, asserted against all defendants, arise out of the Racketeer Influenced and Corrupt Organizations Act ("federal civil RICO"). In her Tenth Cause of Action, Plaintiff asserts that "Defendants have intentionally participated in at least one of two schemes to defraud [Plaintiff] of her money" in violation of 18 U.S.C. § 1962(c). Compl. ¶ 128; see also id. ¶ 127, 129–151. Plaintiff's Eleventh Cause of Action alleges that all defendants conspired, in one of two enterprises or schemes,[8] to violate 18

---

[8] Plaintiff identifies two enterprises and alleges that each "market[ed] and s[old] unsuitable financial products to [Plaintiff] while concealing the true nature of the products[.]" Compl. ¶ 130. Plaintiff alleges that the "VOYA Enterprise" operated "[w]ith respect to the VOYA [P]olicy and the premium financing arrangement associated with" the Policy, and was made up of the Salisbury Defendants, Accelerated Estate Planning, LLC (which has now been dismissed), and Defendants Claraphi, NAM, Diyanni, Lake Forest, Wintrust, ACA, SLD, and Bellini. Id. ¶ 130a. Plaintiff further alleges that the "Annuities Enterprise," which operated "[w]ith respect to the annuity churning scheme[,]" comprised the Salisbury Defendants, Accelerated Estate Planning, LLC, and Defendants Claraphi and NAM. Id. ¶ 130b.

U.S.C. § 1962(c) and "defraud" Plaintiff of her money, in violation of 18 U.S.C. § 1962(d).

Under 18 U.S.C. § 1962(c), it is illegal "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." A private right of action for federal civil RICO violations is provided in 18 U.S.C. § 1964(c). And under 18 U.S.C. § 1962(d), it is illegal "for any person to conspire to violate" 18 U.S.C. § 1962(a), (b), or (c).

"To prevail on a civil RICO claim, a plaintiff must prove that [each] defendant engaged in (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity and, additionally, must establish that (5) the defendant caused injury to plaintiff's business or property." Chaset v. Fleer/Skybox Int'l, LP, 300 F.3d 1083, 1086 (9th Cir. 2002) (citing 18 U.S.C. §§ 1962(c), 1964(c)). Regarding the fifth element, "[a] plaintiff must show that the defendant's RICO violation was not only a 'but for' cause of his injury, but that it was a proximate cause as well." Oki Semiconductor Co. v. Wells Fargo Bank, Nat. Ass'n, 298 F.3d 768, 773 (9th Cir. 2002) (citing Holmes v. Sec. Inv'r Prot. Corp., 503 U.S. 258, 268-69

(1992)). "Some 'direct relationship' between the injury asserted and the injurious conduct is necessary." <u>Oki Semiconductor Co.</u>, 298 F.3d at 773 (quoting <u>Holmes</u>, 503 U.S. at 269). "To establish proximate cause, plaintiffs must show that their injury flows directly from the defendants' commission of the predicate acts." <u>Pedrina v. Chun</u>, 906 F. Supp. 1377, 1415 (D. Haw. 1995) (citation omitted).

"'[T]o conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs,' § 1962(c), one must participate in the operation or management of the enterprise itself." <u>Reves v. Ernst & Young</u>, 507 U.S. 170, 185 (1993). "[O]ne must have some part in directing [the enterprise's] affairs." <u>Id.</u> at 179. For purposes of federal civil RICO, an "enterprise" includes "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). To show an associated-in-fact enterprise, a plaintiff must plead three elements: (1) common purpose; (2) an "ongoing organization," either formal or informal; and (3) that "the various associates function as a continuing unit." <u>Odom v. Microsoft Corp.</u>, 486 F.3d 541, 552 (9th Cir. 2007) (citing <u>United States v. Turkette</u>, 452 U.S. 576, 583 (1981)).

A "pattern ... requires at least two acts of

racketeering activity," 18 U.S.C. § 1961(5), and "also requires proof that the racketeering predicates are related and 'that they amount to or pose a threat of continued criminal activity.'" Turner v. Cook, 362 F.3d 1219, 1229 (9th Cir. 2004) (quoting H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 237–38 (1989)). And racketeering activity "is any act indictable under various provisions of 18 U.S.C. § 1961 and includes the predicate acts alleged in this case of mail fraud and wire fraud under 18 U.S.C. §§ 1341 and 1343." Forsyth v. Humana, Inc., 114 F.3d 1467, 1481 (9th Cir. 1997), overruled on other grounds by Lacey v. Maricopa Cty., 693 F.3d 896 (9th Cir. 2012) (en banc).

With respect to mail and wire fraud, Plaintiff must allege the following elements: "(1) formation of a scheme or artifice to defraud; (2) use of the United States mails or wires, or causing such a use, in furtherance of the scheme; and (3) specific intent to deceive or defraud." Sanford v. MemberWorks, Inc., 625 F.3d 550, 557 (9th Cir. 2010) (citation omitted). Under Rule 9(b), "[w]hile the elements of knowledge and intent may be averred generally, the factual circumstances of the fraud itself require particularized allegations." Queen's Med. Ctr. v. Kaiser Found. Health Plan, Inc., 948 F. Supp. 2d 1131, 1158 (D. Haw. 2013) (citing Sanford, 625 F.3d at 558); but see Puri v. Khalsa, 674 F. App'x 679, 687

(9th Cir. 2017) (noting that where facts are peculiarly within opposing parties' knowledge, pleading fraud on information and belief is permissible when such pleading is accompanied by a statement of the facts upon which the belief is founded).

To state a claim for conspiracy to violate RICO under § 1962(d), a plaintiff must allege "either an agreement that is a substantive violation of RICO or that the defendants agreed to commit, or participated in, a violation of two predicate offenses." Howard v. Am. Online, Inc., 208 F.3d 741, 751 (9th Cir. 2000). "The illegal agreement need not be express as long as its existence can be inferred from the words, actions, or interdependence of activities and persons involved." Oki Semiconductor Co. v. Wells Fargo Bank, 298 F.3d 768, 775 (9th Cir. 2002). Under § 1962(d), while a conspiracy defendant need not have personally committed a predicate act, or even an overt act in furtherance of the RICO conspiracy, the defendant must be "aware of the essential nature and scope of the enterprise and intended to participate in it." Baumer v. Pachl, 8 F.3d 1341, 1346 (9th Cir. 1993). "[T]he failure to adequately plead a substantive violation of RICO precludes a claim for conspiracy." Howard v. Am. Online Inc., 203 F.3d 741, 751 (9th Cir. 2000).

Defendant Diyanni asserts that Plaintiff's RICO claims against him should fail because "Plaintiff yet again lumps all defendants together, and therefore fails to plead any wrongdoing

on behalf of Michael Diyanni." Mot. at 2–3.  The Court concurs that Plaintiff's federal civil RICO claims against Defendant Diyanni fail, as Plaintiff's Tenth Cause of Action fails to adequately plead a substantive violation of RICO.

First, while the Complaint's seventy-five pages do contain some allegations that could be construed as addressing Defendant Diyanni's role in the alleged "VOYA Enterprise,"[9] the Complaint does not allege with sufficient specificity that Defendant Diyanni "participate[d] in the operation or management of the enterprise itself"—that is, had any "part in directing [the enterprise's] affairs."  Reves, 507 U.S. at 179, 185.

Second, the Complaint's allegations of the predicate acts of wire and mail fraud are insufficient.  Plaintiff alleges that "[m]any of the precise dates for the VOYA Enterprise['s] . . . fraudulent uses of the U.S. Mail and wire facilities have been deliberately hidden and cannot be alleged without access to Defendants' books and records." Compl. ¶ 148.  But even under a relaxed standard, Plaintiff's allegations of the predicate acts of mail and wire fraud are wanting.  Plaintiff not only fails to allege "precise dates," she fails to allege any dates at all,[10]

---

[9] The Court expects that any amended complaint will make these allegations in a more organized fashion.

[10] Some of the allegations concerning the VOYA Enterprise's predicate acts may, with some searching, be linked to dates iterated earlier in the Complaint.  See, e.g., Compl. ¶¶ 148.a.i (Continued . . . .)

and indeed to state which defendants are alleged to have committed which predicate acts. As iterated, the Complaint's RICO allegations leave both the Court and the defendants in the dark as to who is alleged to have done what and when.

This is not a corporate fraud case, which the Ninth Circuit has recognized as an appropriate circumstance in which to relax Rule 9(b)'s particularity requirement with respect to the allegedly fraudulent conduct of each individual. See, e.g., Moore, 885 F.2d at 540; Wool, 818 F.2d at 1440. Nor does this appear to be a case in which all defendants "are alleged to have engaged in precisely the same conduct." United States v. United Healthcare Ins. Co., 848 F.3d 1161, 1184 (9th Cir. 2016). Even those allegations of predicate acts whose actors one would expect Plaintiff to be able to allege with relative ease are alleged generally, presumably against all defendants named in the enterprise. See, e.g., Compl. ¶ 148.a.i, 148.a.ii.

---

(. . .)
(alleging "[p]rocessing documents to establish the ILIT" as a predicate act), 51–53 (indicating that the ILIT was established in or around March–April 2016). Others, although almost certainly not exclusively within defendants' knowledge, do not appear in the Complaint's seventy-five pages to have any dates attached to them. See, e.g., id. ¶ 148.a.iv (alleging "processing premium payments for the policy" as a predicate act). The Court expects that any amended complaint will lay out its allegations in a far more orderly fashion so that neither the Court nor the defendants need undertake a searching review of the Complaint's entirety in order to make sense of individual claims or allegations.

Rule 9(b) serves three purposes: (1) to
provide defendants with adequate notice to
allow them to defend the charge and deter
plaintiffs from the filing of complaints "as
a pretext for the discovery of unknown
wrongs"; (2) to protect those whose
reputation would be harmed as a result of
being subject to fraud charges; and (3) to
"prohibit [ ] plaintiff[s] from unilaterally
imposing upon the court, the parties and
society enormous social and economic costs
absent some factual basis."

Kearns v. Ford Motor Co., 567 F.3d 1120, 1125 (9th Cir. 2009)

(quoting In re Stac Elecs. Sec. Litig., 89 F.3d 1399, 1405 (9th

Cir.1996)) (alterations in Kearns).  To relax Rule 9(b)'s

strictures in some circumstances is not to eliminate them

entirely, as the Rule's underlying purposes remain.  Given her

failure to allege the predicate acts of mail and wire fraud with

sufficient specificity—on information and belief or otherwise—

Plaintiff's Tenth Cause of Action cannot stand.

Plaintiff's Tenth Cause of Action against Defendant

Diyanni is therefore dismissed, and her Eleventh Cause of Action

must fall with the Tenth.  Howard, 203  F.3d at 751.[11/]

## V.    Hawai`i Civil RICO (Twelfth Cause of Action)

Plaintiff's Twelfth Cause of Action asserts that all

---

[11/] Local Rule 33.1 currently provides that any party defending
against a RICO claim may move for an order requiring the
claimant to file and serve a RICO discovery statement.  The
Court notes, however, that amendments to the Local Rules are
apparently currently being considered, and that the requirements
of what is now Local Rule 33.1 may in the future be included in
magistrate judges' discovery or Rule 16 orders.

defendants have "engaged in 'racketeering activity' by
committing or aiding and abetting in the commission of at least
one act of racketeering activity, i.e., violations of the
Hawai`i Unfair and Deceptive Acts Trade Practices Act . . . .
Therefore, the Defendants have violated [HRS] § 842-2(3)."
Compl. ¶ 163.

HRS § 842-2(3) ("Hawai`i RICO") makes it unlawful
"[f]or any person employed by or associated with any enterprise
to conduct or participate in the conduct of the affairs of the
enterprise through racketeering activity or collection of an
unlawful debt."  HRS § 842-8(c) creates a private right of
action for "[a]ny person injured in the person's business or
property by reason of" a RICO violation.

"[T]he most useful source in interpreting HRS § 842-
2(3) is federal law. . . . [F]ederal law is an important aid to
construction because HRS § 842-2 was derived from the federal
Racketeer Influenced and Corrupt Organizations (RICO) statute."
State v. Ontai, 84 Haw. 56, 61, 929 P.2d 69, 74 (1996).  "The
only material differences between the two statutes are the
[federal statute's] references to 'interstate or foreign
commerce' and 'pattern of racketeering activity.'"  Id. & n.8
("The reference to 'interstate or foreign commerce' is due to
the requirements of the Commerce Clause of the United States
Constitution. See U.S. Const. art. I, § 8. The reference to a

'pattern of racketeering activity' is due to the fact that the federal statute requires at least two acts of racketeering activity. 18 U.S.C. § 1961(5) (1994). The Hawai'i statute only requires one act. HRS § 842-1[.]").

Therefore, and in light of the differences between 18 U.S.C. § 1962(c) and HRS § 842-2(3), a plaintiff bringing a Hawai`i civil RICO claim "must prove that the defendant engaged in (1) conduct (2) of an enterprise (3) through a[n act] (4) of racketeering activity and, additionally, must establish that (5) the defendant caused injury to plaintiff's business or property." Chaset, 300 F.3d at 1086 (9th Cir. 2002); see, e.g., DeRosa v. Ass'n of Apartment Owners of the Golf Villas, 185 F. Supp. 3d 1247, 1262 (D. Haw. 2016), as amended (Aug. 31, 2016) (importing the elements of federal civil RICO into a claim under HRS § 842-2(3)); see also HRS § 842-8(c).

For purposes of HRS § 842-2(3),

> "[r]acketeering activity" means any act or
> threat involving but not limited to murder,
> kidnapping, gambling, criminal property
> damage, robbery, bribery, extortion, labor
> trafficking, theft, or prostitution, or any
> dealing in narcotic or other dangerous drugs
> that is chargeable as a crime under state
> law and punishable by imprisonment for more
> than one year.

HRS § 842-1.

Defendant Diyanni moves to dismiss the Twelfth Cause of Action against him, asserting that it should be dismissed

45

because it "is essentially a derivative cause of action that turns on the viability, or lack thereof, of the First and Second Causes of Action[.]" Mot. at 3.[12/]

The Court finds that dismissal of Plaintiff's Twelfth Cause of Action against the ACA Defendants is proper.  First, as with her Tenth Cause of Action, Plaintiff fails to allege how Defendant Diyanni participated in the "operation or management" of the alleged enterprise.  Reves, 507 U.S. at 185; see State v. Bates, 84 Haw. 211, 223, 933 P.2d 48, 60 (1997) (citing Reves with approval).

Second, and perhaps more importantly, Plaintiff has not alleged either the commission or the aiding and abetting of any "racketeering activity" by Defendant Diyanni.  Plaintiff cites to no authority, and the Court can locate none, to support the proposition that a violation of Hawai`i's UDAP statute, by itself, constitutes "racketeering activity."  The dearth of any such authority is to be expected; as the Hawai`i Supreme Court has noted, "the legislative history underlying HRS § 842-2 provides that '[t]he purpose of [the] bill [was] to curtail organized crime activity in Hawaii.'" Bates, 84 Haw. at 222, 933 P.2d at 59 (citing Hse. Stand. Comm. Rep. No. 668-72, in 1972

---

[12/] Defendant Diyanni also cites "the trust agreement and waiver" as reasons the Twelfth Cause of Action against him should be dismissed.  For the reasons discussed previously, this argument lack merit.

46

House Journal, at 967; Sen. Stand. Comm. Rep. No. 492–72, in

1972 Senate Journal, at 956; Hse. Stand Comm. Rep. No. 728–72,

in 1972 House Journal, at 1006) (emphasis added); <u>see also</u> 18

U.S.C. § 1961(1) (listing as predicate acts, for the purposes of

federal RICO, "chargeable," "indictable," and "punishable"

offenses).  To the extent Plaintiff intends the predicate acts

asserted in connection with her federal RICO claims to serve as

the predicate acts here, the Court finds that those allegations

are insufficient for the reasons detailed above.  <u>See</u> Sec. IV,

<u>supra</u>.

The Complaint identifies no crime, either listed in

HRS § 842-1 or otherwise, that Defendant Diyanni is supposed to

have committed or aided and abetted.[13/]  In other words, even if

Plaintiff's UDAP Causes of Action were adequately pled against

Defendant Diyanni, her Twelfth Cause of Action against him would

still fail, devoid as it is of allegations of any predicate acts

of "racketeering activity."

**VI.  Plaintiff is Granted Leave to Amend**

Plaintiff requests leave to amend her Complaint to

correct any deficiencies.  Opp. at 19-20.  Because Plaintiff may

---

[13/] By contrast, Plaintiff alleges that the Salisbury Defendants,
Defendant NAM, and Defendant Claraphi engaged in "racketeering
activity" by either committing or aiding and abetting in the
commission of not just UDAP violations, but also theft.  Compl.
¶ 166–67.

be able to cure the Complaint's defects via amendment, leave to amend is granted, and the Causes of Action dismissed herein are dismissed without prejudice.  See <u>OSU Student All.</u>, 699 F.3d at 1079; <u>Vess</u>, 317 F.3d at 1107.

<b><u>CONCLUSION</u></b>

For the foregoing reasons, the Court GRANTS IN PART AND DENIES IN PART Defendant Michael Diyanni's Motion to Dismiss, ECF No. 52, as follows:

1. As to the First Cause of Action (UDAP), the Motion is DENIED.

2. As to the Second Cause of Action (UDAP—Unsuitability), the Motion is GRANTED.

3. As to the Third Cause of Action (UDAP—Elder Abuse), the Motion is GRANTED.

4. As to the Fifth Cause of Action (Fraudulent Misrepresentation), the Motion is DENIED.

5. As to the Sixth Cause of Action (Breach of Fiduciary Duty), the Motion is DENIED.

6. As to the Seventh Cause of Action (Vicarious Liability/Respondeat Superior), the Motion is GRANTED.

7. As to the Tenth Cause of Action (RICO Violation), the Motion is GRANTED.

8. As to the Eleventh Cause of Action (Conspiracy to Violate RICO), the Motion is GRANTED.

9. As to the Twelfth Cause of Action (Hawai`i RICO), the Motion is GRANTED.

Those claims dismissed are dismissed without prejudice. Any amended complaint must be filed within thirty days of the issuance of this Order.

IT IS SO ORDERED.

DATED: Honolulu, Hawai`i, May 14, 2019.

Alan C. Kay
Sr. United States District Judge

Ryan v. Salisbury et al., Civ. No. 18-406 ACK-RT, Order Granting in Part and Denying in Part Defendant Michael Diyanni's Motion to Dismiss.