IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| KATHY RYAN, INDIVIDUALLY, AND IN HER CAPACITY AS TRUSTEE OF THE BRODY FAMILY TRUST;<br><br>Plaintiff,<br><br>vs.<br><br>CHRISTOPHER S. SALISBURY; C. SALISBURY, LLC; CLARAPHI ADVISORY NETWORK, LLC; NATIONAL ASSET MANAGEMENT, INC.; MICHAEL DIYANNI; LAKE FOREST BANK & TRUST COMPANY, N.A.; WINTRUST LIFE FINANCE; AURORA CAPITAL ALLIANCE; SECURITY LIFE OF DENVER INSURANCE COMPANY; and ALEJANDRO ALBERTO BELLINI,<br><br>Defendants. | CIV. NO. 18-00406 ACK-RT |

## ORDER GRANTING IN PART AND STAYING IN PART DEFENDANT CLARAPHI'S MOTION TO DISMISS AND COMPEL ARBITRATION

For the reasons set forth below, the Court GRANTS IN PART and STAYS IN PART Defendant Claraphi Advisory Network, LLC's Motion to Dismiss and Compel Arbitration, ECF No. 82. The parties are ORDERED to proceed to arbitration in accordance with the terms of the Agreement. The portion of the Motion that seeks dismissal of the claims against Defendant Claraphi is STAYED pending the arbitrator's disposition of the issue of arbitrability.

## BACKGROUND

The Court sets forth herein only those facts pertinent to the disposition of the instant Motion.

The Brody Family Trust ("the Trust") was created on February 9, 1993, with Plaintiff Kathy Ryan (then Kathy Brody) ("Plaintiff") serving as its trustee. Compl. ¶ 23. The Trust was organized under the laws of California. Id. Sometime in 2002 or thereafter, the estate planning company that first established the Trust referred Plaintiff to Defendant Christopher S. Salisbury ("Defendant Salisbury") for her investment and financial planning needs. Id. ¶ 24. Defendant Claraphi Advisory Network, LLC ("Defendant Claraphi") is a Washington limited liability company with a principal place of business in California that provides investment advisory services through independent investment advisor representatives. Declaration of Mark Roth ("Roth Decl."), ECF No. 82-3 ¶ 2–3. Defendant Salisbury is currently a resident of Michigan. Compl., ECF No. 1 ¶ 10; Defendant Christopher S. Salisbury and C. Salisbury, LLC's Answer ("Salisbury Defs.' Ans."), ECF No. 47 ¶ 12. At some point in the past, Defendant Salisbury could be served at an address in Laguna Hills, California. Compl. ¶ 11; see Salisbury Defs.' Ans. ¶ 13.

In April 2013, Defendant Salisbury entered into a relationship with Defendant Claraphi. Roth Decl. ¶¶ 4–6;

Declaration of Melinda Weaver ("Weaver Decl."), ECF No. 114-2 ¶ 2; Investment Adviser Representative Public Disclosure Report ("IAR Report"), Pl.'s Ex. 2 at 1275, 1279.[1] The parties dispute the nature of this relationship—whether Defendant Salisbury was employed by Defendant Claraphi, Opp., ECF No. 114 at 4-5; IAR Report at 1275, 1279; Compl. ¶ 13, or was instead an independent contractor, MTD at 3; Roth Decl. ¶¶ 4-6. The IAR Report indicates that Defendant Salisbury's relationship with Defendant Claraphi lasted until April 1, 2019. IAR Report at 1279. Defendant Claraphi represents that, pursuant to the Independent Advisor Agreement that existed between itself and Defendant Salisbury, Defendant Salisbury agreed to conduct investment advisory activities solely through Defendant Claraphi. Roth Decl. ¶ 5.[2]

On April 16, 2013, Defendant Salisbury sent an email to Plaintiff requesting her initials and signature on, <u>inter alia</u>, two pages of a document entitled "Claraphi Advisory Network, LLC Investment Advisory Agreement Representative as Manager Program" (henceforth "the Agreement"). Declaration of Kathy Ryan ("Pl. Decl."), ECF No. 114-1 ¶ 4; Email and Attachments from Defendant Salisbury to Plaintiff ("Email"),

---

[1] Citations to specific pages of exhibits are to the "Page ID #" affixed by this District's filing system.
[2] The Independent Investor Agreement is not now in the record before the Court.

Pl.'s Ex. 1 at 1266, 1268; see also Roth Decl. ¶ 7; Full Claraphi Advisory Network, LLC Investment Advisory Agreement Representative as Manager Program ("Full Agreement"), Def.'s Ex. B, ECF No. 82-5 at 905–10. The pages of the Agreement contained in the Email were numbered 6 and 11, respectively. Email at 1266, 1268. Page 6 of the Agreement contains the following provisions, among others:

> The undersigned ("Client") hereby retains
> Claraphi Advisory Network, LLC, a Washington
> limited liability company ("Claraphi"), to
> perform investment advisory servies through
> the independent investment advisor
> representative listed on the signature page
> ("IAR") under the terms of this Investment
> Advisory Agreement ("Agreement") as set
> forth below.
> . . .
> Client acknowledges that (a) Client
> completed or reviewed the Client Profile and
> that it accurately reflects his or her
> investment objectives and circumstances, (b)
> Client has received a copy of this Agreement
> and agrees to be bound by its terms and
> conditions, and (c) this Agreement is
> covered by a pre-dispute arbitration clause
> located in Section IV of this Agreement.

Email at 1266; Full Agreement at 905. Section IV of the Agreement appears on page 9, Full Agreement at 908, which was not attached to the Email, see generally Email. Entitled "Arbitration," Section IV reads:

> Any controversy or claim arising out of or
> relating to this Agreement or the breach
> thereof, or any other matter relating to
> Claraphi's, IAR's or Client's obligations,
> shall be settled by arbitration in

> accordance with the Rules then in effect of Judicial Arbitration and Mediation Services, Inc. ("JAMS"), and judgment upon the award rendered by the arbitrator(s) may be entered in any court having competent jurisdiction. Any hearing in connection with the arbitration shall be held in Seattle, Washington. Client understands that this provision does not constitute a waiver of any right the Client may have under the Investment Advisers Act.

Full Agreement at 908.

The Agreement also contains a choice-of-law provision on page 10, Full Agreement at 909, which was not attached to the email, see generally Email:

> This Agreement shall be construed under the laws of the State of Washington without regard to its choice of law provisions in a manner consistent with the Investment Advisors Act of 1940 ("Advisors Act") and the rules and regulations of the Securities and Exchange Commission thereunder.

Full Agreement at 909.

Plaintiff initialed the Agreement's page 6 and signed its page 11, the latter of which reflects that it was signed on April 24, 2013. Full Agreement at 905, 910. Also on April 24, 2013, Defendant Salisbury signed the Agreement's page 11 on the line labeled "Advisor," and the CEO of Defendant Claraphi signed as well. Id. at 910.

On October 23, 2018, Plaintiff—proceeding both individually and in her capacity as trustee of the Brody Family Trust—filed a Complaint naming as defendants, inter alia,

Defendant Claraphi and Defendant Salisbury. Compl., ECF No. 1.
The Complaint asserts twelve causes of action against eleven
defendants; Defendants Claraphi is named in each cause of
action.[3/] Id. The Complaint alleges that Defendant Salisbury
engaged in, and Defendant Claraphi authorized, a wrongful course
of conduct that included, inter alia, annuity churning, the
procurement of an unsuitable life insurance policy and
commensurate financing arrangement, and violation of fiduciary
duties. See, e.g., Compl. ¶¶ 25-63.[4/] The Complaint also

---

[3/] Plaintiff's causes of action are as follows:
1. Violation of the Unfair and Deceptive Acts or Trade Practices Act ("UDAP"), Hawai`i Revised Statutes ("HRS") §§ 480-1 et seq. Compl. ¶¶ 64-78.
2. UDAP, Violation of HRS § 480-2 ("Suitability"). Compl. ¶¶ 79-82.
3. UDAP, "Elder Abuse" under HRS § 480-13.5. Id. ¶¶ 83-90.
4. Fraudulent suppression. Id. ¶¶ 91-97.
5. Fraudulent misrepresentation. Id. ¶¶ 98-103.
6. Breach of fiduciary duty. Id. ¶¶ 104-13.
7. Vicarious liability/respondeat superior. Id. ¶¶ 114-18.
8. Violation of the Hawai`i Securities Act (HRS §§ 485A-502, 485A-509). Compl. ¶¶ 119-22.
9. Controlling Person Liability (HRS § 485A-509(g)). Compl. ¶¶ 123-26.
10. Violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c). Compl. ¶¶ 127-51.
11. Violation of RICO, 18 U.S.C. § 1962(d). Compl. ¶¶ 152-59.
12. Violation of HRS § 842-2(3). Compl. ¶¶ 160-71.

[4/] The Complaint contains some allegations regarding Defendant Salisbury's conduct prior to the beginning of his relationship with Defendant Claraphi. See, e.g., Compl. ¶¶ 25, 32. There is no indication that Plaintiff is attempting to hold Defendant Claraphi responsible for any events that occurred prior to the April 2013 establishment of the relationship between Defendants Claraphi and Salisbury.

charges Defendant Claraphi itself with wrongdoing in its dealings with Plaintiff, charging, inter alia, that Defendant Claraphi breached its fiduciary duties to Plaintiff. See, e.g., id. ¶ 63.

On February 4, 2019, Defendant Claraphi, citing Federal Rule of Civil Procedure ("Rule) 12(b)(1), filed the instant Motion to Dismiss and Compel Arbitration ("Motion"), ECF No. 82, together with a memorandum in support ("MTD"), ECF No. 82-1.  Plaintiff filed her Opposition on April 9, 2019.  Opp.  Defendant Claraphi filed a Reply on April 16, 2019.  ECF No. 122.  Defendant NAM filed a joinder of simple agreement to the Motion on April 9, 2019, ECF No. 112, and Defendant ACA filed a statement of no position as to the Motion on April 8, 2019, ECF No. 109.  The Court has noticed the Motion for hearing on Tuesday, April 30, 2019, at 11 a.m.  ECF No. 85.

## **STANDARD**

As provided in the Federal Arbitration Act ("FAA"), written arbitration agreements "evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or equity for the revocation of any contract."  9 U.S.C. § 2.  "The FAA embodies a clear federal policy in favor of arbitration." Simula, Inc. v. Autoliv, Inc., 175 F.3d 716, 719 (9th Cir. 1999).  Section 4 of the FAA requires courts to compel

arbitration "in accordance with the terms of the agreement" upon the motion of a party to the agreement. See 9 U.S.C. § 4. "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24–25 (1983). "The standard for demonstrating arbitrability is not high," and arbitration agreements "are to be rigorously enforced." Simula, Inc., 175 F.3d at 719. In line with the "liberal federal policy favoring arbitration" and the "fundamental principle that arbitration is a matter of contract," "courts must place arbitration agreements on an equal footing with other contracts and enforce them according to their terms." AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 339 (2011) (citations and internal quotation marks omitted).

"Federal substantive law governs the question of arbitrability." Simula, Inc., 175 F.3d at 719. Under the FAA, a district court considering a motion to compel arbitration must consider "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." Lee v. Intelius Inc., 737 F.3d 1254, 1261 (9th Cir. 2013) (citation and internal quotation marks omitted).

"However, these gateway issues can be expressly delegated to the arbitrator where the parties clearly and unmistakably provide otherwise." Brennan v. Opus Bank, 796 F.3d 1125, 1130 (9th Cir. 2015) (citations, internal quotation marks, and emphasis omitted).

A motion to compel arbitration may properly be brought pursuant to Rule 12(b)(1). See Daley v. CVS Pharmacy, Inc., 727 F. App'x 377 (9th Cir. 2018). "For purposes of deciding a motion to compel arbitration, the Court may properly consider documents outside the pleadings." Xinhua Holdings Ltd. v. Elec. Recyclers Int'l, Inc., No. 1:13-CV-1409 AWI SKO, 2013 WL 6844270, at *5 (E.D. Cal. Dec. 26, 2013) (collecting cases), aff'd sub nom. Clean Tech Partners, LLC v. Elec. Recyclers Int'l, Inc., 627 F. App'x 621 (9th Cir. 2015).

**DISCUSSION**

**I.  The Parties Clearly and Unmistakably Delegated the Issue of Arbitrability to the Arbitrator**

The Agreement provides that "[a]ny controversy or claim arising out of or relating to this Agreement or the breach thereof, or any other matter relating to Claraphi's, IAR's or Client's obligations, shall be settled by arbitration in accordance with the Rules then in effect of Judicial Arbitration and Mediation Services, Inc. ("JAMS")[.]" Full Agreement at 908. Under the JAMS Rules,

9

> Jurisdictional and arbitrability disputes,
> including disputes over the formation,
> existence, validity, interpretation or scope
> of the agreement under which Arbitration is
> sought, and who are proper Parties to the
> Arbitration, shall be submitted to and ruled
> on by the Arbitrator. The Arbitrator has the
> authority to determine jurisdiction and
> arbitrability issues as a preliminary
> matter.

JAMS Rule 11(b).[5] The Ninth Circuit has held that the incorporation by reference of similar provisions in the United Nations Commission on International Trade Law ("UNCITRAL") arbitration rules, Oracle Am., Inc. v. Myriad Grp. A.G., 724 F.3d 1069, 1075 (9th Cir. 2013), and the rules of the American Arbitration Association ("AAA"), Brennan, 796 F.3d at 1130–31, constituted "clear and unmistakable evidence" of the parties' intent to submit the issue of arbitrability to the arbitrator. And while the Oracle America court expressly limited its holding to arbitration agreements "between sophisticated parties to commercial contracts," Oracle Am., 724 F.3d at 1075, the Brennan court, while expanding Oracle America to employment agreements, also left open the possibility that this rule might be applicable to unsophisticated parties:

> Our holding today should not be interpreted
> to require that the contracting parties be
> sophisticated or that the contract be
> "commercial" before a court may conclude
> that incorporation of the AAA rules

---

[5] The Court takes sua sponte judicial notice of the JAMS Rules under Federal Rule of Evidence 201.

10

> constitutes "clear and unmistakable" evidence of the parties' intent. Thus, our holding does not foreclose the possibility that this rule could also apply to unsophisticated parties or to consumer contracts. Indeed, the vast majority of the circuits that hold that incorporation of the AAA rules constitutes clear and unmistakable evidence of the parties' intent do so without explicitly limiting that holding to sophisticated parties or to commercial contracts. See Petrofac, Inc. v. DynMcDermott Petroleum Operations Co., 687 F.3d 671, 675 (5th Cir. 2012); Republic of Arg. v. BG Grp. PLC, 665 F.3d 1363, 1371 (D.C. Cir. 2012); Fallo v. High-Tech Inst., 559 F.3d 874, 878 (8th Cir.2009); Qualcomm Inc. v. Nokia Corp., 466 F.3d 1366, 1373 (Fed. Cir. 2006); Terminix Int'l Co. v. Palmer Ranch LP, 432 F.3d 1327, 1332 (11th Cir. 2005); Contec Corp. v. Remote Solution Co., 398 F.3d 205, 208 (2d Cir. 2005); Awuah v. Coverall N. Am., Inc., 554 F.3d 7, 10–12 (1st Cir. 2009).
>
> Nevertheless, as in Oracle America, we limit our holding to the facts of the present case, which do involve an arbitration agreement "between sophisticated parties." Oracle America, 724 F.3d at 1075 & n. 2.

Brennan, 796 F.3d at 1130–31; see also Aviles v. Quik Pick Express, LLC, 703 F. App'x 631, 632 (9th Cir. 2017) (regarding whether the incorporation by reference of the JAMS rules in an arbitration agreement between a trucking company and one of its drivers meant that arbitrability was arbitrable, noting that "the underlying issue is . . . explicitly open in this circuit." (citing Brennan, 796 F.3d at 1130)).

11

In the time that has elapsed since Brennan's issuance, a number of district courts in this Circuit have found the rule announced therein and in Oracle America to encompass the JAMS Rules as well as the AAA rules and the UNCITRAL rules. See, e.g., Amtax Holdings 463, LLC v. KDF Communities-Hallmark, LLC, No. 8:17-CV-01899-JLS-AS, 2018 WL 4743386, at *5 (C.D. Cal. Jan. 9, 2018) (finding that "the incorporation of the JAMS rules constitutes 'clear and unmistakable' evidence of the parties' intent to delegate arbitrability to the arbitrator" (citations omitted)); Johnson v. Oracle Am., Inc., No. 17-CV-05157-EDL, 2017 WL 8793341, at *7 (N.D. Cal. Nov. 17, 2017), aff'd, No. 17-17489, 2019 WL 1349757 (9th Cir. Mar. 21, 2019) ("JAMS' jurisdictional rule 11(b) is very similar to the UNCITRAL and AAA jurisdictional rules under which the Ninth Circuit has found a clear and unmistakable delegation when incorporated."); Shierkatz Rllp v. Square, Inc., No. 15-CV-02202-JST, 2015 WL 9258082, at *6 (N.D. Cal. Dec. 17, 2015) ("Because . . . both the applicable AAA and JAMS rules provide that the arbitrator shall decide arbitrability, the Court concludes that the incorporation of the AAA or JAMS rules 'constitutes clear and unmistakable evidence that [the] parties agreed to arbitrate arbitrability.'" (citations omitted)). Similarly, many district courts in this Circuit have applied Oracle America and Brennan to consumer contracts. See, e.g., Brumley v. Austin Centers for

Exceptional Students Inc., No. CV-18-00662-PHX-DLR, 2019 WL 1077683 (D. Ariz. Mar. 7, 2019); Taylor v. Shutterfly, Inc., No. 18-CV-00266-BLF, 2018 WL 4334770 (N.D. Cal. Sept. 11, 2018); Miller v. Time Warner Cable Inc., No. 816CV00329CASASX, 2016 WL 7471302 (C.D. Cal. Dec. 27, 2016).

Perhaps more controversial than the questions of whether the rule announced in Oracle America and Brennan applies to the JAMS Rules or to consumer contracts is the issue of whether it applies in a context where one of the parties to an arbitration agreement is unsophisticated. On this issue, although some district courts have been content to limit Brennan to its facts, see, e.g., Meadows v. Dickey's Barbecue Rests. Inc., 144 F. Supp. 3d 1069 (N.D. Cal. 2015), the majority have recognized that Brennan is properly applied even where one party to a contract is unsophisticated:

> Plaintiffs say that the delegation clause here is unenforceable [because one of the parties is unsophisticated] but the contention is not well taken. The "greater weight of authority has concluded that the holding of [Brennan] applies similarly to non-sophisticated parties." Miller v. Time Warner Cable Inc., No. 8:16-cv-00329-CAS (ASx), 2016 WL 7471302, at *5 (C.D. Cal. 2016); see also Cordas v. Uber Technologies, Inc., 228 F. Supp. 3d 985, 992 (N.D. Cal. 2017) (same). This is for good reason. Brennan expressly cautioned that its holding should not be understood to "foreclose the possibility that this rule could also apply to unsophisticated parties

13

> or to consumer contracts. Indeed, the vast majority of the circuits that hold that incorporation of the AAA rules constitutes clear and unmistakable evidence of the parties' intent do so without explicitly limiting that holding to sophisticated parties or to commercial contracts." Brennan, 796 F.3d at 1130-31; see also Fruth v. AGCS Marine Ins. Co., No. 15-CV-03311-JD, 2016 WL 6806368, at *3 (N.D. Cal. 2016) (Brennan does not impose a sophisticated party requirement). After Brennan, our circuit upheld a delegation clause in an agreement with no discussion of or attention to the parties' level of sophistication. Mohamed v. Uber Technologies, Inc., 848 F.3d 1201, 1207-09 (9th Cir. 2016). It is true that delegation was specifically spelled out in that agreement, *id*. at 1207-08, but Brennan teaches that incorporation, rather than an express statement, does not make an agreement to delegate arbitrability ineffective.

McLellan v. Fitbit, Inc., No. 3:16-CV-00036-JD, 2017 WL 4551484, at *2 (N.D. Cal. Oct. 11, 2017); see, e.g., Esquer v. Educ. Mgmt. Corp., 292 F. Supp. 3d 1005, 1012 (S.D. Cal. 2017) ("Brennan does not compel a court to inquire into a party's sophistication to find clear and unmistakable intent."); Zenelaj v. Handybook Inc., 82 F. Supp. 3d 968, 974 (N.D. Cal. 2015) (finding that cases limiting Brennan's holding to contracts between sophisticated parties are "at odds with the prevailing trend of case law"); see also Hernandez v. United HealthCare Servs., Inc., No. SACV180420DOCKESX, 2018 WL 7458649, at *5 (C.D. Cal. July 26, 2018) ("This Court is unwilling to create an

exception to the [Brennan] holding for unsophisticated parties, because the factors that might make someone 'sophisticated' are poorly suited to a standard definition upon which parties can rely to avoid uncertainty or surprise in the meaning of the instrument they signed.").

In keeping with the weight of authority in this Circuit, therefore, and in light of its obligation to enforce the arbitration agreement according to its terms, the Court holds that the Agreement between Plaintiff and Claraphi, which incorporates the JAMS Rules by reference, contains clear and unmistakable evidence of the parties' intent to submit the question of arbitrability to the arbitrator. See 9 U.S.C. § 4; Concepcion, 563 U.S. at 339; Brennan, 796 F.3d at 1130–31.

## II. Because Plaintiff Failed to Specifically Challenge the Delegation Clause, the Court Will Not Consider Its Validity

"Even when a litigant has specifically challenged the validity of an agreement to arbitrate he must submit that challenge to the arbitrator unless he has lodged an objection to the particular line in the agreement that purports to assign such challenges to the arbitrator—the so-called 'delegation clause.'" Rent-A-Ctr., W., Inc. v. Jackson, 561 U.S. 63, 76 (2010) (Stevens, J., dissenting) (emphasis in original) (summarizing majority's holding).

Here, Plaintiff levels attacks on the arbitration agreement contained within the Agreement. See, e.g., Opp. at 8–12 (arguing that the arbitration agreement lacked mutual assent). But because none of Plaintiff's arguments is directed at the arbitration agreement's delegation of the issue of arbitrability to the arbitrator, those arguments are properly within the arbitrator's jurisdiction, not this Court's. See, e.g., Anderson v. Credit One Bank, No. 16CV3125-MMA (AGS), 2018 WL 2287329, at *11 (S.D. Cal. May 18, 2018) ("Plaintiff only argues that the Arbitration Agreement, as a whole, is "overbroad" and "unfairly one-sided in favor of Defendant." Therefore, the Court 'must treat [the delegation clause] as valid under § 2 [of the FAA], and must enforce it under §§ 3 and 4, leaving any challenge to the validity of the Agreement as a whole for the arbitrator.'" (quoting Rent-A-Ctr., 561 U.S. at 72) (other citations omitted)); McLellan, 2017 WL 4551484, at *4 ("If plaintiffs raise a challenge specific to the validity of the delegation clause, the Court must consider it. Other challenges go to the arbitrator.").

Under the FAA, the Court is bound to enforce the parties' agreement to arbitrate by its terms. As explicated above, those terms include the delegation of the issue of arbitrability—the "threshold" questions the Court would otherwise consider—to the arbitrator. The Court therefore

grants Defendant Claraphi's Motion to Dismiss and Compel Arbitration.

## CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART AND STAYS IN PART Defendant Claraphi Advisory Network, LLC's Motion to Dismiss and Compel Arbitration, ECF No. 82. Pursuant to 9 U.S.C. § 4, the parties are directed to proceed to arbitration in Seattle, Washington, in accordance with the terms of the Agreement with respect to Plaintiff's claims against Defendant Claraphi. The portion of the Motion that seeks dismissal of the claims against Defendant Claraphi is STAYED pending the arbitrator's disposition of the issue of arbitrability.[6]

---

[6] The Court will administratively withdraw Defendant Claraphi's Motion to Dismiss at this time. The parties are instructed to jointly inform the Court within ten days of the finalization of the arbitration. At that point, if appropriate, the Court will automatically reinstate the Motion to Dismiss and set a hearing.

17

IT IS SO ORDERED.

DATED: Honolulu, Hawai`i, May 14, 2019.



Alan C. Kay
Sr. United States District Judge

Ryan v. Salisbury et al., Civ. No. 18-406 ACK-RT, Order Granting in Part and Staying in Part Defendant Claraphi's Motion to Dismiss and Compel Arbitration.