IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

KATHY RYAN, INDIVIDUALLY, AND IN
HER CAPACITY AS TRUSTEE OF THE
BRODY FAMILY TRUST;

        Plaintiff,

    vs.

CHRISTOPHER S. SALISBURY;  C.
SALISBURY, LLC; CLARAPHI ADVISORY
NETWORK, LLC; NATIONAL ASSET
MANAGEMENT, INC.; MICHAEL
DIYANNI; LAKE FOREST BANK & TRUST
COMPANY, N.A.; WINTRUST LIFE
FINANCE; AURORA CAPITAL ALLIANCE;
SECURITY LIFE OF DENVER INSURANCE
COMPANY; and ALEJANDRO ALBERTO
BELLINI,

        Defendants.

CIV. NO. 18-00406 ACK-RT

## ORDER GRANTING DEFENDANT SECURITY LIFE OF DENVER'S MOTION FOR JUDGMENT ON THE PLEADINGS

       For the reasons set forth below, the Court GRANTS Defendant Security Life of Denver's Motion for Judgment on the Pleadings, ECF No. 95, insofar as it seeks dismissal of all of Plaintiff's claims against Defendant Security Life of Denver.

### FACTUAL BACKGROUND

       The Brody Family Trust ("the Trust") was created on February 9, 1993, with Plaintiff Kathy Ryan (then Kathy Brody)

("Plaintiff")[1] serving as its trustee. Compl., ECF No. 1 ¶ 23.
The Trust was organized under the laws of California. Id.
Sometime in 2002 or thereafter, the estate planning company that
first established the Trust referred Plaintiff to Defendant
Christopher S. Salisbury ("Defendant Salisbury") for her
investment and financial planning needs. Id. ¶ 24.

Early on in his tenure as Plaintiff's financial
advisor, Defendant Salisbury began investing Plaintiff's money
and/or that of the Trust into annuities, among other
investments. Id. ¶ 25. Defendant Salisbury, together with
Defendant C. Salisbury, LLC and Accelerated Estate Planning, LLC
(together, "the Salisbury Entities") caused Plaintiff to
surrender certain annuities and move the money to different
annuities with the promise that any surrender fees would be
offset either by bonus monies or greater earnings of the new
product (a process the Complaint calls "churning"). Id. ¶ 26.
Defendant Salisbury understood that Plaintiff did not have
sophisticated knowledge of investment, financial, and insurance-
related matters. Id. ¶ 29. The Salisbury Entities made verbal
representations about the products Defendant Salisbury was
directing Plaintiff to invest in or purchase, and Defendant

---

[1] Plaintiff turned sixty-two years old—and thus became an
"elder" as that term is defined in HRS § 480-13.5—sometime in
2012. Compl. ¶ 86.

Salisbury routinely presented Plaintiff with signature pages, rather than complete documents, which he instructed her to sign but not date.  Id. ¶ 30.  Defendant Salisbury, a licensed notary, often notarized documents Plaintiff had signed, including those signed outside his presence.  Id.

## I.   The Annuities

Among the many annuities involved in Defendant Salisbury's "churning" process were annuities issued by Allianz, at least two of which were surrendered at a sizeable loss.  See id. ¶ 31.  First, on or about December 29, 2009, Plaintiff was caused to surrender Allianz Flexible Premium Deferred Annuity Policy (Index Benefit bearing policy number XXX 3635, policy date September 1, 2006)—which was then valued at approximately $902,000—at a loss of approximately $200,077.  Id. ¶ 32. Second, on or about November 21, 2014, following Defendant Salisbury's advice and direction, Plaintiff surrendered an Allianz annuity with a policy number XXX 7754, which was issued on December 18, 2006.

Again acting on Defendant Salisbury's advice and direction, Plaintiff also surrendered four Phoenix Personal Income Annuities.  On or about October 19, 2017, Plaintiff surrendered two such annuities.  One, number XXX 5109, was issued with a single premium of $24,795.55 on December 9, 2014, and its surrender cost Plaintiff approximately $3,790.04 in

surrender charges, id. ¶ 34a; the other, number XXX 5355, was issued with a single premium of $24,800.42 on December 11, 2014, and its surrender cost Plaintiff approximately $3,939.86 in surrender charges, id. ¶ 34b. On or about November 7, 2017, Plaintiff surrendered Phoenix Personal Income Annuity number XXX 8769, which had been issued with a single premium of $700,000 on May 4, 2015, and incurred approximately $110,220.74 in surrender charges. Id. ¶ 34d. And on or about November 8, 2017, Plaintiff incurred approximately $25,983.85 in surrender charges by surrendering Phoenix Personal Income Annuity XXX 4609, which was issued on December 18, 2014 with a single premium of $160,319.48. Id. ¶ 34c. As to these four annuities, Plaintiff lost approximately $143,931.49. Id. ¶ 34.

Again following Defendant Salisbury's advice and direction, Plaintiff purchased and invested in the Fidelity Premium Deferred Fixed Index Annuity, AdvanceMark Ultra 14, number XXX 5051, which was issued on February 8, 2015. Id. ¶ 35. As of the most recent annual statement, it had an account value of approximately $453,282.52. Id. Plaintiff surrendered it in or around October 2017, and the surrender charge was $52,382.80. Id.

Similarly, Defendant Salisbury allowed an American National annuity, number XXX 0431, to run just over a year before he caused Plaintiff to surrender it in or around April

4

2015.  Id. ¶ 36.  The surrender of this annuity, which had been issued on March 14, 2014 with an initial premium payment of $737,450.85, incurred approximately $61,028 in surrender charges.  Id.

Plaintiff was also issued a ForeThought Single Premium Deferred Annuity Contract number XXX 8001 on February 11, 2009, with an initial premium payment of $166,949.80.  Id. ¶ 37.  At Defendant Salisbury's direction, Plaintiff made several withdrawals from this annuity while it was in force.  Id.  At the time of surrender on or about November 17, 2014, the annuity was valued at $146,486.39, and the surrender fee was $7,324.32. Id. ¶ 37.

And on November 26, 2007, Plaintiff was issued a North American Company Individual Flexible Premium Deferred Annuity, number XXX 2105, with an initial premium payment of $276,745.13. Id. ¶ 38.  Plaintiff paid an additional premium of $598,595.71 on or about April 27, 2012.  Id.  On or about January 29, 2014, the annuity was surrendered at a net loss of $88,205.94.  Id.

These transactions—which Plaintiff alleges are a representative list of Defendant Salisbury's "churning" activities rather than an exhaustive one, see id. ¶ 39—cost Plaintiff approximately $576,207.28 in surrender charges, id. With respect to each transaction, and over the course of them all, Defendant Salisbury told Plaintiff that the surrenders were

in her best interest and explained that any surrender charge incurred was worth incurring to better position the funds in the replacement annuity.  Id. ¶ 40.

## II.  The Insurance Policies

Acting on Defendant Salisbury's advice, Plaintiff obtained a Lincoln Benefit Flexible Premium Variable Life Insurance Policy on October 6, 2004.  Id. ¶ 44.  This policy carried a death benefit of $5,066,782, and its planned annual payment was $279,731.  Id.  In or around 2008, Defendant Salisbury reduced the death benefit to $500,000, and the policy was surrendered on October 7, 2013.  Id.

Again acting on Defendant Salisbury's advice, Plaintiff procured a one million dollar Flexible Premium Universal Life Insurance Policy from Columbus Life Insurance Company.  See id. ¶ 43.  The policy had an effective date of May 20, 2004, and the planned premiums were $16,881.12 annually. Id.  This policy was cancelled in or around April 2016 and replaced with a $2,500,000 VOYA IUL-Global Choice Policy ("the VOYA Policy" or "the Policy") issued by Defendant Security Life of Denver ("Defendant SLD") and subject to a financing arrangement conceived of and carried out by Defendants Salisbury, Claraphi Advisory Network, LLC ("Defendant Claraphi"), Michael Diyanni ("Defendant Diyanni"), Aurora Capital Alliance ("Defendant ACA"), Lake Forest Bank & Trust

Company, N.A. ("Defendant Lake Forest"), Wintrust Life Finance ("Defendant Wintrust"), and Alejandro Alberto Bellini ("Defendant Bellini"). Id. ¶ 45. Defendant Bellini was the writing agent of the VOYA Policy and participated in selling the Policy to Plaintiff. Id. ¶ 20.

Defendant Salisbury advised Plaintiff that the VOYA Policy would fund itself—that she would never have to make premium payments on it due to the design of the premium financing arrangement orchestrated by Defendants Salisbury, Claraphi, Diyanni, ACA, Lake Forest, Wintrust, and Bellini. Id. ¶ 46. Plaintiff expressed concern to Defendant Salisbury about the value of the VOYA Policy, but Defendant Salisbury told Plaintiff that the Policy was designed to assist her children in paying taxes after Plaintiff's decease. Id. ¶ 48. But Defendant Salisbury did not inform Plaintiff at the time the Policy was purchased that very little, if any, of her net worth would be subject to estate taxes. Id. Defendant Salisbury misrepresented Plaintiff's net worth on the application for the VOYA Policy. Id. ¶ 49.

Plaintiff did not need the VOYA Policy's life insurance, and in any case she lacked the liquid assets to properly fund it. Id. ¶ 50. Despite knowing this, Defendants Salisbury, Claraphi, Diyanni, ACA, Lake Forest, Wintrust, and Bellini induced Plaintiff to enter into transactions they knew

7

would be to her detriment. _Id._

A trust agreement was created on March 26, 2016, by
Defendant Diyanni, an attorney chosen by Defendant Salisbury
whom Plaintiff had never met. _Id._ ¶ 51. Defendant Diyanni
handles some tax matters, but specializes primarily in personal
injury and DUI/DWI cases. _Id._ Defendant Diyanni was hired by
Defendant ACA to draft "an Irrevocable Trust that would meet
both the standards for the financial institution and life
insurance carrier." _Id._ ¶ 52. Defendant Diyanni, and The Law
Office of Michael Diyanni, would serve as Trustee of the Kathy
Ryan Irrevocable Trust. _Id._

Defendant SLD issued the VOYA Policy on April 5, 2016.
_Id._ ¶ 53. The annual scheduled premium was $160,000, and the
minimum monthly premium to maintain the policy was $3,072.22.
_Id._ Defendant ACA arranged for First Insurance Funding (now
Defendant Lake Forest; hereafter "Defendant Lake Forest") and/or
Wintrust to finance the VOYA premiums. _Id._ ¶ 18. On April 12,
2016, Defendant Lake Forest issued its proposal of a $172,000
initial loan amount, which included a $12,000 broker's fee that
was paid to Defendant Diyanni. _Id._ ¶ 54. Plaintiff alleges
that this $12,000 fee is substantially in excess of the
commissions normally paid to brokers, agents, or attorneys for
similar services. _Id._

Defendant Diyanni then assigned the VOYA Policy as

collateral to Defendant Lake Forest. Id. ¶ 55. Plaintiff was also required to assign an annuity, Allianz Annual Fixed Index Annuity number XXX 9437, as collateral. Id. ¶ 56. Defendants Diyanni and Salisbury told Plaintiff that the assignment would be released after seven years. Id. But this assignment was fraudulently procured by Defendants Diyanni and Salisbury, as it is dated and notarized in Orange County, California, on a date when Plaintiff was not on the mainland and could not have signed the document. Id. ¶ 57.

Plaintiff alleges that, during and after the sale of the Policy, Defendant Diyanni as Trustee of the Kathy Ryan Irrevocable Trust (the "ILIT") failed to perform his fiduciary duties to determine the appropriateness of replacing the Columbus Life policy or the suitability of the VOYA Policy. See id. ¶ 58. Plaintiff further alleges that Defendant Diyanni did not properly assess the negative consequences of the premium financing arrangement, the selection and assignment of collateral, and/or the funding of premiums outside of the premium financing arrangement. Id. "In short," Plaintiff alleges, "the VOYA [P]olicy should have never been purchased." Id.

A year later, Plaintiff and Defendant Diyanni were advised that the Note issued by Defendant Lake Forest was in default for failure to make the interest payment of $8,642.25,

and to make the premium payment of $163,500, as well as to
provide the requested collateral.  Id. ¶ 59.  Plaintiff
contacted VOYA, a representative of which told her that the
company could only speak with Defendant Diyanni because he was
the "owner" of the Policy.  Id. ¶ 60.  When Plaintiff contacted
Defendant Salisbury, he told her that Defendant Lake Forest was
mistaken, but he later reversed course and instructed Plaintiff
to wire $37,000 to Defendant Lake Forest in order to secure the
loan.  See id.  Plaintiff did so, but never received a receipt
for the transaction.  Id.

Despite having been advised by Defendant Salisbury
that she should never have to personally pay premiums on the
VOYA Policy and that the policy would fund itself, Plaintiff was
advised by Defendant ACT, in or around March 2018, that the
action items on her life insurance premium finance arrangement
included an outstanding interest payment of $24,545.82 and a
signed, dated Guarantors Acknowledgment and Certification
Additional Collateral of $60,639.55.  Id. ¶ 61.

Those defendants who initiated and/or approved the
purchase of the VOYA Policy and the associated premium financing
arrangements—i.e., Defendants Salisbury, Claraphi, Diyanni, ACA,
Lake Forest, Wintrust, SLD, and Bellini, see id. ¶ 45, 53—knew
at the time they did so that the VOYA Policy was an unsuitable
financial product for Plaintiff in light of the excessive death

benefit and the fact that its premiums exceeded her ability to pay.  Id. ¶ 62; but see id. ¶ 72.c (alleging that "Defendant Salisbury misrepresent[ed Plaintiff]'s net worth on the application for the VOYA life insurance policy").  Plaintiff alleges that the sale of the policy and premium financing arrangement were part of a fraudulent and deceptive scheme carried out by all defendants working in concert with one another.  Id. ¶ 25.

## PROCEDURAL BACKGROUND

Plaintiff, proceeding both individually and in her capacity as trustee of the Brody Family Trust, filed her Complaint on October 23, 2018.  Compl.  Therein, she asserted twelve causes of action:

1. Violation of the Unfair and Deceptive Acts or Trade Practices Act ("UDAP"), Hawai`i Revised Statutes ("HRS") §§ 480-1 et seq., as to all defendants.  Compl. ¶¶ 64–78.

2. UDAP, Violation of HRS § 480-2 ("Suitability") as to all defendants.  Compl. ¶¶ 79–82.

3. UDAP, "Elder Abuse", as to all defendants.  Id. ¶¶ 83–90.

4. Fraudulent suppression as to the Salisbury Defendants and Defendants NAM and Claraphi.  Id. ¶¶ 91–97.

5. Fraudulent misrepresentation as to the Salisbury Defendants and Defendants NAM, Claraphi, and Diyanni. Id. ¶¶ 98–103.

6. Breach of fiduciary duty as to the Salisbury Defendants and Defendants NAM, Claraphi, and Diyanni. Id. ¶¶ 104–13.

7. Vicarious liability/respondeat superior as to the Salisbury Defendants and Defendants NAM, Claraphi, Diyanni, ACA, Lake Forest, Wintrust, SLD, and Bellini. Id. ¶¶ 114–18.

8. Violation of the Hawai`i Securities Act (HRS §§ 485A-502, 485A-509) as to the Salisbury Defendants, Defendant NAM, and Defendant Claraphi. Compl. ¶¶ 119–22.

9. Controlling Person Liability, under HRS § 485A-509(g), as to Defendants NAM and Claraphi. Compl. ¶¶ 123–26.

10. Violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c), as to all defendants. Compl. ¶¶ 127–51.

11. Violation of RICO, 18 U.S.C. § 1962(d), as to all defendants. Compl. ¶¶ 152–59.

12. Violation of HRS § 842-2(3), as to all defendants. Compl. ¶¶ 160–71.

On January 18, 2019, Defendant SLD filed an Answer to the Complaint. ECF No. 72. Defendant SLD then filed a Motion for Judgment on the Pleadings ("Motion") on March 12, 2019. ECF No. 95. Plaintiff filed her Opposition on April 9, 2019. ECF No. 115. On April 16, 2019, Defendant SLD filed its Reply. ECF

No. 121.  Defendant NAM filed a Statement of No Position as to
the Motion on March 25, 2019, ECF No. 104, and Defendants ACA
and Alejandor Alberto Bellini (collectively, "the ACA
Defendants") filed a Statement of No Position on April 8, 2019,
ECF No. 110.  The Court held a hearing on the Motion on April
30, 2019.  ECF No. 125.

## STANDARDS

### I.   Rule 12(c)

Under Federal Rule of Civil Procedure ("Rule") 12(c),
"[a]fter the pleadings are closed—but early enough not to delay
trial—a party may move for judgment on the pleadings."  The
pleadings are closed once a complaint and an answer have been
filed, assuming that there is no counterclaim or cross-claim.
Doe v. United States, 419 F.3d 1058, 1061 (9th Cir.2005).

A motion brought under Rule 12(c) is "functionally
identical" to one brought pursuant to Rule 12(b), and "the same
standard of review applicable to a Rule 12(b) motion applies to
its Rule 12(c) analog." Dworkin v. Hustler Magazine Inc., 867
F.2d 1188, 1192 (9th Cir. 1989); see also Rutenschroer v. Starr
Seigle Commc'ns, Inc., 484 F. Supp. 2d 1144, 1147–48 (D. Haw.
2006) ("If procedural defects are asserted in a Rule 12(c)
motion, the district court will apply the same standards for
granting the appropriate relief or denying the motion as it
would have employed had the motion been brought prior to the

13

defendant's answer under Rules 12(b)(1), 12(b)(6), [or] 12(b)(7)[.]" (citing 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1367 (3d ed. 2004))).

Judgment on the pleadings under Rule 12(c) is limited to material included in the pleadings, as well documents attached to the complaint, documents incorporated by reference in the complaint, and matters of judicial notice, unless the Court elects to convert the motion into one for summary judgment.[2/] <u>Yakima Valley Mem'l Hosp. v. Dep't of Health</u>, 654 F.3d 919, 925 n.6 (9th Cir. 2011); <u>United States v. Ritchie</u>, 342 F.3d 903, 908 (9th Cir. 2003). Rule 12(d) gives the Court "discretion to accept and consider extrinsic materials offered in connection with these motions, and to convert the motion to one for summary judgment when a party has notice that the district court may look beyond the pleadings." <u>Hamilton Materials, Inc. v. Dow Chem. Corp.</u>, 494 F.3d 1203, 1207 (9th Cir. 2007).

The Court must accept as true the facts as pled by the non-movant, and will construe the pleadings in the light most favorable to the nonmoving party. <u>U.S. ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.</u>, 637 F.3d 1047, 1053 (9th Cir. 2011);

---

[2/] There is some dispute within this Circuit as to whether or not an exhibit attached to an answer is properly considered on a motion for judgment on the pleadings. <u>See</u> discussion at <u>infra</u> Sec. II.

Doyle v. Raley's Inc., 158 F.3d 1012, 1014 (9th Cir. 1998).
Judgment on the pleadings is properly granted "when, accepting
all factual allegations in the complaint as true, there is no
issue of material fact in dispute, and the moving party is
entitled to judgment as a matter of law." Chavez v. United
States, 683 F.3d 1102, 1108 (9th Cir. 2012) (citation and
original alteration omitted).

     Although Rule 12(c) does not expressly address partial
judgment on the pleadings, leave to amend, or dismissal, courts
regularly "apply Rule 12(c) to individual causes of action,"
Strigliabotti v. Franklin Res., Inc., 398 F. Supp. 2d 1094, 1097
(N.D. Cal. 2005) (citation omitted), and have discretion to
grant a Rule 12(c) motion with leave to amend, or dismiss the
action instead of entering judgment, see Goens v. Adams &
Assocs., Inc., No. 2:16-CV-00960-TLN-KJN, 2017 WL 3981429, at *2
(E.D. Cal. Sept. 11, 2017) (citing Carmen v. San Francisco
Unified Sch. Dist., 982 F. Supp. 1396, 1401 (N.D. Cal. 1997);
Moran v. Peralta Cmty. Coll. Dist., 825 F. Supp. 891, 893 (N.D.
Cal. 1993)).

## II.  Subject-Matter Jurisdiction

     A motion for judgment on the pleadings that asserts
the absence of subject-matter jurisdiction is assessed in the
same manner as a motion brought under Rule 12(b)(1).  See
Rutenschroer, 484 F. Supp. 2d at 1147–48 (D. Haw. 2006).  A

challenge to a court's subject-matter jurisdiction may be either "facial" or "factual." Wolfe v. Strankman, 392 F.3d 358, 362 (9th Cir. 2004).

In a facial attack, "the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." Id. (quoting Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004)). When opposing a facial attack on subject-matter jurisdiction, the nonmoving party is not required to provide evidence outside the pleadings. Wolfe, 392 F.3d at 362; see Doe v. Holy See, 557 F.3d 1066, 1073 (9th Cir. 2009) (treating defendant's challenge to subject-matter jurisdiction as facial because defendant "introduced no evidence contesting any of the allegations" of the complaint). In deciding a facial Rule 12(b)(1) motion, the court must assume the allegations in the complaint are true and draw all reasonable inferences in the plaintiff's favor. Wolfe, 392 F.3d at 362 (citations omitted).

By contrast, in a factual attack, "the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." Wolfe, 392 F.3d at 362 (quoting Safe Air, 373 F.3d at 1039). The moving party may bring a factual challenge to the court's subject-matter jurisdiction by submitting affidavits or any other evidence properly before the court. The nonmoving party must then

"present affidavits or any other evidence necessary to satisfy its burden of establishing that the court, in fact, possesses subject-matter jurisdiction." Colwell v. Dep't of Health & Human Servs., 558 F.3d 1112, 1121 (9th Cir. 2009) (citation omitted). In these circumstances, the court may look beyond the complaint without having to convert the motion into one for summary judgment. U.S. ex rel. Meyer v. Horizon Health Corp., 565 F.3d 1195, 1200 n.2 (9th Cir. 2009). When deciding a factual challenge to the court's subject-matter jurisdiction, the court "need not presume the truthfulness of the plaintiffs' allegations." Id.

### III. Failure to State a Claim

Rule 12(h)(2)(B) permits a defendant to use Rule 12(c) as a vehicle to contend that a complaint fails to state a claim upon which relief can be granted. See Fed. R. Civ. P. 12(h)(2)(B). When Rule 12(c) is used to raise the defense of failure to state a claim upon which relief can be granted, analysis under Rule 12(c) is substantially identical to analysis under Rule 12(b)(6). McGlinchy v. Shell Chemical Co., 845 F.2d 802, 810 (9th Cir.1988). The Court must therefore assess whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007));

see also Harris v. Cty. of Orange, 682 F.3d 1126, 1131 (9th Cir. 2012) (Iqbal applies to Rule 12(c) motions because Rule 12(b)(6) and Rule 12(c) motions are functionally equivalent).  Mere conclusory statements in a complaint or "formulaic recitation[s] of the elements of a cause of action" are not sufficient. Twombly, 550 U.S. at 555.  Thus, the Court discounts conclusory statements, which are not entitled to a presumption of truth, before determining whether a claim is plausible.  Iqbal, 556 U.S. at 678.  However, "[d]ismissal with prejudice and without leave to amend is not appropriate unless it is clear . . . that the complaint could not be saved by amendment."  Harris, 682 F.3d at 1131 (citation omitted).

## IV.  Rule 9(b)

Rule 9(b) requires that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).  "Rule 9(b) requires particularized allegations of the circumstances constituting fraud."  In re GlenFed, Inc. Securities Litigation, 42 F.3d 1541, 1547–48 (9th Cir.1994) (en banc) (superseded by statute on other grounds as recognized in Ronconi v. Larkin, 253 F.3d 423, 429 n.6 (9th Cir. 2001)).  Rule 9(b) requires the pleading to provide an "account of the time, place, and specific content of the false

representations as well as the identities of the parties to the misrepresentations." Swartz v. KPMG LLP, 476 F.3d 756, 764 (9th Cir.2007) (internal quotations omitted). "Averments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged." Vess v. Ciba–Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir.2003). Plaintiffs may not simply plead neutral facts to identify the transaction, but rather must also set forth what is false or misleading about a statement, and why it is false. See GlenFed, 42 F.3d at 1548. Moreover,

> Rule 9(b) does not allow a complaint to
> merely lump multiple defendants together but
> require[s] plaintiffs to differentiate their
> allegations when suing more than one
> defendant . . . and inform each defendant
> separately of the allegations surrounding
> his alleged participation in the fraud. In
> the context of a fraud suit involving
> multiple defendants, a plaintiff must, at a
> minimum, identif[y] the role of [each]
> defendant[ ] in the alleged fraudulent
> scheme.

Swartz, 476 F.3d at 764–65 (alterations in original) (citations omitted). However, Rule 9(b)'s requirements may be relaxed as to matters that are exclusively within the opposing party's knowledge. Rubenstein v. Neiman Marcus Grp. LLC, 687 F. App'x 564, 567 (9th Cir. 2017) (quoting Moore v. Kayport Package Express, Inc., 885 F.2d 531, 540 (9th Cir. 1989)).

> Rule 9(b) only "requires that plaintiffs
> specifically plead those facts surrounding
> alleged acts of fraud to which they can
> reasonably be expected to have access."

> *Concha v. London*, 62 F.3d 1493, 1503 (9th
> Cir. 1995).  As such, "in cases where fraud
> is alleged, we relax pleading requirements
> where the relevant facts are known only to
> the defendant." *Id.* In those cases, a
> "pleading is sufficient under Rule 9(b) if
> it identifies the circumstances constituting
> fraud so that a defendant can prepare an
> adequate answer from the allegations."
> *Moore*, 885 F.2d at 540.

*Rubenstein*, 687 F. App'x at 567–68.  Where the facts surrounding

fraud are "peculiarly within the opposing party's knowledge,"

then, "[a]llegations of fraud based on information and belief

may suffice . . . so long as the allegations are accompanied by

a statement of the facts upon which the belief is founded." *Puri*

*v. Khalsa*, 674 F. App'x 679, 687 (9th Cir. 2017) (citing *Wool v.*

*Tandem Computs. Inc.*, 818 F.2d 1433, 1439 (9th Cir. 1987),

*overruled on other grounds as stated in* *Flood v. Miller*, 35

Fed.Appx. 701, 703 n.3 (9th Cir. 2002)).

A motion to dismiss a claim grounded in fraud for

failure to plead with particularly under Rule 9(b) is the

functional equivalent of a motion to dismiss under Rule

12(b)(6).  *See* *Vess*, 317 F.3d at 1107.  Thus, "[a]s with Rule

12(b)(6) dismissals, dismissals for failure to comply with Rule

9(b) should ordinarily be without prejudice. Leave to amend

should be granted if it appears at all possible that the

plaintiff can correct the defect." *Id.*

## DISCUSSION

Defendant SLD argues for its entitlement to judgment on the pleadings on a number of grounds, which the Court addresses in turn.

### I.   Standing

Defendant SLD makes a facial challenge to the Court's subject-matter jurisdiction, contending that Plaintiff's allegations have failed to establish "that she has standing to bring claims in any capacity." Mot. at 9.

A plaintiff invoking federal jurisdiction bears the burden of establishing "the three elements that constitute the irreducible constitutional minimum of Article III standing[—]namely, that the plaintiff has (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Friends of Santa Clara River v. U.S. Army Corps of Eng'rs, 887 F.3d 906, 918 (9th Cir. 2018) (internal quotation marks omitted) (citing Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992); Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547 (2016).   In addition to this irreducible minimum, a plaintiff invoking federal jurisdiction must also establish that she has prudential standing.   United States v. JP Morgan Chase Bank Account No. Ending 8215 in Name of Ladislao V. Samaniego, VL: $446,377.36, 835 F.3d 1159, 1167 (9th Cir. 2016) (citation

omitted). "Prudential standing consists of the general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in representative branches, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked." Id. (citation and internal quotation marks omitted).

Defendant SLD argues that Plaintiff lacks standing because "[s]he was denied no benefits from the [VOYA] Policy. Further, all Policy rights belonged to its owner or, derivatively, to its beneficiary: the [ILIT]. [Plaintiff] has never been in either position as an individual or as the Brody Family Trust's trustee—the two capacities in which she sues." Mot. at 9. Put another way, Defendant SLD contends that Plaintiff, who is neither the Policy's owner nor its beneficiary, has not suffered an injury in fact and lacks prudential standing.[3]

The Court is somewhat puzzled by this argument, as it presupposes both that the VOYA Policy itself is the only

---

[3] In support of this argument, Defendant SLD cites two federal district court cases in which the courts were considering matters of Florida and California state law, respectively. See Mot. at 10 (citing Schwab v. Huntington Nat. Bank, No. 2:12-CV-315-FTM-99, 2013 WL 655248 (M.D. Fla. Feb. 22, 2013); Morris v. Choicepoint Servs., Inc., No. C061224SC, 2006 WL 2479122 (N.D. Cal. Aug. 28, 2006)).

possible source of Plaintiff's claims (despite the fact that Plaintiff's claims are plainly extracontractual) and that any alleged injuries must similarly derive from the denial of rights or benefits under the VOYA Policy (despite the fact that, as alleged, Plaintiff's asserted injuries do not arise out of the Policy itself). Plaintiff alleges that she suffered numerous injuries in fact, including, <u>inter alia</u>, that she was required to make a payment of $37,000 in order to secure the loan that was taken out pursuant to the premium financing arrangement for the VOYA Policy. Compl. ¶ 5, 60. In other words, Plaintiff alleges that she herself suffered an injury, one that did not arise out of the VOYA Policy. Plaintiff has thus satisfied the injury-in-fact requirement of Article III standing as to her claims against Defendant SLD. Moreover, she is asserting her own legal rights rather than those of the ILIT, the grievance she asserts is not generalized, and her complaint falls within the zone of interests protected by the laws she invokes against Defendant SLD: Hawai`i's UDAP statute and the federal RICO statute. In sum, Plaintiff's allegations are sufficient to establish that she has prudential standing.

Plaintiff alleges that Defendant SLD's wrongful conduct included issuing her a life insurance policy she could not afford, Compl. ¶ 72.b, and taking part in a scheme to defraud her of her money by way of the Policy, <u>id.</u> ¶ 128.

Taking her allegations as true, her alleged injury in the form
of payment of $37,000 is fairly traceable to Defendant SLD's
complained-of conduct, and would be redressed by her sought-for
relief, which includes "rescission of the VOYA Policy, and a
refund of premiums plus interest." Id. ¶ 78.

Insofar as it is premised on the argument that
Plaintiff lacks standing to assert claims against Defendant SLD,
the Motion is denied.

## II. Liability Waiver

Pointing to a one-page document attached to its
Answer, Defendant SLD asserts that Plaintiff signed a liability
waiver waiving all claims against it arising out of the premium
financing arrangement. See Mot. at 11 (citing Ans. Ex. 1,
Financing Disclosure and Acknowledgment ("Acknowledgment"), ECF
No. 72-1); see also ECF No. 128-1. "[Plaintiff]'s claims are
barred by the Acknowledgment and should be dismissed." Id.
Plaintiff contends that her signature on the Acknowledgment was
fraudulently induced, and that the Acknowledgment therefore does
not bar her claims. Opp. at 13–14; see Compl. ¶ 6 (alleging
that Plaintiff's "participation in the premium financing
arrangement, as well as her signature on any related
documents[,] were procured through fraud.").

Although Rule 10(c) states that "[a] copy of a written
instrument that is an exhibit to a pleading is part of the

24

pleading for all purposes," there is some disagreement among district courts in this Circuit regarding whether or not a court ruling on a motion for judgment on the pleadings may properly consider documents attached to the answer.  Compare Pratt v. Hawaii, No. CV 17-00599 DKW-RLP, 2019 WL 1548570, at *3 (D. Haw. Apr. 9, 2019) (on a motion for judgment on the pleadings, "a court may properly consider documents offered by both parties in the pleadings, including documents attached to the pleadings." (citing Employer's Insurance of Wausau v. Price Aircraft Co., 283 F.Supp.2d 1144, 1146 (D. Haw. 2003))) and Du v. Litton Loan Servicing, No. 2:09-CV-00355-KJD, 2010 WL 3810095, at *1 (D. Nev. Sept. 20, 2010) ("When ruling on a Motion brought under Rule 12(c), a court may consider all pleadings, including the complaint and answer, and any documents attached to them." (citations omitted)) with Springboards to Educ., Inc. v. Families in Sch., No. CV 17-8348-MWF (EX), 2018 WL 5263062, at *5 (C.D. Cal. Apr. 26, 2018) (declining, on a motion for judgment on the pleadings, to consider documents attached to answer) and Clark v. Chase Home Fin., LLC, No. 08CV0500 JM(RBB), 2008 WL 2326307, at *4 (S.D. Cal. June 3, 2008) (same); see also Thomas v. Fin. Recovery Servs., No. EDCV 12-1339 PSG OPX, 2013 WL 387968, at *2 (C.D. Cal. Jan. 31, 2013) ("[T]here is some disagreement among courts regarding whether documents attached to the answer, rather than the complaint, may be properly

considered." (citations omitted)); <u>Ritchie</u>, 342 F.3d at 908

("<u>Certain</u> written instruments attached to pleadings may be

considered part of the pleading." (emphasis added) (citing Rule

10(c))). The Court observes that explicit guidance from the

Ninth Circuit would be of great utility on this issue. Absent

such guidance, and after careful deliberation, the Court finds

consideration of the Acknowledgment improper in the instant

circumstances.

When utilized to assert that a plaintiff has failed to

state a claim upon which relief can be granted, a Rule 12(c)

motion is "functionally identical" to a Rule 12(b)(6) motion,

<u>Dworkin</u>, 867 F.2d at 1192—the purpose of which is to test the

sufficiency <u>of a complaint</u>, <u>see, e.g.</u>, <u>Navarro v. Block</u>, 250

F.3d 729, 732 (9th Cir. 2001). To the extent written

instruments that are not attached to a complaint or subject to

judicial notice are incorporated by reference into a complaint—

that is, are referred to extensively therein or form the basis

of a plaintiff's claims, <u>see Ritchie</u>, 342 F.3d at 907—their

consideration on a motion for judgment on the pleadings that

asserts failure to state a claim would be proper. <u>See Horsely</u>

<u>v. Feldt</u>, 304 F.3d 1125, 1134–35 (11th Cir. 2002) (observing

that because "the operative rule language is identical and that

the provisions serve the same purpose, . . . the Rule 12(b)(6)

incorporation by reference doctrine should apply in Rule 12(c)

cases as well."); see also id. (considering, on a motion for judgment on the pleadings, a document attached to an answer "because [the document] is central to one of the claims and its authenticity is undisputed"). But to allow the introduction of other extraneous material, simply because it is attached to an answer, would effectively convert a 12(c) motion into a pseudo-motion for summary judgment while giving the plaintiff "no opportunity to respond to the defendant's new version of the facts." See Khoja v. Orexigen Therapeutics, Inc., 899 F.3d 988, 1003 (9th Cir. 2018).

    In her Opposition, Plaintiff contends that her signature on the Acknowledgment was fraudulently induced. Opp. at 13-14. Thus, there is a factual dispute as to the Acknowledgment's validity. It would be inconsistent with "the prohibition against resolving factual disputes at the pleading stage," see Khoja, 899 F.3d at 1003, to make a determination at this juncture as to the validity of the Acknowledgment. See, e.g., Solid Host, NL v. Namecheap, Inc., No. CV 08-05414 MMM (EX), 2009 WL 10671427, at *5 (C.D. Cal. June 16, 2009) (declining, on a motion for judgment on the pleadings, to consider an agreement attached to the answer "[b]ecause a factual dispute exists as to whether Solid Host agreed to the registration agreement"). The Acknowledgment was not attached to the Complaint, and is plainly not a proper subject of

judicial notice under Federal Rule of Evidence 201. Moreover, the Court does not find—and Defendant SLD does not argue—that the Acknowledgment is incorporated by reference into the Complaint; the Complaint does not refer to the Acknowledgment explicitly, let alone extensively, and none of Plaintiff's claims is based upon the Acknowledgment. See Ecological Rights Found. v. Pac. Gas & Elec. Co., 713 F.3d 502, 511 (9th Cir. 2013) (noting that whether a document forms the basis of a complaint "turns on whether the complaint 'necessarily relies' on that document." (citation omitted)).

Insofar as Defendant SLD's Motion is premised upon the release purportedly contained in the Acknowledgment, the Motion is denied without prejudice to Defendant SLD's ability to assert the limitation of liability as a defense later in this litigation.[4]

## III. UDAP (First, Second, and Third Causes of Action)

Plaintiff's First and Second Causes of Action assert that all defendants have engaged in deceptive and unfair acts and practices within the meaning of Hawai`i's unfair and deceptive acts or practices ("UDAP") statute ("the UDAP statute"), HRS §§ 480-1, et seq. Compl. ¶¶ 65, 80. Plaintiff's

---

[4] Should Defendant SLD re-assert this defense at a later date, the Court requests that the parties address in their briefing which state's law should be used to interpret the Acknowledgment.

First Cause of Action outlines multiple actions alleged to have been UDAPs. See id. ¶¶ 67–75. Her Second Cause of Action, entitled in part "Suitability," alleges simply that "[e]ach of the Defendants" violated the HRS § 480-2 "by selling [Plaintiff] the VOYA policy and setting up the financing arrangement, both of which were unsuitable for her and The Brody Family Trust's insurance and financial needs." Id. ¶ 80. Plaintiff's Third Cause of Action, asserted against all defendants and entitled "Elder Abuse," alleges that Plaintiff turned sixty-two years old sometime in 2012 and was therefore an "elder" under HRS § 480-13.5 when a number of the alleged events took place.[5/] Id. ¶ 84–90.

HRS § 480-2(a) provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful." "HRS § 480-2 . . . was constructed in broad language in order to constitute a flexible tool to stop and prevent fraudulent, unfair or deceptive business practices for the protection of both honest consumers and honest business[persons]." Haw. Comm. Fed. Credit U. v. Keka, 94 Haw. 213, 228, 11 P.3d 1, 16 (2000) (latter

---

[5/] In other words, Plaintiff's Third Cause of Action is not in fact a distinct claim, but rather assert's Plaintiff's entitlement to an additional penalty of up to $10,000 for each proven violation of Hawai`i's UDAP statute should she prevail. See HRS § 480-13.5(a).

alteration in original) (citation and internal quotation marks
omitted).

In order to state a UDAP claim, a consumer[6] must
allege: (1) a violation of HRS § 480-2; (2) injury to
plaintiff's business or property resulting from such violation;
and (3) proof of the amount of damages. See Lizza v. Deutsche
Bank Nat. Trust Co., 1 F. Supp. 3d 1106, 1121 (D. Haw. 2014)
(citing Haw. Med. Ass'n v. Haw. Med. Serv. Ass'n, Inc., 113 Haw.
77, 113-14, 148 P.3d 1179, 1215-16 (2006); In re Kekauoha-Alisa,
674 F.3d 1083, 1092 (9th Cir. 2012); HRS § 480-13(b)(1)). "Any
injury must be fairly traceable to the defendant's actions." In
re Kekauoha-Alisa, 674 F.3d at 1092 (citing Flores v. Rawlings
Co., LLC, 117 Haw. 153, 167 n.23, 177 P.3d 341, 355 n.23
(2008)).

A practice is unfair when it "offends established
public policy and when the practice is immoral, unethical,
oppressive, unscrupulous[,] or substantially injurious to
consumers." Balthazar v. Verizon Haw., Inc., 109 Haw. 69, 77,
123 P.3d 194, 202 (2005) (citation and internal quotation marks
omitted).

---

[6] HRS § 480-1 defines "consumer" as "a natural person who,
primarily for primarily for personal, family, or household
purposes, purchases, attempts to purchase, or is solicited to
purchase goods or services or who commits money, property, or
services in a personal investment." Defendant SLD has not
disputed that Plaintiff is a "consumer."

"A deceptive act or practice is '(1) a representation, omission, or practice that (2) is likely to mislead consumers acting reasonably under the circumstances where (3) the representation, omission, or practice is material.' The representation, omission, or practice is material if it is likely to affect a consumer's choice." Yokoyama v. Midland Nat'l Life Ins. Co., 594 F.3d 1087, 1092 (9th Cir.2010) (quoting Courbat v. Dahana Ranch, Inc., 111 Haw. 254, 262, 141 P.3d 427, 435 (2006)). "Whether information is likely to affect a consumer's choice is an objective inquiry, 'turning on whether the act or omission is likely to mislead consumers as to information important to consumers in making a decision regarding the product or service.'" Yokoyama, 594 F.3d at 1092 (quoting Courbat, 111 Haw. at 262, 141 P.3d at 435) (some internal quotation marks omitted). "[A] failure to disclose relevant information may be actionable under [HRS § 480-2] if it is likely to mislead or deceive a reasonable customer." Soule v. Hilton Worldwide, Inc., 1 F. Supp. 3d 1084, 1093 (citing Courbat, 111 Haw. at 263, 141 P.3d at 436).

Claims asserting deceptive conduct under HRS § 480-2 are subject to Rule 9(b)'s heightened pleading standard. See Smallwood v. NCsoft Corp., 730 F. Supp. 2d 1213, 1232-33 (D. Haw. 2010). "To the extent Plaintiff is making claims under the 'unfair' prong of an unfair and deceptive practices claim that

31

are not asserting fraudulent conduct, Rule 9(b)'s heightened pleading standard does not apply." <u>Soule</u>, 1 F. Supp. 3d at 1090 (D. Haw. 2014); <u>see also</u> <u>Bald v. Wells Fargo Bank, N.A.</u>, 688 F. App'x 472, 476-77 (9th Cir. 2017) (differentiating between the pleading standards required for putatively "unfair" practices and those arising under HRS § 480-2's "deceptive" prong).

HRS § 480-13.5 defines an "elder" as "a consumer who is sixty-two years of age or older," and provides that, "[i]f a person commits a violation under [HRS §] 480-2 which is directed toward, targets, or injures an elder, a court, in addition to any other civil penalty, may impose a civil penalty not to exceed $10,000 for each violation."

### a. Plaintiff's First Cause of Action

Defendant SLD moves to dismiss Plaintiff's First Cause of Action against it, arguing that Plaintiff "fails to allege either unfair or deceptive conduct by [Defendant SLD]." Mot. at 17.

Plaintiff alleges that Defendant SLD issued the VOYA Policy, Compl. ¶ 19, 45, 53, and that the VOYA Policy had "an excessive death benefit that did not correspond to her net worth and for which she could not afford[.]" <u>Id.</u> ¶ 72.b. (Plaintiff also alleges that Defendant Salisbury misrepresented her net worth on the application for the VOYA Policy. <u>Id.</u> ¶72.c.) The Complaint further alleges that, together with the ten other

named parties, Defendant SLD violated UDAP

> by selling and arranging the financing of
> the unsuitable life insurance policy.  The
> arrangement was inherently unfair or
> deceptive because it:
> a. contained hidden charges, changing terms,
>    and undisclosed expenses and risks; and
> b. was unnecessarily complex in its terms to
>    the point that no reasonable senior
>    citizen could understand the risks and
>    benefits of the product.

Id. ¶ 73.

Plaintiff's First Cause of Action against Defendant
SLD plainly fails.  Insofar as Plaintiff is alleging deception
in "the arrangement" of the VOYA Policy and/or its premium
financing, id., she fails to allege with any particularity "the
who, what, when, where, and how of the misconduct charged,"
Vess, 317 F.3d at 1106; Rule 9(b).  And the Complaint is
otherwise devoid of any allegations (particularized or
otherwise) of misrepresentations, omissions, or deceptive
practices by Defendant SLD, as would be necessary to sustain a
UDAP claim for deception.

Likewise, Plaintiff has not identified any conduct by
Defendant SLD that could conceivably be described as "unfair."
The Court is aware of no controlling authority for the
proposition that a life insurance company must make a
suitability determination prior to issuing a life insurance

policy.[7/] Moreover, Defendant SLD makes a notable argument that Plaintiff's net worth was admittedly misstated on the application for the VOYA Policy, <u>see</u> Compl. ¶ 72.c, such that Defendant SLD's issuance of a policy that allegedly did not correspond to Plaintiff's net worth, and whose premiums she allegedly found unaffordable, should hardly be termed "unfair." And mere complexity, <u>see</u> Compl. ¶ 73.b, without more, does not "offend[] established public policy" and is not "immoral, unethical, oppressive, unscrupulous[,] or substantially injurious to consumers." <u>Balthazar</u>, 109 Haw. at 77, 123 P.3d at 202. Plaintiff's First Cause of Action against Defendant SLD is therefore dismissed.

### a. Plaintiff's Second Cause of Action

Plaintiff's Second Cause of Action, entitled "Unsuitability," alleges that all defendants "committed acts of unfair and deceptive practices . . . by selling [Plaintiff] the VOYA [P]olicy and setting up the financing arrangement, both of which were unsuitable for her and The Brody Family Trust's insurance and finance needs." Compl. ¶ 80.

Plaintiff's Second Cause of Action fails to state a

---

[7/] There is statutory authority for the imposition of a duty on insurers to make suitabiltity determinations in regard to some transactions involving annuities, but Plaintiff had not pled facts tending to show that statute's applicability in the context of the VOYA Policy and its premium financing arrangement. <u>See</u> HRS § 431:10D-623.

claim against any defendant and is dismissed as to Defendant

SLD.  As alluded to above, Plaintiff has pointed to no authority

for the proposition that a claim for the unsuitability of a life

insurance policy or a financing arrangement, absent adequately

pled allegations of commensurate deception, states a claim under

UDAP.  And here, as in much of the Complaint, Plaintiff fails to

plead deception with the required particularity.  Insofar as

Plaintiff is alleging that the defendants' actions were only

unfair, this claim contains insufficient factual detail for the

Court to find it plausible that the defendants' actions

"offend[ed] established public policy" or were "immoral,

unethical, oppressive, unscrupulous[,] or substantially

injurious to consumers," Balthazar, 109 Haw. at 77, 123 P.3d at

202.

### b. Plaintiff's Third Cause of Action

Plaintiff's Third Cause of Action for "Elder Abuse" is

not a stand-alone claim, but rather a claim for heightened civil

penalties under the UDAP statute.  See HRS § 480-13.5.  Insofar

as Plaintiff is attempting to plead her Third Cause of Action as

a claim separate and apart from her substantive UDAP claims, it

is dismissed.

### IV.  Respondeat Superior (Seventh Cause of Action)

Plaintiff's Seventh Cause of Action is entitled

"Vicarious Liability/Respondeat Superior" and is asserted

against all defendants remaining in this action.[8/]  But respondeat superior is a theory of liability rather than an independent cause of action.  Lopeti v. Alliance Bancorp, No. CV 11-00200 ACK-RLP, 2011 WL 13233545, at *15 (D. Haw. Nov. 4, 2011); see also McCormack v. City and Cty. of Honolulu, No. CIV. 10-00293 BMK, 2014 WL 692867, at *2-3 (D. Haw. Feb. 20, 2014), aff'd, 683 F. App'x 649 (9th Cir. 2017) (noting that "[c]ourts dismiss stand-alone claims for respondeat superior." (citations omitted)).

Moreover, while "[a] principal may be liable for the wrongful acts of its agent that occur while [the agent is] acting within the scope of the agency," Lopeti, 2011 WL 13233545, at *15, "'[v]icarious liability under the respondeat superior doctrine ordinarily requires some kind of employment relationship or other consensual arrangement under which one person agrees to act under another's control,'" State v. Hoshijo ex rel. White, 102 Haw. 307, 319, 76 P.3d 550, 562 (2003) (quoting Dan B. Dobbs, The Law of Torts, § 335, at 910 (2000)) (emphasis in Hoshijo).

Plaintiff's Seventh Cause of Action cannot survive as a standalone claim.  And to the extent Plaintiff's Seventh Cause

_____

[8/] The Seventh Cause of Action does not name Accelerated Estate Planning, LLC, which has been dismissed from this action without prejudice.  ECF No. 101.

of Action merely iterates a theory of liability as against Defendant SLD, it fails in that regard as well. Plaintiff alleges that Defendant SLD is vicariously liable for the actions of Defendants Bellini, Diyanni, and Salisbury. Compl. ¶¶ 115–17. But the Court has dismissed all claims against Defendant Bellini in a separate order, see ECF No. 142, and the Complaint is devoid of any factual allegations tending to show that any agency relationship existed between Defendant SLD and either Defendant Diyanni or Defendant Salisbury. See Hoshijo, 102 Haw. at 319, 76 P.3d at 562.

Plaintiff's Seventh Cause of Action is dismissed as to Defendant SLD.

## V. Federal Civil RICO (Tenth and Eleventh Causes of Action)

Plaintiff's Tenth and Eleventh Causes of Action, asserted against all defendants, arise out of the Racketeer Influenced and Corrupt Organizations Act ("federal civil RICO"). In her Tenth Cause of Action, Plaintiff asserts that "Defendants have intentionally participated in at least one of two schemes to defraud [Plaintiff] of her money" [9] in violation of 18 U.S.C.

---

[9] Plaintiff identifies two enterprises and alleges that each "market[ed] and s[old] unsuitable financial products to [Plaintiff] while concealing the true nature of the products[.]" Compl. ¶ 130. Plaintiff alleges that the "VOYA Enterprise" operated "[w]ith respect to the VOYA [P]olicy and the premium financing arrangement associated with" the Policy, and was made up of the Salisbury Defendants, Accelerated Estate Planning, LLC (Continued . . .)

§ 1962(c).  Compl. ¶ 128; see also id. ¶ 127, 129–151.

Plaintiff's Eleventh Cause of Action alleges that all defendants

conspired, in one of two enterprises or schemes, to violate 18

U.S.C. § 1962(c) and "defraud" Plaintiff of her money, in

violation of 18 U.S.C. § 1962(d).

Under 18 U.S.C. § 1962(c), it is illegal "for any

person employed by or associated with any enterprise engaged in,

or the activities of which affect, interstate or foreign

commerce, to conduct or participate, directly or indirectly, in

the conduct of such enterprise's affairs through a pattern of

racketeering activity or collection of unlawful debt."  A

private right of action for federal civil RICO violations is

provided in 18 U.S.C. § 1964(c).  And under 18 U.S.C. § 1962(d),

it is illegal "for any person to conspire to violate" 18 U.S.C.

§ 1962(a), (b), or (c).

"To prevail on a civil RICO claim, a plaintiff must

prove that [each] defendant engaged in (1) conduct (2) of an

enterprise (3) through a pattern (4) of racketeering activity

and, additionally, must establish that (5) the defendant caused

_____

(. . .)
(which has now been dismissed), and Defendants Claraphi, NAM,
Diyanni, Lake Forest, Wintrust, ACA, SLD, and Bellini.  Id. ¶
130a.  Plaintiff further alleges that the "Annuities
Enterprise," which operated "[w]ith respect to the annuity
churning scheme[,]" comprised the Salisbury Defendants,
Accelerated Estate Planning, LLC, and Defendants Claraphi and
NAM.  Id. ¶ 130b.

injury to plaintiff's business or property." Chaset v.
Fleer/Skybox Int'l, LP, 300 F.3d 1083, 1086 (9th Cir. 2002)
(citing 18 U.S.C. §§ 1962(c), 1964(c)). Regarding the fifth
element, "[a] plaintiff must show that the defendant's RICO
violation was not only a 'but for' cause of his injury, but that
it was a proximate cause as well." Oki Semiconductor Co. v.
Wells Fargo Bank, Nat. Ass'n, 298 F.3d 768, 773 (9th Cir. 2002)
(citing Holmes v. Sec. Inv'r Prot. Corp., 503 U.S. 258, 268-69
(1992)). "Some 'direct relationship' between the injury asserted
and the injurious conduct is necessary." Oki Semiconductor Co.,
298 F.3d at 773 (quoting Holmes, 503 U.S. at 269). "To
establish proximate cause, plaintiffs must show that their
injury flows directly from the defendants' commission of the
predicate acts." Pedrina v. Chun, 906 F. Supp. 1377, 1415 (D.
Haw. 1995) (citation omitted).

    "'[T]o conduct or participate, directly or indirectly,
in the conduct of such enterprise's affairs,' § 1962(c), one
must participate in the operation or management of the
enterprise itself." Reves v. Ernst & Young, 507 U.S. 170, 185
(1993). "[O]ne must have some part in directing [the
enterprise's] affairs." Id. at 179.

    For purposes of federal civil RICO, an "enterprise"
includes "any individual, partnership, corporation, association,
or other legal entity, and any union or group of individuals

                            39

associated in fact although not a legal entity." 18 U.S.C. § 1961(4).  To show an associated-in-fact enterprise, a plaintiff must plead three elements: (1) common purpose; (2) an "ongoing organization," either formal or informal; and (3) that "the various associates function as a continuing unit." Odom v. Microsoft Corp., 486 F.3d 541, 552 (9th Cir. 2007) (citing United States v. Turkette, 452 U.S. 576, 583 (1981)).

A "pattern ... requires at least two acts of racketeering activity," 18 U.S.C. § 1961(5), and "also requires proof that the racketeering predicates are related and 'that they amount to or pose a threat of continued criminal activity.'" Turner v. Cook, 362 F.3d 1219, 1229 (9th Cir. 2004) (quoting H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 237–38 (1989).  And racketeering activity "is any act indictable under various provisions of 18 U.S.C. § 1961 and includes the predicate acts alleged in this case of mail fraud and wire fraud under 18 U.S.C. §§ 1341 and 1343." Forsyth v. Humana, Inc., 114 F.3d 1467, 1481 (9th Cir. 1997), overruled on other grounds by Lacey v. Maricopa Cty., 693 F.3d 896 (9th Cir. 2012) (en banc).

With respect to mail and wire fraud, Plaintiff must allege the following elements: "(1) formation of a scheme or artifice to defraud; (2) use of the United States mails or wires, or causing such a use, in furtherance of the scheme; and (3) specific intent to deceive or defraud." Sanford v.

MemberWorks, Inc., 625 F.3d 550, 557 (9th Cir. 2010) (citation omitted).  Under Rule 9(b), "[w]hile the elements of knowledge and intent may be averred generally, the factual circumstances of the fraud itself require particularized allegations." Queen's Med. Ctr. v. Kaiser Found. Health Plan, Inc., 948 F. Supp. 2d 1131, 1158 (D. Haw. 2013) (citing Sanford, 625 F.3d at 558); but see Puri v. Khalsa, 674 F. App'x 679, 687 (9th Cir. 2017) (noting that where facts are peculiarly within opposing parties' knowledge, pleading fraud on information and belief is permissible when such pleading is accompanied by a statement of the facts upon which the belief is founded).

To state a claim for conspiracy to violate RICO under § 1962(d), a plaintiff must allege "either an agreement that is a substantive violation of RICO or that the defendants agreed to commit, or participated in, a violation of two predicate offenses." Howard v. Am. Online, Inc., 208 F.3d 741, 751 (9th Cir. 2000).  "The illegal agreement need not be express as long as its existence can be inferred from the words, actions, or interdependence of activities and persons involved." Oki Semiconductor Co. v. Wells Fargo Bank, 298 F.3d 768, 775 (9th Cir. 2002).  Under § 1962(d), while a conspiracy defendant need not have personally committed a predicate act, or even an overt act in furtherance of the RICO conspiracy, the defendant must be "aware of the essential nature and scope of the enterprise and

intended to participate in it." <u>Baumer v. Pachl</u>, 8 F.3d 1341, 1346 (9th Cir. 1993). "[T]he failure to adequately plead a substantive violation of RICO precludes a claim for conspiracy." <u>Howard v. Am. Online Inc.</u>, 203 F.3d 741, 751 (9th Cir. 2000).

Defendant SLD contends that Plaintiff's Tenth Cause of Action fails in that: (1) No "common purpose" of the alleged VOYA Enterprise is pled, Mot. at 23–24; (2) no structure or organization is alleged, <u>see</u> <u>id.</u> at 24; (3) the Complaint does not allege that Defendant SLD committed any predicate act, <u>id.</u> at 26; (4) the allegations do not establish that any predicate act by Defendant SLD proximately harmed Plaintiff, <u>id.</u> at 25–27; and (5) the Complaint fails to allege longevity, i.e., how the VOYA Enterprise functioned as a continuing unit, <u>see</u> <u>id.</u> at 24–25. Defendant SLD further argues that Plaintiff's Eleventh Cause of Action fails along with her Tenth. Mot. at 27.

The Court concurs with Defendant SLD that Plaintiff's Tenth and Eleventh Causes of Action against it must be dismissed. First, Plaintiff has failed to adequately allege a "common purpose." The Complaint alleges that the VOYA Enterprise had "the common or shared purpose of continuing to profit from the unsuitable life insurance policy and premium financing arrangement, which was designed to be deceptive and induce [Plaintiff] to enter the financial transactions with the members of the VOYA Enterprise to her detriment." Compl. ¶ 131. But

without the conclusory labels and "adjectives, the allegations allege conduct consistent with ordinary business conduct and an ordinary business purpose," In re Jamster Mktg. Litig., No. 05CV0819 JM (CAB), 2009 WL 1456632, at *5 (S.D. Cal. May 22, 2009); cf. Odom, 486 F.3d at 543 (finding a RICO enterprise's common purpose was adequately pled where the complaint alleged specific facts demonstrating defendants worked together and describing the fraudulent means used to carry out the scheme).

Additionally, although "there is no additional requirement that [an associated-in-fact] enterprise have an 'ascertainable structure,'" Odom, 486 F.3d at 551–52, Plaintiff has failed to adequately allege an ongoing organization. An ongoing organization is "a vehicle for the commission of two or more predicate crimes," id., and Plaintiff has failed to adequately allege the commission of any predicate crimes. The Complaint alleges that "[m]any of the precise dates for the VOYA Enterprise['s] . . . fraudulent uses of the U.S. Mail and wire facilities have been deliberately hidden and cannot be alleged without access to Defendants' books and records." Compl. ¶ 148. But even under a relaxed standard, Plaintiff's allegations of the predicate acts of mail and wire fraud are wanting. Plaintiff not only fails to allege "precise dates," she fails to

allege any dates at all,[10/] and indeed to state which defendants are alleged to have committed which predicate acts.  As iterated, the Complaint's RICO allegations leave both the Court and the defendants in the dark as to who is alleged to have done what, when, and how many times.[11/] [12/]

---

[10/] Some of the allegations concerning the VOYA Enterprise's predicate acts may, with some searching, be linked to dates iterated earlier in the Complaint.  See, e.g., Compl. ¶¶ 148.a.i (alleging "[p]rocessing documents to establish the ILIT" as a predicate act), 51–53 (indicating that the ILIT was established in or around March–April 2016).  Others, although almost certainly not exclusively within defendants' knowledge, do not appear in the Complaint's seventy-five pages to have any dates attached to them.  See, e.g., id. ¶ 148.a.iv (alleging "processing premium payments for the policy" as a predicate act).  The Court expects that any amended complaint will lay out its allegations in a far more orderly fashion so that neither the Court nor the defendants need undertake a searching review of the Complaint's entirety in order to make sense of individual claims or allegations.

[11/] The Court also notes that Plaintiff fails to allege that any of the alleged predicate acts was undertaken with a specific intent to defraud.

[12/] Defendant SLD appears to contend that the Complaint's failure to allege the commission of any predicate acts by Defendant SLD is fatal to Plaintiff's § 1962(c) claim against it.  See Mot. at 26.  The Court disagrees.  Although some district courts in this Circuit have taken Defendant SLD's preferred approach, see, e.g., Comm. to Protect Our Agric. Water v. Occidental Oil & Gas Corp., 235 F. Supp. 3d 1132, 1177 (E.D. Cal. 2017); In re WellPoint, Inc. Out-of-Network UCR Rates Litig., 903 F. Supp. 2d 880, 914 (C.D. Cal. 2012), the Ninth Circuit has made clear that "[a] knowing participant in a scheme to defraud is vicariously liable for substantive acts of mail fraud or wire fraud committed by co-schemers," U.S. v. Stapleton, 293 F.3d 1111, 1116–17 (9th Cir. 2002); see also In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Practices, & Prod. Liab. Litig., 295 F. Supp. 3d 927, 979 (N.D. Cal. 2018).  Here, however, Plaintiff has failed to allege that Defendant SLD had specific intent to defraud and was a knowing participant in the scheme to defraud.

This is not a corporate fraud case, which the Ninth
Circuit has recognized as an appropriate circumstance in which
to relax Rule 9(b)'s particularity requirement with respect to
the allegedly fraudulent conduct of each individual.  See, e.g.,
Moore, 885 F.2d at 540; Wool, 818 F.2d at 1440.  Nor does this
appear to be a case in which all defendants "are alleged to have
engaged in precisely the same conduct." United States v. United
Healthcare Ins. Co., 848 F.3d 1161, 1184 (9th Cir. 2016).  Even
those allegations of predicate acts whose actors one would
expect Plaintiff to be able to allege with relative ease are
alleged generally, presumably against all defendants named in
the enterprise.  See, e.g., Compl. ¶ 148.a.i, 148.a.ii.

> Rule 9(b) serves three purposes: (1) to
> provide defendants with adequate notice to
> allow them to defend the charge and deter
> plaintiffs from the filing of complaints "as
> a pretext for the discovery of unknown
> wrongs"; (2) to protect those whose
> reputation would be harmed as a result of
> being subject to fraud charges; and (3) to
> "prohibit [ ] plaintiff[s] from unilaterally
> imposing upon the court, the parties and
> society enormous social and economic costs
> absent some factual basis."

Kearns v. Ford Motor Co., 567 F.3d 1120, 1125 (9th Cir. 2009)
(quoting In re Stac Elecs. Sec. Litig., 89 F.3d 1399, 1405 (9th
Cir.1996)) (alterations in Kearns).  To relax Rule 9(b)'s
strictures in some circumstances is not to eliminate them
entirely, as the Rule's underlying purposes remain.  Given her

failure to allege the predicate acts of mail and wire fraud with sufficient specificity—on information and belief or otherwise—Plaintiff's Tenth Cause of Action cannot stand.

But for Plaintiff's failure to adequately allege any predicate acts, the Court might disagree with Defendant SLD that the Complaint utterly fails to allege longevity/continuity. <u>See</u> Mot. at 24. "'Continuity' is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." <u>H.J. Inc. v. Nw. Bell Tel. Co.</u>, 492 U.S. 229, 241 (1989) (citation omitted). Defendant SLD argues that Plaintiff's allegations concerning the VOYA Enterprise's activities "begin on March 26, 2016 and end[] in April 2016, when the Policy issued," Mot. at 24-25 (citing Compl. ¶¶ 51-54), but, with some searching, the Court can discern the Complaint's attempts at alleging continuity: In addition to alleging, in a conclusory fashion, that "[t]he VOYA Enterprise has had an ongoing and continuous existence since shortly before the Policy Date," Compl. ¶ 135, the Complaint identifies the "processing [of] premium payments for the policy" as a predicate act, <u>id.</u> ¶ 148.a.iv, and prays, <u>inter alia</u>, for the relief of "rescission of the VOYA Policy as well as the agreements associated with the premium financing arrangement," <u>id.</u> Prayer for Relief ¶ g, which indicates that the VOYA Policy,

its premium financing arrangement, and possibly any RICO predicate acts may be ongoing. From this mosaic, it might be possible to construct a picture of "past conduct that by its nature projects into the future with a threat of repetition," H.J. Inc., 492 U.S. at 241—but, as iterated previously, the Court expects that any amended complaint will set forth all of Plaintiff's claims, including her federal RICO claim, with far more care and precision.

The Court also finds that, having failed to adequately allege any predicate acts, Plaintiff has failed to allege that her injuries were proximately caused by those predicate acts. Finally, and although Defendant SLD does not so argue, the Court notes that the Complaint does not allege with sufficient specificity that Defendant SLD "participate[d] in the operation or management of the enterprise itself"—that is, had any "part in directing [the enterprise's] affairs." Reves, 507 U.S. at 179, 185.

Plaintiff's Tenth Cause of Action against Defendant SLD is therefore dismissed, and her Eleventh Cause of Action must fall with the Tenth. Howard, 203 F.3d at 751.[13]

---

[13] Local Rule 33.1 currently provides that any party defending against a RICO claim may move for an order requiring the claimant to file and serve a RICO discovery statement. The Court notes, however, that amendments to the Local Rules are apparently currently being considered, and that the requirements (Continued . . .)

## VI.  Hawai`i RICO (Twelfth Cause of Action)

Plaintiff's Twelfth Cause of Action asserts that all defendants have "engaged in 'racketeering activity' by committing or aiding and abetting in the commission of at least one act of racketeering activity, i.e., violations of the Hawai`i Unfair and Deceptive Acts Trade Practices Act . . . . Therefore, the Defendants have violated [HRS] § 842-2(3)." Compl. ¶ 163.

HRS § 842-2(3) ("Hawai`i RICO") makes it unlawful "[f]or any person employed by or associated with any enterprise to conduct or participate in the conduct of the affairs of the enterprise through racketeering activity or collection of an unlawful debt."  HRS § 842-8(c) creates a private right of action for "[a]ny person injured in the person's business or property by reason of" a RICO violation.

"[T]he most useful source in interpreting HRS § 842-2(3) is federal law. . . . [F]ederal law is an important aid to construction because HRS § 842-2 was derived from the federal Racketeer Influenced and Corrupt Organizations (RICO) statute." State v. Ontai, 84 Haw. 56, 61, 929 P.2d 69, 74 (1996).  "The only material differences between the two statutes are the

---

(. . .)
of what is now Local Rule 33.1 may in the future be included in magistrate judges' discovery or Rule 16 orders.

[federal statute's] references to 'interstate or foreign commerce' and 'pattern of racketeering activity.'" Id. & n.8 ("The reference to 'interstate or foreign commerce' is due to the requirements of the Commerce Clause of the United States Constitution. See U.S. Const. art. I, § 8. The reference to a 'pattern of racketeering activity' is due to the fact that the federal statute requires at least two acts of racketeering activity. 18 U.S.C. § 1961(5) (1994). The Hawai'i statute only requires one act. HRS § 842-1[.]").

Therefore, and in light of the differences between 18 U.S.C. § 1962(c) and HRS § 842-2(3), a plaintiff bringing a Hawai`i civil RICO claim "must prove that the defendant engaged in (1) conduct (2) of an enterprise (3) through a[n act] (4) of racketeering activity and, additionally, must establish that (5) the defendant caused injury to plaintiff's business or property." Chaset, 300 F.3d at 1086 (9th Cir. 2002); see, e.g., DeRosa v. Ass'n of Apartment Owners of the Golf Villas, 185 F. Supp. 3d 1247, 1262 (D. Haw. 2016), as amended (Aug. 31, 2016) (importing the elements of federal civil RICO into a claim under HRS § 842-2(3)); see also HRS § 842-8(c).

For purposes of HRS § 842-2(3),

> "[r]acketeering activity" means any act or
> threat involving but not limited to murder,
> kidnapping, gambling, criminal property
> damage, robbery, bribery, extortion, labor
> trafficking, theft, or prostitution, or any

dealing in narcotic or other dangerous drugs
                    that is chargeable as a crime under state
                    law and punishable by imprisonment for more
                    than one year.

HRS § 842-1.

        Defendant SLD moves to dismiss Plaintiff's Twelfth

Cause of Action against it on the grounds that it is derivative

of her UDAP claims, which Defendant contends fail.  Mot. at 21.

        The Court finds that dismissal of Plaintiff's Twelfth

Cause of Action against Defendant SLD is proper.  In addition to

the infirmities identified above as the existence of an

enterprise and "conduct" of an enterprise, the Court finds that

Plaintiff has not sufficiently alleged any "racketeering

activity." Plaintiff cites to no authority, and the Court can

locate none, to support the proposition that a violation of

Hawai`i's UDAP statute, by itself, constitutes "racketeering

activity."  The dearth of any such authority is to be expected;

as the Hawai`i Supreme Court has noted, "the legislative history

underlying HRS § 842-2 provides that '[t]he purpose of [the]

bill [was] to curtail organized crime activity in Hawaii.'"

Bates, 84 Haw. at 222, 933 P.2d at 59 (citing Hse. Stand. Comm.

Rep. No. 668-72, in 1972 House Journal, at 967; Sen. Stand.

Comm. Rep. No. 492-72, in 1972 Senate Journal, at 956; Hse.

Stand Comm. Rep. No. 728-72, in 1972 House Journal, at 1006)

(emphasis added); see also 18 U.S.C. § 1961(1) (listing as

                                50

predicate acts, for the purposes of federal RICO, "chargeable," "indictable," and "punishable" offenses).

To the extent Plaintiff intends the predicate acts asserted in connection with her federal RICO claims to serve as the predicate acts here, the Court finds that those allegations are insufficient for the reasons detailed above. In sum, the Complaint identifies no crime, either listed in HRS § 842-1 or otherwise, that Defendant SLD is supposed to have committed or aided and abetted.[14/] In other words, even if Plaintiff's UDAP Causes of Action were adequately pled against Defendant SLD, her Twelfth Cause of Action against it would still fail, devoid as the Complaint is of allegations of any predicate acts of "racketeering activity."

Plaintiff's Twelfth Cause of Action is dismissed as against Defendant SLD.

## VII. Plaintiff is Granted Leave to Amend

Plaintiff requests leave to amend her Complaint to correct any deficiencies. Opp. at 30–31. Because Plaintiff may be able to cure the Complaint's defects via amendment, leave to amend is granted, and the Causes of Action dismissed herein are

---

[14/] By contrast, Plaintiff alleges that the Salisbury Defendants, Defendant NAM, and Defendant Claraphi engaged in "racketeering activity" by either committing or aiding and abetting in the commission of not just UDAP violations, but also theft. Compl. ¶ 166–67.

dismissed without prejudice. *See* OSU Student All., 699 F.3d at 1079; Vess, 317 F.3d at 1107.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant SLD's Motion for Judgment on the Pleadings, ECF No. 95, insofar as it seeks dismissal of all of Plaintiff's claims against Defendant SLD. Those claims are dismissed without prejudice. Any amended complaint must be filed within thirty days of the issuance of this Order.

IT IS SO ORDERED.

DATED: Honolulu, Hawai`i, May 14, 2019.

_____
Alan C. Kay
Sr. United States District Judge

Ryan v. Salisbury et al., Civ. No. 18-406 ACK-RT, Order Granting Defendant Security Life of Denver's Motion for Judgment on the Pleadings.