IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAI'I

KATHY RYAN, INDIVIDUALLY, AND IN
HER CAPACITY AS TRUSTEE OF THE
BRODY FAMILY TRUST;

       Plaintiff,

    vs.

CHRISTOPHER S. SALISBURY;  C.
SALISBURY, LLC; CLARAPHI ADVISORY
NETWORK, LLC; MICHAEL DIYANNI;
AURORA CAPITAL ALLIANCE; SECURITY
LIFE OF DENVER INSURANCE COMPANY;
and ALEJANDRO ALBERTO BELLINI,

       Defendants.

CIV. NO. 18-00406 ACK-RT

## ORDER GRANTING DEFENDANT SECURITY LIFE OF DENVER INSURANCE COMPANY'S MOTION FOR JUDGMENT ON THE PLEADINGS

      This case involves allegations of a fraudulent and unlawful scheme through which Defendant Chris Salisbury ("Defendant Salisbury") and—to varied extents—the other Defendants caused Plaintiff to sustain financial losses in connection with her investments in several annuities and life insurance policies.  For its role, Security Life of Denver Insurance Company ("Security Life") is alleged to have issued a life insurance policy, which was purchased through a complex "premium financing arrangement" orchestrated by Defendant Salisbury and certain other Defendants.

      The Court previously dismissed Plaintiff's claims against Security Life, after which Plaintiff amended her lawsuit

1

to allege a single cause of action against Security Life under Hawai'i's Unfair and Deceptive Acts or Trade Practices Act ("UDAP"), Haw. Rev. Stat. ("HRS") §§ 480-1 et seq. Now before the Court is Security Life's second Motion for Judgment on the Pleadings ("Motion"), ECF No. 169. For the reasons set forth below, the Court GRANTS Defendant Security Life's Motion insofar as it seeks dismissal of the sole claim against Security Life.

## PROCEDURAL BACKGROUND

Plaintiff, proceeding both individually and in her capacity as trustee of the Brody Family Trust, filed a complaint (the "Original Complaint") on October 23, 2018, ECF No. 1. As against Security Life, Plaintiff asserted seven causes of action, all of which were dismissed without prejudice in this Court's May 14, 2019 Order Granting Defendant Security Life of Denver's Motion for Judgment on the Pleadings ("Order"), ECF No. 146.

Thereafter, Plaintiff amended her complaint (the "Amended Complaint"), ECF No. 158, to assert a single cause of action against Security Life under UDAP. Am. Compl. ¶¶ 61-79. Security Life filed an answer, ECF No. 160, on July 12, 2019, and then filed the instant Motion on August 13, 2019. Plaintiff filed her Opposition on September 24, ECF No. 185, and Security Life filed its Reply on October 1, ECF No. 186. The Court heard oral arguments on the Motion on October 15, 2019.

## FACTUAL BACKGROUND

A detailed discussion of the factual allegations in this case may be found in the Court's May 14, 2019 Order dismissing the Original Complaint. Now before the Court is Security Life's second Motion, which seeks dismissal of the Amended Complaint on many of the same grounds. The Amended Complaint contains largely the same factual allegations previously alleged in the Original Complaint, with some additions. The Court will address those additions here, and it otherwise incorporates the factual background set forth in the prior Order to the extent that the facts are likewise alleged in the Amended Complaint.

## I.   Overview of Factual Allegations

The Amended Complaint involves two distinct sets of allegedly unlawful activity. Because Security Life is alleged to have participated in just one, it is helpful to begin by separating the allegations accordingly.

First, the Amended Complaint alleges that Defendant Salisbury, Plaintiff's financial advisor of many years, orchestrated a "churning scheme" designed to increase his own commissions while Plaintiff sustained significant losses. Am. Compl. ¶¶ 2, 21-39. Plaintiff alleges that Defendant Salisbury invested Plaintiff's money and/or that of The Brody Family

Trust[1] into various annuities and then had Plaintiff surrender the annuities and move the money, all with the promise of equal or greater earnings. Id. ¶¶ 21-22. The Amended Complaint includes a non-exhaustive list of at least ten examples of annuity transactions involved in the annuity churning scheme. Id. ¶¶ 28-35. The Amended Complaint expressly does not implicate Security Life in the "annuity scheme." In fact, it clarifies that Security Life is not responsible for "Salisbury's conduct related to the annuity churning scheme." See id. ¶ 15 n.3.

That brings us to the second category of conduct, relevant to Security Life. Separate from the annuity churning, the Amended Complaint alleges wrongdoing in connection with the brokering and sale of a life insurance policy. See Am. Compl. ¶¶ 40-60. Specifically, Defendants allegedly defrauded Plaintiff by encouraging her to purchase "unsuitable" insurance that she did not need and could not afford, through an associated premium financing arrangement with negative financial consequences. See id. ¶¶ 55, 45-47, 59-60.

Security Life is alleged to have issued a $2.5 million life insurance policy (the "VOYA Policy") to the Kathy Ryan

---

[1] The Brody Family Trust (the "Brody Trust") was created on February 9, 1993, before her relationship with Defendant Salisbury began, with Plaintiff serving as the trustee. Am. Compl. ¶ 19.

Irrevocable Trust (the "Ryan Trust").[2/]  Am. Compl. ¶¶ 42, 50.

The annual scheduled premium was $160,000, which, according to

Plaintiff, was "well over the minimum monthly premium of

$3,072.22 to maintain the policy."  Id.  The VOYA Policy was

issued with an "excessive death benefit" that was allegedly

inconsistent with Plaintiff's net worth and which she could not

afford.  Id. ¶¶ 45, 71.  Security Life—and to some degree the

Amended Complaint—attributes the value and structure of the

Policy to an apparent misrepresentation in the Application as to

Plaintiff's net worth.  Id. ¶ 46; see also ECF No. 72-3.

Plaintiff alleges that she expressed concerns to

Defendant Salisbury about the VOYA Policy's value, but that

Defendant Salisbury advised her that the Policy would assist her

children with payment of estate taxes after she passed away.

Am. Compl. ¶ 45.  According to Plaintiff, however, Defendant

Salisbury failed to advise her that "very little, if any, of her

net worth would be subject to estate taxes."  Id.  To finance

the VOYA Policy, Defendant Salisbury—with the assistance of

Defendants Michael Diyanni, Aurora Capital Alliance ("Aurora

Capital"), Claraphi Advisory Network, LLC ("Claraphi"), and

Bellini—arranged a "complex financing arrangement" under which

Plaintiff was told she would never need to personally make

payments on the Policy.  Id. ¶¶ 42-43.  The Ryan Trust was

---

[2/]  The Ryan Trust is not a party to this lawsuit.  See gen. Am. Compl.

created instead, and Plaintiff assigned the VOYA Policy and another annuity as collateral for a loan funded by lender First Insurance Funding (now Lake Forest).[3/] Id. ¶¶ 3-4, 49, 51-53.

Plaintiff was later advised that the note was in default. Am. Compl. ¶ 56. Plaintiff contacted VOYA, which advised her that it could not speak to her as she was not the owner of the Policy.[4/] Id. ¶ 57. To cure the default, Defendant Salisbury allegedly instructed Plaintiff to wire $37,000 to First Insurance Funding and Lake Forest to secure the loan and avoid default, which she did. Id. Plaintiff now alleges that this payment was inconsistent with Defendant Salisbury's representation that she would not need to make personal payments on the VOYA Policy. Id. ¶ 59.

To summarize, the lawsuit alleges three primary allegations against Security Life: (1) that Security Life issued the VOYA Policy, Am. Compl. ¶¶ 42, 50, 76; (2) that Security Life was misled by Defendant Salisbury about Plaintiff's net worth, id. ¶ 46; and (3) that a representative of Security Life told Plaintiff that it could not speak with her about the Policy because Mr. Diyanni—as trustee of the Ryan Trust—was the Policy's owner, not Plaintiff, id. ¶ 57. To

---

[3/] Plaintiff alleges that that assignment was "fraudulently procured" because it was dated and notarized on a date Plaintiff was not on the United States mainland. Am. Compl. ¶ 54.

[4/] Michael Diyanni was listed as the trustee of the Ryan Trust, which in turn is the owner of the Policy. See Am. Compl. ¶ 4.

support her UDAP theory, Plaintiff asserts that "[l]ike
annuities, high dollar or 'large case' life insurance policies
should only be sold to consumers when they are 'suitable' for
the consumer's financial needs, situation, and goals." Id. ¶
44; see also id. ¶ 59 (alleging that Plaintiff was harmed by the
VOYA Policy and financing agreement because the Policy was "an
unsuitable financial product in light of the excessive death
benefit and premiums exceeding her ability to pay, which was
known to Defendants at the time they initiated and/or approved
the transaction").

## II.  Additional Allegations Raised in Amended Complaint

The annuity churning scheme and the circumstances
surrounding the issuance of the VOYA Policy and associated
financing arrangement are alleged in the Amended Complaint in
largely the same way they were framed in the Original Complaint.
The only additional allegations specifically mentioning Security
Life are various agency allegations, through which Plaintiff
attempts to implicate Security Life for the actions of other
individual Defendants.  As the Court sees it, the Amended
Complaint differs from the Original Complaint in four ways:

First, the Amended Complaint alleges that the Allianz
Annual Fixed Index Annuity #XXX 9437, which Plaintiff assigned
as collateral for financing, has been surrendered since the
Original Complaint was filed.  Am. Compl. ¶ 53.  Second, the

Amended Complaint is restructured to allege one cause of action under UDAP, which incorporates the allegations of "unsuitability" and "Elder" status that previously made up three separate causes of action in the Original Complaint. Compare Am. Compl. ¶¶ 61-79 (first cause of action), with Orig. Compl. ¶¶ 64-90 (first, second, and third causes of action). Next, more substantively, the Amended Complaint adds two paragraphs attempting to clarify the scheme, associated misrepresentations, and legal theory related to the annuity churning scheme. Am. Compl. ¶¶ 37, 66.[5/]

And finally, most relevant to Security Life, the Amended Complaint adds further allegations as to Security Life's purported liability for the actions of other Defendants. See, e.g., Am. Compl. ¶¶ 10, 16, 39, 64. In the Original Complaint, Plaintiff had broadly alleged that "Security Life of Denver is liable for its own acts and the acts and omissions of Defendants Salisbury, Diyanni, Alejandro Alberto Bellini, and/or its appointed agents who participated in the sale of the policy." Orig. Compl. ¶ 19; see also id. ¶ 15.

_____

[5/] These allegations do not appear to target Security Life. They are directed at the "Salisbury Defendants" and their participation in the annuity churning scheme, for which—the Amended Complaint makes clear—Security Life is not alleged to be responsible. See Am. Compl. ¶ 15 n.3 ("Defendant Security Life of Denver's liability for the acts and omissions of Defendant Salisbury is limited to those acts and omissions by Salisbury related to the VOYA policy and premium financing arrangement. Plaintiff does not claim that Security Life of Denver is liable for Salisbury's conduct related to the annuity churning scheme.").

Plaintiff takes this theory and repeats it several times throughout the Amended Complaint in an apparent attempt to clarify the agency relationship between Security Life and Defendants Salisbury and Bellini. For example, the Amended Complaint references "VOYA's financing disclosure and acknowledgment form," ECF No. 72-1 (the "Acknowledgment"), and the VOYA Policy's application (the "Application"), ECF No. 72-3, on which Defendant Salisbury apparently signed as an "agent" or "writing agent."[6] Am. Compl. ¶ 10 n.1.

Likewise, the Amended Complaint asserts that Defendant Salisbury acted "under the direction and control of Security Life of Denver" and that Defendant Bellini acted "within the scope of, and in the course of his employment with, or under the direction and control of Security Life Denver and/or Aurora Capital." Am. Compl. ¶ 16. According to the Amended Complaint, Security life "retained the right to control, direct, and/or manage" these Defendants and "knew of and authorized" Salisbury's and Bellini's positions as "life insurance sales agent[s] with the ability and authority to sell the life insurance policy in question, and to engage in the premium financing arrangement." Id. ¶¶ 10, 16; see also id. ¶ 39.

---

[6] The Court notes that the text and signatures on both forms are largely illegible. The Amended Complaint also asserts "[u]pon information and belief," that Salisbury is listed as a "writing agent" of the VOYA Policy and that he was acting "[i]n his capacity as a writing agent and/or as an agent of Security Life of Denver." Am. Compl. ¶ 10.

Accordingly, the Amended Complaint asserts that, "under the doctrines of vicarious liability and respondeat superior, Defendant Security Life of Denver is liable for the wrongful acts committed by those under its control, direction, or management." Id. ¶¶ 10, 16; see also id. ¶ 39.

The Amended Complaint also assigns certain actions by Salisbury to Security Life. For example, while Salisbury's conduct of concealing "substantial information" from Plaintiff about the transactions at issue had been alleged in the Original Complaint, Orig. Compl. ¶ 67, the Amended Complaint clarifies that Salisbury was acting "[i]n his capacity as [Plaintiff]'s investment advisor and financial planner and/or as an agent for Security Life of Denver," Am. Compl. ¶ 64.

Other than these few additions, the Amended Complaint is largely identical in substance to the Original Complaint.

**STANDARDS**

**I.   Rule 12(c)**

Under Federal Rule of Civil Procedure ("Rule") 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." The pleadings are closed once a complaint and an answer have been filed, assuming that there is no counterclaim or cross-claim. Doe v. United States, 419 F.3d 1058, 1061 (9th Cir. 2005).

A motion brought under Rule 12(c) is "functionally

identical" to one brought pursuant to Rule 12(b), and "the same
standard of review applicable to a Rule 12(b) motion applies to
its Rule 12(c) analog." <u>Dworkin v. Hustler Magazine Inc.</u>, 867
F.2d 1188, 1192 (9th Cir. 1989); <u>see also</u> <u>Rutenschroer v. Starr</u>
<u>Seigle Commc'ns, Inc.</u>, 484 F. Supp. 2d 1144, 1147–48 (D. Haw.
2006) ("If procedural defects are asserted in a Rule 12(c)
motion, the district court will apply the same standards for
granting the appropriate relief or denying the motion as it
would have employed had the motion been brought prior to the
defendant's answer under Rules 12(b)(1), 12(b)(6), [or]
12(b)(7)." (citing 5C Charles Alan Wright & Arthur R. Miller,
Federal Practice and Procedure § 1367 (3d ed. 2004))).

Judgment on the pleadings under Rule 12(c) is limited
to material included in the pleadings, as well documents
attached to the complaint, documents incorporated by reference
in the complaint, and matters of judicial notice, unless the
Court elects to convert the motion into one for summary
judgment.[7/] <u>Yakima Valley Mem'l Hosp. v. Dep't of Health</u>, 654
F.3d 919, 925 n.6 (9th Cir. 2011); <u>United States v. Ritchie</u>, 342
F.3d 903, 908 (9th Cir. 2003). Rule 12(d) gives the Court
"discretion to accept and consider extrinsic materials offered
in connection with these motions, and to convert the motion to

_____

[7/] There is some dispute within this Circuit as to whether or not an
exhibit attached to an answer is properly considered on a motion for judgment
on the pleadings. <u>See</u> Order 24-28.

one for summary judgment when a party has notice that the district court may look beyond the pleadings." <u>Hamilton Materials, Inc. v. Dow Chem. Corp.</u>, 494 F.3d 1203, 1207 (9th Cir. 2007).

The Court must accept as true the facts as pleaded by the non-movant, and will construe the pleadings in the light most favorable to the nonmoving party. <u>U.S. ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.</u>, 637 F.3d 1047, 1053 (9th Cir. 2011); <u>Doyle v. Raley's Inc.</u>, 158 F.3d 1012, 1014 (9th Cir. 1998). Judgment on the pleadings is properly granted "when, accepting all factual allegations in the complaint as true, there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law." <u>Chavez v. United States</u>, 683 F.3d 1102, 1108 (9th Cir. 2012) (citation and original alteration omitted).

Although Rule 12(c) does not expressly address partial judgment on the pleadings, leave to amend, or dismissal, courts regularly "apply Rule 12(c) to individual causes of action." <u>Strigliabotti v. Franklin Res., Inc.</u>, 398 F. Supp. 2d 1094, 1097 (N.D. Cal. 2005) (citation omitted). Courts also have discretion to grant a Rule 12(c) motion with leave to amend, or to dismiss causes of action instead of entering judgment. <u>Moran v. Peralta Cmty. Coll. Dist.</u>, 825 F. Supp. 891, 893 (N.D. Cal. 1993)); <u>see also</u> <u>Goens v. Adams & Assocs., Inc.</u>, No. 2:16-CV-

00960-TLN-KJN, 2017 WL 3981429, at *2 (E.D. Cal. Sept. 11, 2017) (citing Carmen v. San Francisco Unified Sch. Dist., 982 F. Supp. 1396, 1401 (N.D. Cal. 1997)).

## II.  Subject-Matter Jurisdiction

A motion for judgment on the pleadings that asserts the absence of subject-matter jurisdiction is assessed in the same manner as a motion brought under Rule 12(b)(1).  See Rutenschroer, 484 F. Supp. 2d at 1147-48.  A challenge to a court's subject-matter jurisdiction may be either "facial" or "factual."  Wolfe v. Strankman, 392 F.3d 358, 362 (9th Cir. 2004).

In a facial attack, "the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction."  Id. (quoting Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004)).  When opposing a facial attack on subject-matter jurisdiction, the nonmoving party is not required to provide evidence outside the pleadings.  Wolfe, 392 F.3d at 362; see also Doe v. Holy See, 557 F.3d 1066, 1073 (9th Cir. 2009) (treating defendant's challenge to subject-matter jurisdiction as facial because defendant "introduced no evidence contesting any of the allegations" of the complaint).  In deciding a facial Rule 12(b)(1) motion, the court must assume the allegations in the complaint are true and draw all reasonable inferences in the

plaintiff's favor.  <u>Wolfe</u>, 392 F.3d at 362 (citations omitted).

By contrast, in a factual attack, "the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." <u>Id.</u> (quoting <u>Safe Air</u>, 373 F.3d at 1039).  The moving party may bring a factual challenge to the court's subject-matter jurisdiction by submitting affidavits or any other evidence properly before the court.  The nonmoving party must then "present affidavits or any other evidence necessary to satisfy its burden of establishing that the court, in fact, possesses subject-matter jurisdiction." <u>Colwell v. Dep't of Health & Human Servs.</u>, 558 F.3d 1112, 1121 (9th Cir. 2009) (citation omitted).  In these circumstances, the court may look beyond the complaint without having to convert the motion into one for summary judgment.  <u>U.S. ex rel. Meyer v. Horizon Health Corp.</u>, 565 F.3d 1195, 1200 n.2 (9th Cir. 2009), <u>overruled on other grounds as stated in</u> <u>U.S. ex. Rel. Hartpence v. Kinetic Concepts, Inc.</u>, 792 F.3d 1121, 1128 n.6 (9th Cir. 2015).  When deciding a factual challenge to the court's subject-matter jurisdiction, the court "need not presume the truthfulness of the plaintiffs' allegations." <u>Id.</u>

### III. Failure to State a Claim

Rule 12(h)(2)(B) permits a defendant to use Rule 12(c) as a vehicle to contend that a complaint fails to state a claim upon which relief can be granted.  <u>See</u> Fed. R. Civ. P.

12(h)(2)(B). When Rule 12(c) is used to raise the defense of
failure to state a claim upon which relief can be granted,
analysis under Rule 12(c) is substantially identical to analysis
under Rule 12(b)(6). McGlinchy v. Shell Chemical Co., 845 F.2d
802, 810 (9th Cir. 1988). The Court must therefore assess
whether the complaint "contain[s] sufficient factual matter,
accepted as true, to 'state a claim to relief that is plausible
on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)
(quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007));
see also Harris v. Cty. of Orange, 682 F.3d 1126, 1131 (9th Cir.
2012) (Iqbal applies to Rule 12(c) motions because Rule 12(b)(6)
and Rule 12(c) motions are functionally equivalent). Mere
conclusory statements in a complaint or "formulaic recitation[s]
of the elements of a cause of action" are not sufficient.
Twombly, 550 U.S. at 555. Thus, the Court discounts conclusory
statements, which are not entitled to a presumption of truth,
before determining whether a claim is plausible. Iqbal, 556
U.S. at 678. However, "[d]ismissal with prejudice and without
leave to amend is not appropriate unless it is clear . . . that
the complaint could not be saved by amendment." Harris, 682
F.3d at 1131 (citation omitted).

**IV.  Rule 9(b)**

Rule 9(b) requires that, "[i]n alleging fraud or
mistake, a party must state with particularity the circumstances

15

constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). "Rule 9(b) requires particularized allegations of the circumstances constituting fraud." In re GlenFed, Inc. Secs. Litig., 42 F.3d 1541, 1547–48 (9th Cir. 1994) (en banc), superseded by statute on other grounds as recognized in Ronconi v. Larkin, 253 F.3d 423, 429 n.6 (9th Cir. 2001). Rule 9(b) requires the pleading to provide an "account of the 'time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations.'" Swartz v. KPMG LLP, 476 F.3d 756, 764 (9th Cir. 2007) (quoting Edwards v. Marin Park, Inc., 356 F.3d 1058, 1066 (9th Cir. 2004)). "Averments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged." Vess v. Ciba–Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir. 2003). Plaintiffs may not simply plead neutral facts to identify the transaction, but rather must also set forth what is false or misleading about a statement, and why it is false. See GlenFed, 42 F.3d at 1548. Moreover,

> Rule 9(b) does not allow a complaint to merely
> lump multiple defendants together but
> require[s] plaintiffs to differentiate their
> allegations when suing more than one defendant
> . . . and inform each defendant separately of
> the allegations surrounding his alleged
> participation in the fraud. In the context of
> a fraud suit involving multiple defendants, a
> plaintiff must, at a minimum, identif[y] the

role of [each] defendant[ ] in the alleged
fraudulent scheme.

Swartz, 476 F.3d at 764–65 (alterations in original) (citations
omitted). However, Rule 9(b)'s requirements may be relaxed as
to matters that are exclusively within the opposing party's
knowledge. Rubenstein v. Neiman Marcus Grp. LLC, 687 F. App'x
564, 567 (9th Cir. 2017).

> Rule 9(b) only "requires that plaintiffs
> specifically plead those facts surrounding
> alleged acts of fraud to which they can
> reasonably be expected to have access." Concha
> v. London, 62 F.3d 1493, 1503 (9th Cir. 1995).
> As such, "in cases where fraud is alleged, we
> relax pleading requirements where the relevant
> facts are known only to the defendant." Id.
> In those cases, a "pleading is sufficient
> under Rule 9(b) if it identifies the
> circumstances constituting fraud so that a
> defendant can prepare an adequate answer from
> the allegations." Moore, 885 F.2d at 540.

Id. at 567–68. Where the facts surrounding fraud are
"peculiarly within the opposing party's knowledge," then,
"[a]llegations of fraud based on information and belief may
suffice . . . so long as the allegations are accompanied by a
statement of the facts upon which the belief is founded." Puri
v. Khalsa, 674 F. App'x 679, 687 (9th Cir. 2017) (citing Wool v.
Tandem Computs. Inc., 818 F.2d 1433, 1439 (9th Cir. 1987),
overruled on other grounds as stated in Flood v. Miller, 35 F.
App'x. 701, 703 n.3 (9th Cir. 2002)).

A motion to dismiss a claim grounded in fraud for

failure to plead with particularly under Rule 9(b) is the functional equivalent of a motion to dismiss under Rule 12(b)(6).  See Vess, 317 F.3d at 1107.

**DISCUSSION**

Security Life argues for its entitlement to judgment on the pleadings on several grounds, which the Court addresses in turn.

**I.   Standing**

Security Life makes a facial challenge to the Court's subject-matter jurisdiction much like the one it made in its earlier motion with respect to the Original Complaint.  The Court rejected these same arguments in its May 14, 2019 Order, and Security Life has pointed to no allegations in the Amended Complaint to compel a different outcome here.  Accordingly, to the extent that it seeks dismissal on the basis that Plaintiff lacks standing, the Motion is denied.

As explained in the prior Order, a plaintiff invoking federal jurisdiction bears the burden of establishing "the three elements that constitute the irreducible constitutional minimum of Article III standing[—] namely, that the plaintiff has (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Friends of Santa Clara River v. U.S. Army Corps of Eng'rs, 887 F.3d 906,

918 (9th Cir. 2018) (internal quotation marks omitted) (citing Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547 (2016); Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992)).  In addition to this irreducible minimum, a plaintiff invoking federal jurisdiction must also establish that she has prudential standing.  United States v. JP Morgan Chase Bank Account No. Ending 8215 in Name of Ladislao V. Samaniego, VL: $446,377.36, 835 F.3d 1159, 1167 (9th Cir. 2016) (citation omitted). "Prudential standing consists of the general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in representative branches, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked." Id. (citation and internal quotation marks omitted).

The Court is once again puzzled by Security Life's standing arguments.  Security Life's first argument essentially would have the Court reverse course on its prior ruling, even though the Amended Complaint enhances Plaintiff's allegations relevant to standing.  Security Life first questions the Court's prior holding that Plaintiff's "alleged injury in the form of payment of $37,000 is fairly traceable to [Security Life's] complained-of conduct, and would be redressed by her sought-for relief, which includes 'rescission of the VOYA Policy, and a

refund of premiums plus interest.'" Mot. 9-10 (quoting Order 24). It acknowledges that the holding "was based on Plaintiff's allegation that she was required to make 'a payment of $37,000 in order to secure the loan that was taken out pursuant to the premium financing arrangement for the VOYA Policy.'" Id. (quoting Order 23). Security Life now maintains that "the Amended Complaint makes clear that Security Life neither directed Plaintiff to make the payment nor did it receive the payment."[8] Id.

Even if that is the case, Plaintiff alleges an injury based on the Security Life's issuance of the VOYA Policy—whether or not such issuance was unlawfully deceptive or unfair. Unlike the Original Complaint, the Amended Complaint alleges an additional injury in the form of Plaintiff's being forced to surrender an Allianz annuity, which she had assigned as collateral as part of the premium financing agreement. Am. Compl. ¶ 53. She likewise alleges an injury in the form of a payment to satisfy the VOYA Policy's premium. Regardless, the allegations related to the $37,000 payment are identical to the allegations the Court previously found sufficient for standing.

---

[8] To support this argument, Security Life quotes several allegations in the Amended Complaint that are identical to allegations that were present in the Original Complaint. See Mot. 10. Compare Orig. Compl. ¶¶ 5, 45-46, 60, and Am. Compl. ¶¶ 5, 42-43, 57.

Security Life points to no reason for the Court to change its prior ruling.

Security Life's second argument fares no better. The Motion again quotes the prior Order in which the Court concluded that the relief sought could redress Plaintiff's complaints against Security Life. See Mot. 11 (quoting Order 24). According to Security Life, "[n]ot so under the Amended Complaint." Id. Again, the Court does not see how the Amended Complaint alleges anything different from the Original Complaint with respect to the relief sought. At the least, the Amended Complaint, exactly like the Original Complaint, alleges that Security Life—either itself or through its agents—benefited from the sale and issuance of the VOYA Policy at Plaintiff's financial expense, such that Plaintiff was injured by Security Life's alleged conduct. The alleged payment of $37,000—whether or not directly paid by Plaintiff to Security Life—plausibly alleges that Plaintiff's injury is "fairly traceable" to Security Life's conduct and would be redressed, even indirectly, by Plaintiff's sought-for relief.[9]

---

[9] In Security Life's view, Plaintiff is a "stranger" to the VOYA Policy because she is not a beneficiary or party to the contract. See Mot. 11 (citing Untalan v. All. Bancorp, No. CIV 11-00422 SOM/BMK, 2011 WL 4704232, at * 7 (D. Haw. Oct. 4, 2011)). As discussed in the prior Order, Plaintiff brings her claims against Security Life in her individual capacity for injuries not arising out of the VOYA Policy. See Order 23 (finding allegations that Plaintiff "herself suffered an injury" and that she is "asserting her own legal rights" to be sufficient to establish prudential standing).

Accordingly, the Court's prior holding that Plaintiff has alleged a fairly-traceable injury to establish standing is equally relevant to the amended Complaint.  See Order 23.

In sum, the Court maintains its prior ruling that Plaintiff has adequately alleged standing.  Thus, insofar as it is premised on lack of standing to assert claims against Security Life, the Motion is denied.

## II.  Liability Waiver

Security Life's next argument relates to a purported "liability waiver" contained in a release in the Acknowledgment form Plaintiff allegedly signed in connection with the premium financing arrangement.  Security Life argues that, in the Acknowledgment, Plaintiff waived all potential claims against Security Life arising out of the premium financing arrangement. Mot. 12.  In the prior Order, the Court declined to consider the Acknowledgment at all because (1) it was only attached to Security Life's answer and not to the Original Complaint; (2) the Acknowledgment was not properly subject to consideration under the incorporation by reference doctrine and the parties did not argue as much; and (3) Plaintiff challenged the validity of the Acknowledgment by asserting that her signature had been fraudulently induced, creating a factual issue.  Order 24-28.

For slightly different reasons than those relied on in the prior Order, the Court declines at this juncture to address

the factual question of whether Acknowledgment is valid and whether it releases Security Life of liability for Plaintiff's claims.

### a. Incorporation by Reference Doctrine

As an initial matter, the Court rejects Security Life's second attempt to argue generally that documents attached to an answer are properly considered in ruling on a Rule 12(c) motion. <u>See</u> Mot. 13-14; <u>see also</u> Order 24-27. The Court then turns to Security Life's primary argument urging the Court to consider the Acknowledgment under the doctrine of incorporation by reference.

A "district court may, but is not required to incorporate documents by reference." <u>Davis v. HSBC Bank Nev., N.A.</u>, 691 F.3d 1152, 1159 (9th Cir. 2012). Incorporation by reference allows the court to consider documents that, even if not physically attached to the complaint, are "referenced extensively in the complaint and [are] accepted by all parties as authentic." <u>Van Buskirk v. Cable News Network, Inc.</u>, 284 F.3d 977, 980 (9th Cir. 2002). The doctrine only applies where "the complaint necessarily relies upon a document or the contents of the document are alleged in the complaint, the document's authenticity is not in question, and there are no disputed issues as to the document's relevance." <u>Coto Settlement v. Eisenberg</u>, 593 F.3d 1031, 1038 (9th Cir. 2010);

see also <u>Marder v. Lopez</u>, 450 F.3d 445, 448 (9th Cir. 2006) (stating that a court may consider a document "on which the complaint necessarily relies, if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion").

The Court previously declined to review the Acknowledgment under the incorporation by reference doctrine because neither party raised those arguments, because the Original Complaint did not "refer to the Acknowledgment explicitly, let alone extensively, and because none of Plaintiff's claims [were] based upon the Acknowledgment." Order 27-28. Security Life now argues that the Amended Complaint has "transformed the Acknowledgment from an exhibit to Security Life's Answer and into a document referenced in [Plaintiff's] complaint and integral to her claim." Mot. 12-13. Indeed, footnote 1 of the Amended Complaint cites the contents of the Acknowledgment—including the ECF document number—as evidence of Salisbury's and Security Life's agency relationship. <u>See</u> Am. Compl. ¶ 10 n.1 (citing ECF Doc. 72-1).[10/] In Security Life's

---

[10/] The ECF document number that Plaintiff cites to is an exhibit to Security Life's answer to the Original Complaint. <u>See</u> Am. Compl. ¶ 10 n.1. It is largely illegible. At the hearing, Security Life's counsel provided the Court with a more legible, unsigned version of Security Life's standard "Financing Disclosure and Acknowledgment" form, which had been attached in an Errata to Security Life's answer to the Amended Complaint. ECF No. 162-1; <u>see also</u> Ans., ECF No. 160. The Court recognizes Plaintiff's counsel's oral (Continued . . . )

view, Plaintiff's reliance on the Acknowledgment for her vicarious liability theory necessarily makes the document "integral to her claim" against Security Life and permits the Court to consider it in full. Mot. 12-13 ("Plaintiff cannot selectively quote the Acknowledgment to her advantage while simultaneously avoiding the reality that it vitiates her claim against Security Life").

In Marder, the Ninth Circuit held that a release could be incorporated by reference and considered on a Rule 12(b)(6) motion when the complaint contained a single statement in one paragraph that the plaintiff had signed a release. 450 F.3d at 448. Without any detailed analysis, the court concluded that the release was "central to" the plaintiff's claim.[11/] Id. This was in spite of some earlier Ninth Circuit cases applying a more stringent standard for deciding whether a document is properly incorporated by reference. See Harmon v. Johnson & Johnson, No. CV 09-2979-GW(VBKx), 2009 WL 10659667, at *2-3 (C.D. Cal. July 30, 2009) (collecting cases); see also Ritchie, 342 F.3d at 908 (explaining that incorporation may be permissible if "the

---

objection to the admission of the document at the hearing. Still, as explained infra, the Court will ultimately not consider the validity of the release in the signed Acknowledgment form. Accordingly, all this document does is clarify Plaintiff's allegation that the final signature line on the Acknowledgment states, "Agent Signature." This is consistent with Plaintiff's own allegations in the Amended Complaint, so the Court sees no problem acknowledging that the blank form offered by Security Life indeed says what Plaintiff alleges the signed version says.

[11/] Notably, neither party in Marder disputed that the release was appropriate for the court's consideration. 450 F.3d at 448.

plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim").

Here, like in _Marder_, only one paragraph—in fact, one footnote in one paragraph—in the Amended Complaint explicitly cites the Acknowledgment. And it would take a "remarkably loose understanding" of the phrase, "central to" to conclude that the Acknowledgment is in fact "central to" Plaintiff's claims, as opposed as to Security Life's defense. _Harmon_, 2009 WL 10659667 at *2-3 (observing that one reference in the complaint made it "difficult to see how the release could be considered 'central to' Plaintiff's claims (as opposed to Defendants' affirmative defenses)"). At the same time, the Acknowledgment is relied upon to support Plaintiff's theory of liability with respect to Security Life. And Plaintiff plainly intended to have the Court reference the one-page document, even directing the Court to the ECF number. In these circumstances, the Court is inclined to follow _Marder_ and consider the document incorporated into the Amended Complaint by reference.

It is also clear that Plaintiff has not "question[ed] the authenticity of the copy attached to the . . . motion." _Marder_, 450 F.3d at 448. Authenticity for incorporation by reference means the same thing as it does in Federal rule of Evidence 901: whether a document is "what its proponent claims." _Davis_, 691 F.3d at 1161 (citing Fed. R. Evid. 901; _Las_

Vegas Sands, LLC v. Nehme, 632 F.3d 526, 533 (9th Cir. 2011)).[12/]
And "an objection on authenticity grounds must be on legally
cognizable grounds." Korman v. ILWU-PMA Claims Office, No.
2:18-cv-07516-SVW-JPR, 2019 WL 1324021, at *5 (C.D. Cal. Mar.
19, 2019).

Here, Plaintiff's objections to the Acknowledgment do
not challenge authenticity. Her objections dispute the legal
sufficiency of the document, not that the version of the
document provided is what Security Life says it is. See Dual
Diagnosis Treatment Ctr., Inc. v. Blue Cross of Cal., No. SA CV
15-0736-DOC(DFMx), 2016 WL 6892140, at *23 (C.D. Cal. Nov. 22,
2016). In fact, Plaintiff herself directly cites the copy of
the Acknowledgment at issue. Am. Compl. ¶ 10 n.1. Accordingly,
Plaintiff's argument that the Acknowledgment is "void," Opp. 10-
11, does not appear to be an objection based on whether the
Acknowledgment is authentic. See Dual Diagnosis, 2016 WL
6892140 at *23 ("[T]he sufficiency or completeness of the
documents is distinct from their authenticity.").

---

[12/]   As discussed in footnote 14, Plaintiff objected to the blank version
of the Acknowledgment, offered by Security Life at the hearing, at the
Court's request. This is not a proper challenge to authenticity for
incorporation by reference purposes. See Davis, 691 F.3d at 1161 (holding
that a party's objection to incorporation by reference because it had not
seen the documents was not related to authenticity). Regardless, the Court
is focused on the incorporation of the version cited by Plaintiff, ECF No.
72-1, and any reference to the blank version submitted by Security Life at
the hearing, ECF No. 162-1, is solely to confirm Plaintiff's own allegations
of the contents of the Acknowledgment.

In sum, because Plaintiff referenced and cited the Acknowledgment in the Amended Complaint; because the Acknowledgment is, under <u>Marder</u>, loosely "central to" Plaintiff's theory of liability alleged against Security Life; and because Plaintiff has not challenged the document's authenticity, the Court holds that it may properly consider the Acknowledgment in evaluating Security Life's Motion.

**b. Legal Validity of Waiver**

Although the Acknowledgment is properly incorporated by reference, there is the additional problem of Plaintiff's challenge to the validity and enforceability of the release therein. Even though Plaintiff does not dispute the authenticity of the Acknowledgment, she asserts that she was fraudulently induced to sign the Acknowledgment and related documents, rendering them legally invalid. <u>See</u> Opp. 10-12. The Court thus limits its consideration of the Acknowledgment to (1) the existence of the document and (2) the fact that it says what it says. The Court will not, in considering this Motion, accept the contents of the Acknowledgment as factually true or as legally binding.

Moreover, the Court sees nothing in the few additions to the Amended Complaint that would clear up the factual dispute as to the legal validity of the Acknowledgment. <u>See</u> Order 27. Plaintiff once again contends that her signature on the

Acknowledgment was fraudulently induced.  Opp. 11-12; <u>see also</u>

Am. Compl. ¶¶ 7, 47, 60, 74.  Thus, the same factual dispute

remains.[13/]  Again, it would be inconsistent with "the

prohibition against resolving factual disputes at the pleading

stage," to make a premature determination as to the validity of

the Acknowledgment.  <u>Khoja v. Orexigen Therapeutics, Inc.</u>, 899

F.3d 988, 1003 (9th Cir. 2018); <u>see also</u> <u>Scott v. Kuhlmann</u>, 746

F.2d 1377, 1378 (9th Cir. 1984) (explaining that affirmative

defenses may only be raised by motion to dismiss when "the

defense raises no disputed issues of fact").

Thus, to the extent that Security Life's Motion is

premised upon the release contained in the Acknowledgment, the

Motion is denied without prejudice to Security Life's ability to

assert the limitation of liability as a defense later in this

litigation.

---

[13/]  Contrary to Security Life's argument, the Court is satisfied that
Plaintiff has met the Rule 9(b) standard for pleading fraud on this point.
Implicit in the Court's prior Order was the applicability and satisfaction of
Rule 9(b) to at least raise a factual dispute as to the validity of the
Acknowledgment. Moreover, the allegations throughout the Amended Complaint
that certain Defendants misled Plaintiff and advised her that signing these
documents to purchase or finance the VOYA Policy was in her interest based on
her financial situation are sufficient to satisfy the pleading standard and
raise a dispute of fact as to the enforceability of the Acknowledgment.  <u>See,
e.g.</u>, Am. Compl. ¶¶ 43-47 (discussing allegations of misrepresentations to
Plaintiff that "induced" her to enter the transactions "to her detriment"); ¶
64 (alleging, <u>inter alia</u>, that Defendant Salisbury represented that the
purchase of the VOYA Policy and premium financing arrangement "was in Ryan's
best interest"); ¶ 74 ("The representations made by Defendants were designed
to be deceptive in order to induce Ryan to enter financial transactions with
Defendants as set out herein."); <u>see also</u> Opp. 11-12.  Regardless, a
plaintiff need not anticipate and plead all potential defenses in a
complaint.  <u>See</u> <u>Gomez v. Toledo</u>, 446 U.S. 635 (1980).

### III. UDAP Claim

The Court next turns to the substance of Plaintiff's claim alleging that Security Life engaged in deceptive and unfair acts and practices within the meaning of Hawai`i's UDAP statute, HRS §§ 480-1, et seq. Am. Compl. ¶¶ 61-79. Consistent with the discussion below, the Court holds that the Amended Complaint fails to allege plausible or particularized allegations of conduct by Security Life that would support a UDAP claim. Likewise, the conclusory allegations of agency relationships to hold Security Life liable for the actions of Defendant Salisbury and Defendant Bellini are insufficient. Accordingly, the Amended Complaint is dismissed against Security Life.

#### a. Legal Standards Under UDAP

HRS § 480-2(a) provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful." "HRS § 480-2 . . . was constructed in broad language in order to constitute a flexible tool to stop and prevent fraudulent, unfair or deceptive business practices for the protection of both honest consumers and honest business[persons]." Haw. Cmty. Fed. Credit Union v. Keka, 94 Haw. 213, 228, 11 P.3d 1, 16 (2000) (latter alteration in original) (citation and internal quotation marks

omitted).  To state a UDAP claim, a consumer[14/] must allege: (1)
a violation of HRS § 480-2; (2) injury to plaintiff's business
or property resulting from such violation; and (3) proof of the
amount of damages.  See Lizza v. Deutsche Bank Nat. Trust Co., 1
F. Supp. 3d 1106, 1121 (D. Haw. 2014) (citing HRS § 480-
13(b)(1), aff'd 714 F. App'x 620 (9th Cir. 2017); In re
Kekauoha-Alisa, 674 F.3d 1083, 1092 (9th Cir. 2012); Haw. Med.
Ass'n v. Haw. Med. Serv. Ass'n, Inc., 113 Haw. 77, 113-14, 148
P.3d 1179, 1215-16 (2006)).  "Any injury must be fairly
traceable to the defendant's actions."  In re Kekauoha-Alisa,
674 F.3d at 1092 (citing Flores v. Rawlings Co., LLC, 117 Haw.
153, 167 n.23, 177 P.3d 341, 355 n.23 (2008)).

A practice is unfair when it "offends established
public policy and when the practice is immoral, unethical,
oppressive, unscrupulous[,] or substantially injurious to
consumers."  Balthazar v. Verizon Haw., Inc., 109 Haw. 69, 77,
123 P.3d 194, 202 (2005) (citation and internal quotation marks
omitted).

"A deceptive act or practice is '(1) a representation,
omission, or practice that (2) is likely to mislead consumers
acting reasonably under the circumstances where (3) the

---

[14/] HRS § 480-1 defines "consumer" as "a natural person who, primarily
for primarily for personal, family, or household purposes, purchases,
attempts to purchase, or is solicited to purchase goods or services or who
commits money, property, or services in a personal investment."  Security
Life has not disputed that Plaintiff is a "consumer."

31

representation, omission, or practice is material.' The representation, omission, or practice is material if it is likely to affect a consumer's choice." Yokoyama v. Midland Nat'l Life Ins. Co., 594 F.3d 1087, 1092 (9th Cir. 2010) (quoting Courbat v. Dahana Ranch, Inc., 111 Haw. 254, 262, 141 P.3d 427, 435 (2006)). "Whether information is likely to affect a consumer's choice is an objective inquiry, 'turning on whether the act or omission is likely to mislead consumers as to information important to consumers in making a decision regarding the product or service.'" Id. at 1092 (quoting Courbat, 111 Haw. at 262, 141 P.3d at 435) (some internal quotation marks omitted). "[A] failure to disclose relevant information may be actionable under [HRS § 480-2] if it is likely to mislead or deceive a reasonable customer." Soule v. Hilton Worldwide, Inc., 1 F. Supp. 3d 1084, 1093 (citing Courbat, 111 Haw. at 263, 141 P.3d at 436).

Claims asserting deceptive conduct under HRS § 480-2 are subject to Rule 9(b)'s heightened pleading standard. See Smallwood v. NCsoft Corp., 730 F. Supp. 2d 1213, 1232–33 (D. Haw. 2010). "To the extent Plaintiff is making claims under the 'unfair' prong of an unfair and deceptive practices claim that are not asserting fraudulent conduct, Rule 9(b)'s heightened pleading standard does not apply." Soule, 1 F. Supp. 3d at 1090; see also Bald v. Wells Fargo Bank, N.A., 688 F. App'x 472,

476–77 (9th Cir. 2017) (differentiating between the pleading standards required for putatively "unfair" practices and those arising under HRS § 480-2's "deceptive" prong).

**b. Analysis**

Security Life moves to dismiss Plaintiff's UDAP claim on two primary grounds. First, it argues that the Amended Complaint contains no additional allegations that Security life itself acted deceptively or unfairly. Mot. 17. And second, it argues that the agency allegations added to the Amended Complaint to support a theory of vicarious liability are conclusory and implausible. Mot. 20. The Court agrees on both accounts.

**i. Allegations of Security Life's Conduct**

Plaintiff's allegations against Security Life are virtually the same as those in the Original Complaint. The Court is not aware of any added allegations specifying or particularizing conduct by Security Life. The Motion accurately frames the allegations against Security Life: "The gravamen of [Plaintiff's] claim remains that Security Life issued a policy on her life that was unsuitable for her financial needs." Mot. 17.

The Court has already held that this same allegation is insufficient to state a claim under UDAP. See Order 33-35. The Court sees no reason to repeat these allegations when it

already did so in its prior Order.[15/] <u>Id.</u>  The bottom line is
that the Amended Complaint—just like the Original Complaint—is
devoid of any factual allegations (particularized or otherwise)
of misrepresentations, omissions, or other practices to show
unfair or deceptive conduct on the part of Security Life.

Plaintiff also has not alleged any additional facts or
theories beyond those alleged in the Original Complaint and
rejected in the prior Order to establish that any "suitability"
requirement exists in the sale of life insurance policies.[16/]
<u>Compare</u> Am. Compl. ¶ 44 ( "Like annuities, high dollar or 'large
case' life insurance policies should only be sold to consumers
when they are 'suitable' for the consumer's financial needs,
situation, and goals."), <u>and</u> Orig. Compl. ¶ 47 (same).  <u>See also</u>
Order 33-34 ("The Court is aware of no controlling authority for
the proposition that a life insurance company must make a
suitability determination prior to issuing a life insurance
policy.").

---

[15/]  <u>Compare</u> Orig. Compl. ¶¶ 19, 45, 53, 65-75, 80, 84-90, <u>and</u> Am. Compl.
¶¶ 15, 42, 50, 62-68, 70-75, 78-79.
[16/]  The only perceptible difference in the Amended Complaint as to the
"suitability" issue is in ¶ 66.  There, the Amended Complaint reframes the
allegations related to the annuity churning scheme as a violation of the
Hawai'i Insurance Code.  <u>See</u> Am. Compl. ¶ 66 (citing HRS § 431:10D-623).  As
Plaintiff's counsel conceded at the hearing, HRS § 431:10D-623 imposes duties
on insurers related to suitability, but only in the context of <u>annuities</u>, not
life insurance policies.  Even to the extent that this statute has any
bearing on Plaintiff's claims against Defendant Salisbury, the Amended
Complaint makes clear that his conduct in the annuity churning scheme is not
attributable to Security Life.  <u>Id.</u> ¶ 3.  Relatedly, Plaintiff's counsel
conceded at the hearing that there is no independent suitability requirement
for life insurance policies.

Plaintiff simply has not alleged facts to show that Security Life did not meet some legal obligation or that its conduct involved the commensurate unfairness or deception needed to establish UDAP liability. All Plaintiff alleges is (1) a "suitability" requirement that Plaintiff now concedes has no legal basis, and (2) that Security Life issued the VOYA Policy after a form signed by Plaintiff misrepresented her net worth, her financial status, and her ability to pay the premiums.

Plaintiff has thus again failed to plead deception with the required particularity and unfairness with the required plausibility. For the reasons stated, the Court holds that, like the Original Complaint before it, the Amended Complaint fails to state a claim under Hawai'i's UDAP law.

### ii. Added Agency Allegations for Vicarious Liability

The primary changes to the Amended Complaint relate to Plaintiff's allegations that Security Life is vicariously liable for the acts of Defendants Salisbury and Bellini. Security Life argues that Plaintiff's attempt to establish pass-through liability is based on conclusory allegations of agency that are not supported by plausible or particularized factual allegations. Mot. 20-22.

The Amended Complaint—like the Original Complaint—alleges in conclusory terms that "Security Life of Denver is liable for its own acts and the acts and omissions of Defendants

Salisbury, Diyanni, Alejandro Alberto Bellini, and/or its appointed agents who participated in the sale of the policy." Am. Compl. ¶ 15; <u>see also</u> Orig. Compl. ¶ 18 (same). This allegation is repeated several times throughout the Amended Complaint to support Plaintiff's theory that, "under the doctrines of vicarious liability and respondeat superior, Defendant Security Life of Denver is liable for the wrongful acts committed by those under its control, direction, or management." Am. Compl. ¶¶ 10, 16; <u>see also</u> <u>id.</u> ¶ 10 (Defendant Salisbury acted "under the direction and control of Security Life of Denver"); ¶ 16 (Defendant Bellini acted "within the scope of, and in the course of his employment with, or under the direction and control of Security Life of Denver and/or Aurora Capital"); ¶¶ 10, 16 (Security life "retained the right to control, direct, and/or manage" these Defendants and "knew of and authorized" Salisbury's and Bellini's positions as "life insurance sales agent[s]"); ¶ 64 (Salisbury's concealing and misrepresentations done "[i]n his capacity as [Plaintiff]'s investment advisor and financial planner and/or as an agent for Security Life of Denver").

Despite these new allegations, the Amended Complaint is still missing <u>facts</u> to support plausible agency relationships. Security Life argues that, "[s]tripped of all conclusory statements, the Amended Complaint does not contain a

single factual allegation to support an employment or other agency relationship between the individual defendants and Security Life with the requisite degree of control to give rise to vicarious liability for the challenged conduct." Mot. 21-22. It is Security Life's position that Defendant Salisbury and Defendant Bellini were working as brokers on Plaintiff's behalf, not as agents of Security Life. Mot. 22.

While "[a] principal may be liable for the wrongful acts of its agent that occur while [the agent is] acting within the scope of the agency," Lopeti v. Alliance Bancorp, No. 11-00200 ACK-RLP, 2011 WL 13233545, at *15 (D. Haw. Nov. 4, 2011), "[v]icarious liability under the respondeat superior doctrine ordinarily requires some kind of employment relationship or other consensual arrangement under which one person agrees to act under another's control," State v. Hoshijo ex rel. White, 102 Haw. 307, 319, 76 P.3d 550, 562 (2003) (quoting Dan B. Dobbs, The Law of Torts, § 335, at 910 (2000)) (emphasis in Hoshijo). The Amended Complaint does not allege any employment relationship between Security Life and either Defendant Salisbury or Defendant Bellini. See Am. Compl. ¶ 10 (alleging that Defendant Salisbury was an employee of Claraphi and National Asset Management, Inc.); ¶ 16 (alleging that Defendant Bellini was employed by Aurora Capital). Nor does it allege nonconclusory facts tending to show a "consensual arrangement"

whereby Defendants Salisbury and Bellini submitted to Security Life's control. Instead, it alleges in conclusory terms that Defendant Salisbury and Defendant Bellini acted under Security Life's control.

Such conclusory allegations do not comply with the pleading standards of Rule 8(a) and Rule 9(b). See Twombly, 550 U.S. at 555; Comwest, Inc. v. Am. Operater Servs., Inc., 765 F. Supp. 1467, 1471 (C.D. Cal. 1991). In fact, this circuit has held that conclusory allegations of agency without any stated factual basis are "insufficient as a matter of law." Swartz, 476 F.3d at 765; see also Comwest, 765 F. Supp. at 1471 (dismissing complaint with "only conclusory allegations that 'defendants . . . , and each of them, directly and indirectly, aiding and abetting each other, and acting in concert, and through each other . . . fraudulently induced plaintiff [to enter the at-issue agreements]").

Likewise, the Amended Complaint bases some of the agency-related allegations on "information and belief." See, e.g., Am. Compl. ¶ 10 ("Upon information and belief, Salisbury is also listed as a writing agent of Plaintiff's VOYA policy."). The Court need not take as true those allegations where Plaintiff has not alleged facts showing that Defendants Salisbury and Bellini are agents of Security Life to "nudge" her claim "across the line from conceivable to plausible." Mann v.

<u>Palmer</u>, 713 F.3d 1306, 1315 (11th Cir. 2013); <u>see also</u> <u>Twombly</u>,

550 U.S. at 551, 557 (declining to accept as true conclusory

allegations "upon information and belief" of a conspiracy,

without sufficient facts to make that assertion plausible); <u>Gold</u>

<u>River, LLC v. La Jolla Band of Luiseno Mission Indians</u>, No. 11-

cv-1750 JM(BGS), 2011 WL 6152291, at *2 (S.D. Cal. Dec. 9, 2011)

("Conclusory allegations, especially those made upon information

and belief, 'do not suffice.'" (quoting <u>Iqbal</u>, 556 U.S. at

678)).

Plaintiff's agency allegations also rely on conclusory

pleading of alternative facts and theories through excessive use

of "and/or."[17/]  Again, these allegations do not allege facts;

they make conclusions about the legal relationship between the

parties.  Such pleading is deficient.  <u>See</u> <u>Kelsey v. Goldstar</u>

<u>Estate Buyers Corp.</u>, No. 3:13-cv-00354-HU, 2014 WL 1155253, at

*6 (D. Or. Mar. 21, 2014) (dismissing complaint because

allegations are "simply a regurgitation of the statutes' wording

---

[17/] <u>See, e.g.</u>, Am. Compl. ¶ 10 (referencing Defendant Salisbury "[i]n his capacity as a writing agent and/or as an agent of Security Life of Denver"); ¶ 15 (stating that Security Life is liable for its own acts and the acts and omissions of various individual defendants "and/or its appointed agents who participated in the sale of the policy"); ¶ 16 (discussing Defendant Bellini's actions under the direction and control of "Security Life of Denver and/or Aurora Capital"; "Security Life of Denver and/or Aurora Capital knew of and authorized Bellini's position as a life insurance sales agent"; "under the doctrines of vicarious liability and respondeat superior, Defendants Security Life of Denver and/or Aurora Capital are liable for the wrongful acts committed by those under their control, direction, or management . . ."); ¶ 64 (referring to Defendant Salisbury's capacity "as Ryan's investment advisor and financial planner and/or as an agent for Security Life Denver").

woven together with conclusory statements and a generous use of
'and/or'"); <u>Bezverkhov v. Cal-W. Reconveyance Corp.</u>, No. 2:09-
cv-01880-MCE-KJM, 2009 WL 4895581, at *6 (E.D. Cal. Dec. 11,
2009) (holding that "[t]he use of 'and/or' does not provide the
specificity necessary to place Defendants on notice" required by
Rule 9(b)). <u>But see</u> <u>DocMagic, Inc. v. Ellie Mae, Inc.</u>, 745 F.
Supp. 2d 1119, 1148 (N.D. Cal. 2010) (noting that "the use of
'and/or' in pleadings is not encouraged, especially in the wake
of <u>Twombly</u> and <u>Iqbal</u>, but holding that the complaint's detailed
allegations of copyright infringement and use satisfied Rule
8(a)).

Beyond failing to comply with the federal pleading
standards, Plaintiff simply has not alleged plausible facts to
establish that Security Life is vicariously liable for the
actions of Defendant Salisbury or Defendant Bellini. As to
Defendant Salisbury, the bulk of the Amended Complaint describes
a longstanding advisor-client relationship. <u>E.g.</u>, Am. Compl. ¶
8 ("Ryan, a 68-year-old retired woman, lost a substantial
portion of her retirement funds because <u>she trusted Salisbury</u>
<u>and the Defendants, who were recommended by Salisbury</u>" (emphasis
added)); ¶ 25 (describing Defendant Salisbury acting "[i]n his
capacity as Ryan's financial and investment advisor"); ¶ 35
(describing Salisbury's conduct "during his relationship as
Ryan's financial and investment advisor").

The only purported "fact" Plaintiff points to in labeling Defendant Salisbury as an agent to Security Life (as opposed to an agent of Plaintiff) is that the Acknowledgment and the Application, "[u]pon information and belief," identify Salisbury as an "agent." Am. Compl. ¶ 10 & n.1; see also ECF Nos. 72-1 & 72-3. The Court is not persuaded that this allegation, without any associated facts describing the relationship between Security Life and Defendant Salisbury, has any meaningful bearing on the vicarious liability of Security Life. For one, the signing party in the "agent" portion of the Acknowledgment is illegible, as is the signature on the Application (which Plaintiff concedes, see Am. Compl. ¶ 10 n.1). And, regardless, the Amended Complaint makes clear that Defendant Salisbury was acting in an agent and broker capacity on Plaintiff's behalf. He was aware of Plaintiff's existing life insurance policies and encouraged her to consider investing in a different policy. Am. Compl. ¶ 3. He helped coordinate the financing arrangement. Id. ¶ 4. And he "worked with" Auora Capital (which employed the "writing agent," Defendant Bellini) to procure and finance the Policy. Id. Defendant Salisbury also helped Plaintiff procure numerous policies and annuities, suggesting that he was acting as Plaintiff's broker, not as Security Life's agent. Cf. Dias v. Nationwide Life Ins. Co., 700 F. Supp. 2d 1204, 1220-21 (E.D. Cal. 2010) (holding that

factual questions existed as to whether defendant insurer was vicariously liable for the actions of plaintiff's longtime financial advisor, who was also a "soliciting agent" for defendant insurer, in part because he worked as a soliciting agent _exclusively_ for the defendant insurer rather than as an "agent for several companies").

This circuit has deemed insurance brokers to be agents of the insured, not the insurer. See Healy Tibbitts Builders, Inc. v. Mannering, 308 F. App'x 115, 116 (9th Cir. 2009) ("Although the Hawaii Supreme Court has not directly addressed the issue, we are confident that it would follow the general rule that insurance brokers are presumed to act as agents of the insured, not of the insurer . . . ."). Plaintiff's conclusory and speculative allegation that "it appears that" Defendant Salisbury listed himself as a "writing agent" on the VOYA Policy's application, Am. Compl. ¶ 10 n.1, is not enough to transform him into an agent of Security Life. The rest of the Amended Complaint makes clear that Defendant Salisbury worked closely with Plaintiff and on her behalf to procure financial products issued by many insurers over several years. See id. ¶¶ 20-35.

Also of note is Defendant Salisbury's alleged misrepresentation made _to Security Life_. According to the Amended Complaint, Defendant Salisbury misrepresented _to_

Security Life on the application Plaintiff's net worth and ability to make premium payments, which presumably led Security Life to issue the policy that it did. It is implausible that this allegation would be consistent with Defendant Salisbury acting at Security Life's authorization or under its control.

As to Defendant Bellini, Security Life's counsel at the October 15 hearing on the Motion conceded that Defendant Bellini is in fact the "writing agent" to the VOYA Policy. The parties have not offered and the Court is not aware of any Hawai'i cases speaking to the existence or scope of the agency relationship between a carrier and a "writing agent."[18/] Regardless, the Court need not decide the scope of Security Life's vicarious liability for Defendant Bellini's actions. The allegations in the Amended Complaint targeting Defendant Bellini are the same allegations that the Court found insufficient to state a claim under UDAP in its prior Order. See Order 32-33. So even though the Amended Complaint reasserts claims that have

_____

[18/] Based on counsel's explanation at the hearing, a "writing agent" may be similar to what other courts and insurers refer to as "soliciting agents." See, e.g., Dias, 700 F. Supp. 2d 1220-21 (classifying longtime financial advisor as "soliciting agent" in his procurement of an insurance policy for his client). A writing agent, if similar to a soliciting agent, may in fact be a limited agent of an insurer. See id. (declining to grant summary judgment because insurer may be vicariously liable for misrepresentations made by insurer's soliciting agent). Here, Plaintiff has provided no information about the scope of the agency relationship between Security Life and Defendant Bellini (or Defendant Salisbury) and about the extent to which either Defendant was acting pursuant to a consensual agreement and under Security Life's authorization and control. Likewise, the fact that Defendant Salisbury apparently procured several policies and annuities on Plaintiff's behalf cuts against the argument that he was acting not as Plaintiff's broker, but as Security Life's agent.

not been dismissed against Bellini, those claims are based on
the same allegations that warranted dismissal of the Original
Complaint. <u>Compare</u> Orig. Compl. ¶¶ 20, 45-46, 50, 71-73, <u>and</u>
Am. Compl. ¶¶ 16, 42-43, 47, 71-72.[19/]  In other words, even if
Plaintiff's vicarious liability theory had merit, the Court sees
no additional allegations of Bellini's conduct to support a UDAP
claim.[20/]  <u>See</u> Order 32-37.

For these reasons, the Amended Complaint fails to
state a plausible claim against Security Life under UDAP.
Insofar as it seeks dismissal on this basis, Security Life's
Motion is granted.

**CONCLUSION**

For the foregoing reasons, the Court GRANTS Defendant
Security Life's Motion for Judgment on the Pleadings, ECF No.
169, insofar as it seeks dismissal of Plaintiff's claim against
Defendant Security Life.  Because Plaintiff may be able to cure
some of the pleading defects via amendment, leave to amend is
granted and the Amended Complaint is dismissed against Defendant

---

[19/]  The only additions are the conclusory allegation that Bellini "acted
within the scope of, and in the course of his employment with, or under the
direction and control of Security Life of Denver and/or Aurora Capital who
retained the right to control, direct, and/or manage," and related theories
of vicarious liability.  Am. Compl. ¶ 16.

[20/]  The Amended Complaint fails to add any specific allegations with
respect to Defendant Bellini's conduct.  For deceptive conduct, the Amended
Complaint still fails to provide an "account of the time, place, and specific
content of [any] false representations," <u>Swartz</u>, 476 F.3d at 764, and for
unfair conduct, the Amended Complaint still fails to allege "injury to
[Plaintiff's] business or property resulting from [the alleged] violation,"
<u>Lizza</u>, 1 F. Supp. 3d at 1121.  The "unsuitability" allegations are virtually
the same as well.

Security Life without prejudice.  Any amended complaint must be

filed within thirty days of the issuance of this Order and

should comply with the guidance and standards set forth herein.


IT IS SO ORDERED.

DATED: Honolulu, Hawai`i, October 17, 2019.



_____
Alan C. Kay
Sr. United States District Judge


Ryan v. Salisbury et al., Civ. No. 18-406 ACK-RT, Order Granting Defendant
Security Life of Denver Insurance Company's Motion for Judgment on the
Pleadings